Sophia Goren Gold (SBN 307971)
*sgold@kalielgold.com*
**KALIELGOLD PLLC**
490 43rd Street, No. 122
Oakland, California 94609
Telephone: (202) 350-4783

Jeffrey D. Kaliel (SBN 238293)
*Jkaliel@kalielpllc.com*
**KALIELGOLD PLLC**
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
Telephone: (202) 350-4783

Annick M. Persinger (SBN 272996)
*apersinger@tzlegal.com*
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, California 94612
Telephone: (510) 254-6808

*Attorneys for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH SHIPLEY and SHAUN HEROD, on behalf of themselves and all others similarly situated,<br><br>     Plaintiffs,<br><br>  v.<br><br>META PLATFORMS, INC.,<br><br><br>     Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT** |

Plaintiffs Elizabeth Shipley and Shaun Herod ("Plaintiffs"), by and through counsel, bring this Class Action Complaint against Defendant Meta Platforms, Inc. ("Meta"), individually and on behalf of all others similarly situated, and allege, upon personal knowledge as to their own actions, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.      Plaintiffs, on behalf of themselves and all other similarly situated Class Members, bring this putative class action against Meta[1] arising from its deceptive bait-and-switch scheme of designing, manufacturing, distributing, advertising, marketing, and selling its Meta Portal smart device to consumers, and then unilaterally rendering the devices significantly less functional and largely obsolete.

2.      Boasting the Meta Portal as a "step forward in smart video calling" and a new way to "share deeper connections and delightful moments" with friends and families, Meta prominently advertised that the Meta Portal smart device provided numerous features and functions through first-party and third-party applications, such as video-calling, streaming, effects, storytelling, and voice command. Plaintiffs and Class Members purchased the Meta Portal devices believing they would have continued software functionality and based on the myriad of uses that Meta touted.

3.      But these promises were short-lived. Only a few years after the Meta Portal first launched, Meta decided to "brick" Meta Portal by stripping many of its software applications and functionality—long before the actual physical device has reached the end of its useful life. As a result of Meta's unilateral decision to strip Meta Portal of much of its functionality by cutting off many of the features from an otherwise functioning device, Plaintiffs and Class Members are left with devices with significantly less functionality than what they purchased.

4.      Plaintiffs and Class Members would not have purchased the Meta Portal devices or would have paid substantially less for them had they known that Meta would abandon all support, remove many software applications, and render the devices less functional despite having many years left in their physical useful life.

---

[1] Formerly known as Facebook. *See Introducing Meta: A Social Technology Company,* Meta, October 28, 2021, available at https://about.fb.com/news/2021/10/facebook-company-is-now-meta/#:~:text=Introducing%20Meta:%20A%20Social%20Technology,%2C%20work%2C%20education%20and%20commerce [https://perma.cc/QGH8-X7JB].

5.      As a result of Meta's material misrepresentations and omissions alleged herein, Plaintiffs and the putative Classes seek actual damages, restitution, disgorgement of profits, statutory damages, attorneys' fees and costs, and all other relief the Court deems proper.

<u>**JURISDICTION AND VENUE**</u>

6.      This Court has subject matter jurisdiction of this action under the Class Action Fairness Act of 2005, § 1332(d) because (1) the amount in controversy, exclusive of costs and interest, exceeds the sum of $5,000,000.00; (2) the proposed Class is comprised of at least 100 members; and (3) at least one of the members of the proposed Class is a citizen of a different state than Defendant.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant is subject to personal jurisdiction here, regularly conducts business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

<u>**PARTIES**</u>

8.      Plaintiff Elizabeth Shipley is and was, at all relevant times alleged herein, a citizen of the State of California, and currently resides in San Francisco, California. Plaintiff Shipley purchased the Meta Portal device directly from Meta on or around November 12, 2020.

9.      Plaintiff Shaun Herod is and was, at all relevant times alleged herein, a citizen of the State of New York, and currently resides in New Rochelle, New York. Plaintiff Herod purchased the Meta Portal and Portal TV devices in or around March 2022 from Best Buy.

10.      Defendant Meta Platforms, Inc. is a corporation formed and existing under the laws of Delaware with its headquarters located at 1 Meta Way, Menlo Park, California 94025.

<u>**FACTUAL ALLEGATIONS**</u>

**I.      <u>The Short-Lived Meta Portal Device</u>**

11.      In the fall of 2018, Meta launched its first ever hardware product, the Meta Portal, a smart display and video calling device. Over time, Meta rolled out four different models within the Meta Portal

CLASS ACTION COMPLAINT

product line: Portal, Portal+, Portal TV, and Portal Go. Defendant initially offered the 10-inch screen Portal for $199 and 15.6-inch screen Portal+ for $349:



12.    The Meta Portal devices were equipped with an Android-based operating system that touted several notable features, including: the "Smart Camera," a 140-degree field of view which provides for auto-zooming video chatting through applications like Facebook Messenger and WhatsApp; the "Hey Portal" voice command integrated through Amazon's Alexa function; music streaming services through applications like Spotify and Pandora; video streaming through Netflix, Amazon Prime Video, and Showtime; the "Story Time" feature which creates augmented reality experiences for reading children's books; a digital photo and video slideshow frame; and special effects.[2]

13.    Facebook Portal's marketing lead, Dave Kaufman, stated in an article that the goal behind the Portal device was to create "the feeling of being in the same room even if you're thousands of miles apart" and "focusing on the depth of connection."[3]

14.    Defendant's mission of curating connection and communication between friends and family

---

[2] *Id.*

[3] *Id.*

through the Meta Portal device gained significant traction during the COVID-19 pandemic as lockdowns and social distancing permeated the country.[4] Meta Portal devices became particularly popular amongst the elder audience, in part due to the device's easy-to-use functions. Indeed, in television advertisements, Meta specifically advertised Meta Portal as fostering the connection between grandchildren and grandparents, urging consumers to "Give the Gift of Deeper Connection."[5]

15.    Meta's CTO, Andrew Bosworth, told BuzzFeed News in an interview that Defendant sold "millions" of Meta Portal units.[6]

16.    But in the wake of the pandemic as life was returning to its normal course, Meta's plans to phase out the Portal devices commenced.

17.    In June 2022, Defendant reported that the Meta Portal devices would become "business-focused" and it would cease selling consumer versions of the devices.[7] Defendant's repositioning of the Meta Portal device was likely due in part to the boost that business customers gave the product when companies allowed their employees to work from home.[8]

18.    Shortly thereafter in November 2022, Meta announced that it would discontinue the Meta Portal devices all together.[9]

19.    Even after the public decision to kill off its consumer devices, Meta still offered its remaining supply of Meta Portal devices for sale, albeit at a significant price cut, and continued to tout its

---

[4] *Facebook Portal is finally a hit, thanks to a pandemic and your grandparents,* CNET, April 27, 2020, Queenie Wong, available at https://www.cnet.com/tech/computing/facebook-portal-is-a-hit-during-the-coronavirus-lockdown-thanks-to-your-grandparents/ [https://perma.cc/S6SG-FFV4].

[5] *Portal from Facebook TV Spot, "Share Something Real: Nannies & Granddads" Song by Sonny and Cher*, available at https://www.ispot.tv/ad/qzV5/portal-from-facebook-share-something-real-grandparents [https://perma.cc/9D7D-EHSB].

[6] *The Facebook Portal Died. This Is How It Almost Lived,* BuzzFeed News, Katie Notopoulos, January 18, 2023, available at https://www.buzzfeednews.com/article/katienotopoulos/facebook-portal-rip-amazon [https://perma.cc/BKV5-6MT3].

[7] *Meta Is Killing Off Consumer Versions of the Portal Video-Calling and Streaming Device,* Variety, Todd Spangler, June 9, 2022, available at https://variety.com/2022/digital/news/meta-portal-consumer-video-calling-phased-out-1235289891/.

[8] *Meta is reportedly discontinuing Portal devices for consumers,* Engadget, Mariella Moon, June 9, 2022, available at https://www.yahoo.com/news/meta-discontinuing-portal-devices-consumers-050424665.html [https://perma.cc/Z28M-U2WM].

[9] *Meta is killing Portal and both its unreleased smartwatches,* The Verge, Sean Hollister, November 11, 2022, available at https://www.theverge.com/2022/11/11/23454019/meta-portal-smartwatch-efforts-shutting-down-hardware [https://perma.cc/Z4U6-A47F].

purported features:[10]



---

[10] *See* Wayback Machine, Meta Portal, December 8, 2022, available at https://web.archive.org/web/20221208140349/https://www.meta.com/portal/.

CLASS ACTION COMPLAINT







CLASS ACTION COMPLAINT



20.     In mid-2023, Defendant began phasing out the Meta Portal devices by unilaterally removing nearly every first-party and third-party application and its voice functionality in waves, effective early 2025, including but not limited to:

- Zoom
- Amazon "Alexa" voice assistant
- "Hey Portal" voice assistant
- Facebook Live
- Workplace Live
- Microsoft Teams
- Microsoft Intune
- Spotify
- StoryTime
- Pandora
- iHeartRadio
- Tidal Music
- The Calendar
- CBS News
- ESPN
- Photo Booth
- Background Effects and Masks on Messenger Video Calls[11]

21.     While some consumers received no prior notification from Meta that Meta intended to

---

[11] *Full list of Meta Portal services being dropped starting TODAY,* Reddit, available at https://www.reddit.com/r/FacebookPortal/comments/14k67et/full_list_of_meta_portal_services_being_dropped/ (last accessed March 23, 2025).

CLASS ACTION COMPLAINT

remove certain features on the Meta Portal, others received notices confirming end-of-life, such as the one below:



22.    Without the ability to utilize any of these applications or services, Defendant rendered the Meta Portal devices significantly less functional and largely obsolete.

23.    As of today, Meta's website confirms that "Meta is no longer selling Meta Portal" but that Meta is "committed to providing ongoing support for Meta Portal owners" by "provid[ing] notifications of major changes to the device experiences through the device itself" and "maintain[ing] system software with critical bug fixes and security patches."[13]

---

[12] *Notice about Hey Portal and Alexa stopping January 31, 2025,* Reddit, available at https://www.reddit.com/r/FacebookPortal/comments/1h61b77/notice_about_hey_portal_and_alexa_stopping_jan_31/ (last accessed March 23, 2025).

[13] Meta Portal, available at https://www.meta.com/portal/?srsltid=AfmBOorZuRqXo7YQ7j-yi7Y0EeXeCwUkEKzM41jYcN9yIwm3RqN2v4z5 (last accessed March 23, 2025).

CLASS ACTION COMPLAINT

24.     But this "commitment" is an empty promise, as the Meta Portal devices are now significantly less usable. For example, Meta has removed or will soon remove the following software functionality from Meta Portal devices: Zoom, Amazon Alexa, "Hey Portal" voice assistant (all voice functionality), Meta Portal App (iOS and Android); Red Bull TV, ESPN, Workplace, Watch Together, Facebook Watch, BlueJeans, GoToMeeting, Webex, The Calendar app, SideChef, iHeartRadio, Pandora, Spotify, StoryTime, Facebook Live, Workplace Live, Microsoft Teams, Microsoft Intune, Plex, Tidal Music, Deezer, CBS News, Photo Booth, Background Effects, Masks on Messenger video calls, and more.

25.     The continued software functionality of the costly Meta Portal devices was a substantial factor in Plaintiffs and Class Members decision to purchase the devices. In other words, Plaintiffs and Class Members purchased costly Meta Portal devices in reliance upon Defendant's misrepresentation that the devices included such features, and its omission that it would cut these features from an otherwise functioning device in just a few years. Had they known that Meta would unilaterally make the device significantly less functional, Plaintiffs and Class Members would not have purchased Meta Portal or would have paid substantially less for it.

26.     At the time of purchasing their Meta Portal devices, Plaintiffs and Class Members had no reason to believe that Meta would stop supporting the Meta Portal devices' software despite the fact that the hardware itself would have continued to function long into the future.

27.     Upon information and belief, Meta has not issued refunds to any consumers for the discontinued and less functional Meta Portal devices.

**II.     Meta's Unilateral Phasing Out and Discontinuance of the Meta Portal Device Constitutes a Deceptive "Software Tethering" and "Bricking" Practice**

28.     Manufacturers are incentivized to render devices obsolete so that they can manufacture and sell new ones. Increasingly, by failing to support otherwise functional devices with software functionality included at sale, companies like Defendant unilaterally, and, prematurely, decide that devices are obsolete even though the actual hardware of the device itself has not run its useful life and functions perfectly. Left with a device that is either useless or with less software functionality, consumers are forced to buy updated devices—often from the same manufacturers.

29.     In a recent staff report, the Federal Trade Commission ("FTC") acknowledged the harm

that results when manufacturers cut back on making software updates to "smart" products like the Meta Portal, eventually turning those products in non-functional "bricks" with limited to no use. As the FTC explains, the failure to provide software and the failure to disclose the duration of software support is a deceptive practice that cause consumer harm that they cannot avoid:

> Manufacturers marketing a device as having certain features and then subsequently failing to provide software updates needed to maintain those features raises concerns about consumer harm resulting from deceptive practices. A representation, omission or practice is deceptive and violates the FTC Act if it is material and likely to mislead a consumer acting reasonably under the circumstances. Thus, if a manufacturer makes an express or implied representation regarding how long the product will function or be useable, it may be a deceptive practice if the manufacturer fails to disclose how long it will provide necessary software updates.

> Similarly, the failure to provide software updates or the failure to disclose the duration of software support raises concerns about harm consumers cannot avoid. A practice is unfair and violates the FTC Act if it is likely to cause substantial injury that could not be reasonably avoided by consumers and the injury is not outweighed by any offsetting consumer or competitive benefits that the sales practice also produces. Thus, when evaluating a manufacturer's failure to provide updates or its failure to disclose the duration of software support it is appropriate to consider the scope of injury caused by the failure, whether this injury is reasonably avoidable by consumers, and whether there may be any offsetting benefits arising from the failure to provide software updates or disclosures about the duration of software support.[14]

30.     Non-profit organization, Truth in Advertising ("TINA"), similarly acknowledged this practice as an increasingly prevalent false advertising practice it calls "software tethering," "which is when a manufacturer uses software to control how a connected device functions after purchase, if it continues to function at all," and may range from "taking away features that were advertised at the time of purchase or completely 'bricking' a device through software updates[.]"[15]

31.     Consumer Reports also highlighted the concern behind companies' lack of transparency in disclosing the lifespan of a connected smart device before consumers commit to purchasing:

> The refusal to disclose how long a consumer can expect their connected appliances to stay secure and retain the exciting software-based functions that a consumer may have paid extra for is an example of how efforts to turn everyday devices into internet-connected computers have left a regulatory loophole that allows manufacturers to infringe on a consumers' ability to truly own a product. . . .

> And consumer should know when this potential loss of features or functions will happen

---

[14] *Smart Device Makers' Failure to Provide Updates May Leave You Smarting,* FTC Staff Perspective, November 2024, available at https://www.ftc.gov/system/files/ftc_gov/pdf/smart-device-makers-failure-to-provide-software-updates-may-leave-you-smarting.pdf [https://perma.cc/EW9W-TENT].

[15] *2025 Deceptive Ad Trends,* Consumer News, Truth in Advertising.org, January 6, 2025, available at https://truthinadvertising.org/articles/2025-deceptive-ad-trends/ [https://perma.cc/J2B2-TKAV].

before they plunk down their hard-earned cash on a device or appliance. Only when consumers can see how long a manufacturer plans to stand by a connected product can they make an informed decision about what they are spending their money on. Absent this information, a consumer could spend thousands on a large appliance, only for the features they rely on to stop working in a few years.[16]

32.     In response to this rapidly growing harm, Consumer Reports amongst several other groups have called on the FTC "to create clear guidance to address the issue of software tethering which leads to several consumer harms, including . . . companies selling connected devices only to render them nonfunctional later using software." This practice of "'bricking' a connected device purchased by a consumer in many cases [is an] unfair and deceptive practice[.]"[17]

33.     The FTC Letter explains "how companies are using software tethers in their devices to infringe on a consumer's right to own the products they buy."[18] "This software-server connection tethers the device to the manufacturer, giving the manufacturer post-purchase control of the software and changing the nature of ownership."[19] As a result, "[c]onsumers increasingly face a death by a thousand cuts as connected products they purchase lose their software support or advertised features that may have prompted the original purchase."[20]

34.     In fact, the FTC Letter explicitly calls out Defendant and its Meta Portal device as an example of a company that has engaged in this deceptive software tethering and bricking practice: "***Other companies kill software support and also the device itself, as Facebook did with its Portal product.***"[21] Additional recent examples of software "bricking" in the consumer marketplace include Spotify's connected Car Thing device that lasted only 22 months, the iKamand temperature regulating device that was discontinued within the same year, Google's Dropcam cameras, and Amazon's Halo health and

---

[16] *When Will Your Smart Appliance Turn Dumb? A Lack of Transparency Leaves Consumers in the Dark,* Consumer Reports, September 25, 2024, available at https://innovation.consumerreports.org/when-will-your-smart-appliance-turn-dumb/ [https://perma.cc/49A9-YQFF].

[17] FTC Letter, September 5, 2024, available at https://advocacy.consumerreports.org/research/group-letter-ftc-software-tethering/ [https://perma.cc/GKS7-SSNQ].

[18] *Id.*

[19] *Id.* (citations omitted).

[20] *Id.*

[21] *Id.*

CLASS ACTION COMPLAINT

1    wellness wearable devices, to name a few.[22]

2    **III.    Plaintiffs' Experiences**

3         Plaintiff Shipley

4         35.    On or around November 12, 2020, while sitting in her home in San Francisco, Plaintiff

5    Shipley purchased the Meta Portal device directly from Meta's website. She paid $154 for the Meta Portal

6    device. Plaintiff Shipley purchased the Meta Portal device after being exposed to online advertisements

7    that touted the device as an easy way to connect with isolated, elderly family members during lockdown.

8         36.    The continued software functionality of the Meta Portal device she purchased was a

9    substantial factor in her decision to buy the devices. For example, Meta Portal's voice control feature

10   factored into her purchase, as she was looking for a device that would enable her to talk to her mother who

11   was disabled and unable to use buttons.

12        37.    Meta did not inform Plaintiff Shipley of the possibility of the Meta Portal device's

13   obsolescence at or before the point of sale. Nowhere in its advertising did Defendant disclose to Plaintiff

14   Shipley that the software functionality would be temporary and that its features and functions would be

15   lost a few years after purchase—long before the hardware of the device itself ceased functioning.

16        38.    On or around January 31, 2025, Meta unilaterally disabled the voice control feature, as well

17   as the Facebook messenger calling feature. As Defendant has continued to "brick" the Meta Portal devices

18   by failing to support its software applications one by one, at this point, the only use for the Meta Portal

19   device is the ability to view slideshows of old photographs.

20        39.    On or around March 2, 2025, Plaintiff Shipley contacted Meta Store Support regarding the

21   loss of voice command functionality on her Meta Portal device. That same day, a Meta Store Support

22   representative responded and confirmed that the reason for the loss of functionality "is because we have

23   discontinued the sale of all Portal device's." Plaintiff Shipley was informed that "based on [Meta's]

24   decision to exit the Meta Portal business, you will see changes to the experiences and apps available as

25   content and features change over time." The Meta Store Support representative further directed Plaintiff

26   Shipley to "check on Google for similar device's" that would allow her to use a voice command feature.

27

28   _____
     [22] *Id.* (citations omitted).

40.    Plaintiff Shipley would not have purchased the Meta Portal device had she known that Meta would unilaterally make the device significantly less functional within years of her purchase, or otherwise would have paid substantially less for the Meta Portal device.

Plaintiff Herod

41.    In or around March 2022, while sitting in his home in New Rochelle, New York, Plaintiff Herod purchased the Meta Portal and Portal TV devices from Best Buy.  Plaintiff Herod purchased the Meta Portal devices after being exposed to advertisements on TV that marketed the devices as having multimedia functions for streaming content on TV, and had an incentive to purchase the devices after receiving discount as a Best Buy employee.

42.     The continued software functionality of the Meta Portal devices he purchased was a substantial factor in his decision to buy the devices. For example, Meta Portal's media functions factored into his purchase, as he wanted to use the devices for media through apps like Facebook Live, Pluto TV, Amazon Video, and Netflix.

43.    Meta did not inform Plaintiff Herod of the possibility of the Meta Portal devices obsolescence at or before the point of sale. Nowhere in its advertising did Defendant disclose to Plaintiff Herod that the software functionality would be temporary and that many of its features and functions would be lost a few years after purchase—long before the hardware of the device itself ceased functioning.

44.    Around January 2025, Meta significantly reduced functionality of the Facebook Live app, and then shortly after took the app down altogether. Defendant's support of other streaming services is also set to sunset in the next few months.

45.    Plaintiff Herod would not have purchased the Meta Portal devices had he known that Meta would unilaterally make these devices significantly less functional within years of his purchase, or otherwise would have paid substantially less for the Meta Portal devices.

**IV.    Online Consumer Complaints About Meta Portal**

46.    Meta is well aware of widespread consumer dissatisfaction as a result of Defendant's unilateral decision to phase out their Portal devices from the market by discontinuing its key features and then eventually rendering the Portal devices significantly less functional and largely obsolete.

47.    Below is just a small sampling of the online consumer complaints posted on Reddit about

the discontinuance of Meta Portal devices:

    a.  "[W]e spent a lot of money on these during Covid for all of us to stay connected. After this new update, the Portals we all have basically became useless. It's annoying."

    b.  "[I have] 2 portals. Portal + and standard. They are now useless. At least we should get our money back."

    c.  "This is the device me mother and I can use to speak because the phone isn't a viable option, as she's so deaf. It's also where all the ongoing family photos go so she can feel in-touch with what we're all up to. Thanks for disregarding your customers Meta – let's hope this doesn't undermine any of your future services that you'll want us to buy into."

    d.  "I am disappointed I just go this device and almost every single app doesn't work or was stripped down :(…"

    e.  "Meta went out of their way to lock down the devices, they're locked down tighter than any Android out there by all accounts I've seen. …. Meta went out of their way to cripple the usefulness of the devices, including by removing native on-device capabilities such as the Calendar, by slowing down the built-in browser performance, and by removing previously heavily marketed 3rd party capabilities such as Duet WiFi Display, Alexa, and others. I can guarantee, sadly, Meta will never do anything to restore the lost functionality of these devices."

    f.  "…. Now what? Buy something new? This day and age we can't afford that! …. The reasons I purchased this product was for the features it advertised. Now they are gone! I will never support this company again! The big corporate leaders don't care about the consequences to people! Just their money. …"

## CLASS ALLEGATIONS

48.    Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3), Plaintiff brings this action individually and on behalf of a proposed Classes of similarly situated persons defined as follows:

Nationwide Class: All persons who reside in the United States who purchased a Meta Portal device.

California Class: All persons who reside in California who purchased a Meta Portal device.

New York Class: All persons who reside in New York who purchased a Meta Portal device.

49.    Excluded from the Classes are Defendant's current or former officers, directors, and employees; counsel for Plaintiff and Defendant; and the judicial officer to whom this lawsuit is assigned.

50.    Plaintiffs reserve the right to modify or amend the definitions of the Classes as this litigation proceeds.

51.    California law applies to a Nationwide Class because Meta's Limited Warranty contains a choice of law clause designating California law and because Meta's Terms of Service specify that California law applies to all claims.[23]

52.    ***Numerosity and Ascertainability***: The members of the Classes are so numerous that joinder of all members is impracticable. Plaintiffs are informed and believe that the proposed Classes contain at least thousands of individuals who have been damaged by Defendant's conduct as alleged herein. The precise number of Class Members is unknown to Plaintiffs at this time, but Plaintiffs anticipate that the number and identities of Class Members are administratively feasible and can be determined through appropriate discovery in the possession of Defendant and/or third-party retailers.

53.    ***Existence and Predominance of Common Questions of Law and Fact***: This action involves common questions of law and fact, which predominate over any questions affecting individual Class Members. These common and legal factual questions include, but are not limited to, the following:

   a.    Whether Meta Portal devices were improperly "bricked";

   b.    Whether Meta Portal devices were forced into obsolescence by Defendant;

   c.    Whether Defendant's alleged misconduct constitutes violations of the laws asserted herein;

   d.    Whether Plaintiffs and Class Members have sustained monetary loss and the proper measure of that loss; and

   e.    Whether Plaintiffs and Class Members are entitled to other appropriate remedies.

54.    ***Typicality***: Plaintiffs' claims are typical of the members of the Classes because, *inter alia,* all Class Members have been deceived (or were likely to be deceived) and have suffered similar injury by the same wrongful practices by Defendant. Plaintiffs' and Class Members' claims all arise from the same

---

[23] Ex. A at 4 ("The laws of the State of California. USA. govern this Warranty."); *see also* https://www.facebook.com/terms/ ("[T]he laws of the State of California will govern these Terms and any claim, cause of action, or dispute without regard to conflict of law provisions").

CLASS ACTION COMPLAINT

wrongful practices and course of conduct, and are based on the same legal theories of liability.

55.     *Adequacy*: Plaintiffs will fairly and adequately protect the interests of the Class Members. Plaintiffs have retained counsel experienced in complex consumer class action litigation, and Plaintiffs intend to prosecute this action vigorously. Plaintiffs have no antagonistic or adverse interests to those of the Classes.

56.     *Superiority*: A class action is superior to other methods for resolving this controversy. Because the amount of restitution, damages, and/or penalties to which the Class Members may be entitled is low in comparison to the expense and burden of individual litigation, it would be impracticable for Class Members to redress the wrongs done to them without a class action forum. Furthermore, on information and belief, many Class Members do not know that their legal rights have been violated. Class Members would also conserve judicial resources and void the possibility of inconsistent judgments.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Violation of California's Unfair Competition Law (the "UCL")**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**(On Behalf of Plaintiffs and the Nationwide Class, or, alternatively,**
**on Behalf of Plaintiff Shipley and the California Class)**

57.     Plaintiffs repeat and incorporate all of the preceding allegations as if fully set forth herein.

58.     California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair, or fraudulent business act or practice." Meta's conduct related to deceptively representing that its Meta Portal devices provide features, capabilities, services, and uses violates each of the statute's "unfair," "unlawful," and "fraudulent" prongs.

59.     The UCL imposes strict liability. Plaintiff Shipley need not prove that Meta intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

60.     A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

61.     A business act or practice is "fraudulent" under the UCL if it is likely to deceive members

of the public.

62.    A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

63.    Meta committed unfair and fraudulent business acts and practices in violation of Cal. Bus. & Prof. § 17200, *et seq.*, by affirmatively and knowingly misrepresenting that its Meta Portal device had certain features, capabilities, services, and uses that it did not provide when it unilaterally started eliminating features.

64.    Defendant's acts and practices offend an established public policy in the marketplace and constitute immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

65.    The harm to Plaintiffs, the Nationwide Class, and the California Class outweighs the utility of Defendant's practices. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misleading and deceptive conduct described herein.

66.    Defendant's conduct also constitutes an "unlawful" act under the UCL because, as alleged herein, it also constitutes violations of 18 U.S.C. § 1030, et seq., New York's GBL § 349, California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, and California's Consumer Legal Remedies Act, Cal. Civ. Code § 1770(a)(5), (a)(7), and (a)(16).

67.    Defendant has engaged in unfair competition and unfair, unlawful, and fraudulent business practices by their misconduct and omissions described above, and by knowingly and intentionally concealing from Plaintiffs and Class Members that the Meta Portal devices would be discontinued and rendered less functional by Meta.

68.    Plaintiffs and Class Members acted reasonably when they relied on Meta's misrepresentations and omissions in purchasing the Meta Portal devices.

69.    Had Plaintiffs and Class Members known that Defendant would render the Meta Portal devices less functional by removing many of their features, they would have paid less for the devices or would not have purchased them at all.

70.    As a direct and proximate result of Meta's unfair, fraudulent, and unlawful practices, Plaintiffs and Class Members have suffered damages.

71.     Meta has been unjustly enriched and should be required to disgorge its unjust profits and make restitution to Plaintiffs and Class Members pursuant to Cal. Bus. & Prof. Code § 17203 and 17204.

72.     **Inadequate remedy at law.** Legal remedies available to Plaintiffs and Class Members are inadequate because they are not equally prompt and certain and in other ways as efficient as equitable relief. Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff and Class members fail to sufficiently adduce evidence to support an award of damages. Damages and restitution are not necessarily the same amount. Unlike damages, restitution is not limited to the amount of money the defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles a plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Legal claims for damages are not equally certain as restitution because claims under the statutes herein entail few elements. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law. Due to these differences in proof and certainty, equitable relief is appropriate because Plaintiffs may lack an adequate remedy at law for damages. Even if legal remedies may be available, Plaintiffs seek equitable remedies in the alternative to legal remedies which are as of yet uncertain.

73.     Legal remedies available to Plaintiffs and Class members are inadequate because they do not address likely future harms. As of the date of this filing, Meta has failed to restore the software functionality for features and functions on the Meta Portal devices. If Meta is not ordered to take these or similar actions, Meta will continue to injure Plaintiffs and Class members through the misconduct alleged herein.

**SECOND CAUSE OF ACTION**
**Violation of California's False Advertising Law (the "FAL")**
**Cal. Bus. & Prof. Code §§ 17500, *et seq.***
**(On Behalf of Plaintiffs and the Nationwide Class, or, alternatively,**
**on Behalf of Plaintiff Shipley and the California Class)**

74.     Plaintiffs repeat and incorporate all of the preceding allegations as if fully set forth herein.

75.     California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, states that "[i]t is unlawful for any . . . corporation . . . with intent . . . to dispose of . . . personal property . . . to induce

the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatsoever, including over the Internet, any statement . . . which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . ."

76.    Defendant's material misrepresentations and omissions alleged herein violate Bus. & Prof. Code § 17500.

77.    Defendant knew or should have known that its misrepresentations and omissions were false, deceptive, and misleading.

78.    Plaintiffs, the Nationwide Class Members, and the California Class Members seek an order requiring Defendant to award them restitution of the money wrongfully acquired by Defendant as a means of said misrepresentations.

79.    Additionally, Plaintiffs and Class Members seek an order requiring Defendant to pay attorneys' fees pursuant to Cal. Civ. Code § 1021.5.

80.    Plaintiff incorporates by reference her allegations above regarding the potential inadequacies of remedies at law.

**THIRD CAUSE OF ACTION**
**Violation of California's Consumer Legal Remedies Act (the "CLRA")**
**Cal. Civ. Code §§ 1770, *et seq.***
**(On Behalf of Plaintiffs and the Nationwide Class, or, alternatively,**
**on Behalf of Plaintiff Shipley and the California Class)**

81.    Plaintiffs repeat and incorporate all of the preceding allegations as if fully set forth herein.

82.    Plaintiffs, each member of the proposed Nationwide Class, and each member of the proposed California Class are "consumers" as defined by Cal. Civ. Code § 1761(d).

83.    Defendant's Meta Portal devices are "goods" within the meaning of Cal. Civ. Code § 1761(a).

84.    Defendant's sale of the Meta Portal devices were "transactions" within the meaning of Cal. Civ. Code § 1761(e).

85.    Meta violated the CLRA by engaging in the following practices proscribed by Cal. Civ. Code § 1770(a) in transactions with Plaintiffs, the Nationwide Class, and the California Class which were

intended to result in, and did result in, the sale of Meta Portal devices:

        a.   "Representing that goods or services have . . . characteristics . . .[and] uses . . . that they do not have" (a)(5);

        b.   "Advertising goods or services with the intent not to sell them as advertised" (a)(9); and

        c.   "Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not" (a)(16).

86.     Specifically, Defendant made misleading representations to consumers that the Meta Portal devices had specific features, functions, and services, and omitted material facts about its intent to discontinue the Meta Portal and strip it of many of its advertised uses.

87.     Specifically, Meta was under a duty to Plaintiffs and the Nationwide and California Class Members to disclose its intent to render the Meta Portal less functional because Meta had exclusive knowledge and control over the software functionality of Meta Portal prior to, and after, making sales of the Meta Portal devices.

88.     Meta knew that Plaintiffs, Nationwide Class Members, and California Class Members could not reasonably be expected to learn of Meta's intent to discontinue and "brick" the Meta Portal until such action occurred.

89.     Meta's material misrepresentations and omissions alleged herein were material to and relied upon by reasonable consumers when deciding whether to purchase the Meta Portal or pay a lesser price.

90.     Had Plaintiffs, the Nationwide Class, and the California Class known that Meta would discontinue the Meta Portal devices and render them less functional, they would not have purchased Meta Portal or would have paid much less for the devices.

91.     Plaintiffs, Nationwide Class Members, and California Class Members have been damaged as a result of Meta's violations of the CLRA as alleged herein.

92.     In accordance with Cal. Civ. Code § 1780(a), Plaintiffs, Nationwide Class Members, and California Class Members seek restitution, disgorgement, and attorneys' fees and costs.

93.     Pursuant to § 1782(a), Plaintiffs' counsel notified Defendant in writing by certified mail of the particular violations of § 1770 of the CLRA and demanded that it rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to act. If

Defendant fails to respond to Plaintiffs' letter or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice, as proscribed by § 1782, Plaintiffs will move to amend their Complaint to pursue claims for actual and punitive damages, as appropriate against Defendant. As to this cause of action at this time, Plaintiff Shipley seeks only injunctive relief.

**FOURTH CAUSE OF ACTION**
**Violation of the Song-Beverly Consumer Warranty Act**
**Cal. Civ. Code § 1790, *et seq.***
**(On Behalf of Plaintiffs and the Nationwide Class, or, alternatively,**
**by Plaintiff Shipley on behalf of the California Class)**

94.     Plaintiffs repeat and incorporate all of the preceding allegations as if fully set forth herein.

95.     At all times, Defendant was the manufacturer, distributor, warrantor, and/or seller of the Meta Portal devices. Defendant knew or should have known of the specific use for which the Meta Portal devices were purchased.

96.     Defendant provided Plaintiffs and members of the Nationwide and California Classes with an implied warranty that the Meta Portal devices, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold—as smart devices with numerous features and functions including video-calling, streaming, effects, storytelling, and voice command. The Defendant Portal devices, however, are not fit for their ordinary purpose because, *inter alia*, Meta did not maintain continued software functionality of the Meta Portal devices and thus, only a few years after purchase, the Meta Portal devices lost their advertised features and functions.

97.     The Meta Portal devices are not fit for the purpose of use as smart devices with features and functions including video-calling, streaming, effects, storytelling, and voice command because Defendant stopped supporting the Meta Portal devices' software.

98.     Defendant impliedly warranted that the Meta Portal devices were of merchantable quality and fit for such use. This implied warranty included, *inter alia*, a warranty that the Meta Portal devices that were manufactured, supplied, distributed, and/or sold by Defendant were reliable for use as smart devices for video-calling, streaming, effects, storytelling, and voice command, and that they would not prematurely fail.

///

**FIFTH CAUSE OF ACTION**
**Breach of Implied Warranty Under California Law**
**Cal. Unif. Com. Code §§ 2314-2315**
**(On Behalf of Plaintiffs and the Nationwide Class, or, alternatively,**
**by Plaintiff Shipley on behalf of the California Class)**

99.     Plaintiffs repeat and incorporate all of the preceding allegations as if fully set forth herein.

100.    Defendant provided Plaintiffs and members of the Nationwide and California Classes with an implied warranty that the Meta Portal devices, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold—as smart devices with numerous features and functions including video-calling, streaming, effects, storytelling, and voice command. The Defendant Portal devices, however, are not fit for their ordinary purpose because, *inter alia*, Meta did not maintain continued software functionality of the Meta Portal devices and thus, only a few years after purchase, the Meta Portal devices lost their advertised features and functions.

101.    Defendant provided Plaintiffs and members of the Nationwide and California Classes with an implied warranty that the Meta Portal devices, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold—as smart devices with numerous features and functions including video-calling, streaming, effects, storytelling, and voice command. The Defendant Portal devices, however, are not fit for their ordinary purpose because, inter alia, Meta did not maintain continued software functionality of the Meta Portal devices and thus, only a few years after purchase, the Meta Portal devices lost their advertised features and functions.

102.    The Meta Portal devices are not fit for the purpose of use as smart devices with features and functions including video-calling, streaming, effects, storytelling, and voice command because Defendant stopped supporting the Meta Portal devices' software.

103.    Defendant's actions, as complained of herein, breached the implied warranty that the Meta Portal devices were of merchantable quality and fit for such use.

**SIXTH CAUSE OF ACTION**
**Violation of New York's General Business Law (the "GBL")**
**N.Y. Gen. Bus. Law § 349, *et seq.***
**(On Behalf of Plaintiff Herod and the New York Class)**

104.    Plaintiffs repeat and incorporate all of the preceding allegations as if fully set forth herein.

105.    New York's GBL § 349 declares unlawful "[d]eceptive acts or practices in the conduct of

any business, trade or commerce or in the furnishing of any service in this state." N.Y. GBL § 349.

106.    Meta engaged in deceptive acts or practices in the conduct of its business, trade or commerce, or in the furnishing of its services in New York by failing to disclose and actively concealing its intent to discontinue and make less functional the Meta Portal devices after an unreasonably short period of time.

107.    Meta engaged in deceptive acts or practices prohibited by § 349, including: (i) advertising the Meta Portal devices with intent not to sell them as advertised; (ii) representing that the Meta Portal devices provide services to consumers such as, video calling, streaming, voice command, and functioning applications; (iii) representing that a transaction conferred or involved rights, remedies, or obligations which they do not; and (iv) representing that its goods have been supplied in accordance with a previous representation when they have not.

108.    Further, Meta failed to disclose and actively concealed its intention to discontinue many of its features, services, and uses of the Meta Portal devices, and ultimately render the Meta Portal devices less functional. These concealments and omissions of material fact had the capacity to mislead and deceive reasonable consumers, including Plaintiff Herod and New York Class Members about the capabilities, uses, and value of the Meta Portal device.

109.    Meta intentionally and knowingly misrepresented material facts regarding the Meta Portal devices with the intent to mislead Plaintiff Herod and New York Class Members.

110.    The aforementioned acts and practices are consumer-oriented, occurring in the conduct of trade or commerce, and are prohibited under New York's GBL § 349.

111.    There were reasonably available alternatives to further Meta's legitimate business interests, other than engaging in the misleading and deceptive conduct described herein.

112.    Meta's conduct and actions are deceptive and misleading to reasonable consumers.

113.    Plaintiff Herod and the New York Class Members relied on Meta's material misrepresentations and omissions about Meta Portal's promised features and uses when deciding to purchase the Meta Portal devices.

114.    As a direct and proximate result of Meta's misrepresentations and material omissions, Plaintiff Herod and the New York Class have suffered actual damages.

115.    Plaintiff Herod and New York Class Members would not have purchased the Meta Portal devices or would have paid substantially less for them, but for Defendant's false representations about the Meta Portal devices' features and uses.

116.    Pursuant to GBL § 349(h), Plaintiff Herod and New York Class Members seek actual damages or fifty ($50) per violation, whichever is greater, treble actual damages and reasonable attorneys' fees and costs incurred as a direct result of Meta's misrepresentations, omissions, and misconduct.

**SEVENTH CAUSE OF ACTION**
**Violation of Computer Fraud and Abuse Act (the "CFAA")**
**18 U.S.C. § 1030, *et seq.***
**(On Behalf of Plaintiffs and the Nationwide Class)**

117.    Plaintiffs repeat and incorporate all of the preceding allegations as if fully set forth herein.

118.    Defendant's Meta Portal devices constitute "protected computers" as that term is defined in the CFAA.

119.    In or around November 2022, Defendant announced its intention to discontinue the Meta Portal devices.

120.    Beginning in or around 2023, Defendant began removing software applications, services, and features from the Meta Portal device, thereby intentionally rendering the Meta Portal devices less functional.

121.    Meta Portal device owners did not provide Meta with authorization to access their Meta Portal devices for purposes of limiting the functionality of the Meta Portal.

122.    Defendant's intentional removal of all software applications, services, and features from the Meta Portal devices caused damage to Plaintiffs and Class Members, resulting in a significantly less useful product.

123.    Defendant's intentional acts caused damaged to all Meta Portal units sold in the United States and caused aggregate damages in excess of $5,000,000.

**EIGHTH CAUSE OF ACTION**
**Trespass to Chattels**
**(On Behalf of Plaintiffs and the Nationwide Class)**

124.    Plaintiffs repeat and incorporate all of the preceding allegations as if fully set forth herein.

125.    At all relevant times alleged herein, Plaintiffs and similarly situated Class Members were

25

the owners of and in possession of Defendant's Meta Portal devices.

126.    In or around November 2022, Defendant announced its intention to unlawfully take from Plaintiffs' and Class Members' possession an operational Meta Portal device through its forced discontinuance, leaving Plaintiffs and the Class Members with a less useful product.

127.    As a result of Defendant's unlawful taking of the property, Plaintiffs and Class Members each sustained damages.

## NINTH CAUSE OF ACTION
### Unjust Enrichment
**(On Behalf of Plaintiffs and the Nationwide Class)**

128.    Plaintiffs repeat and incorporate all of the preceding allegations as if fully set forth herein.

129.    To the detriment of Plaintiffs and the Class Members, Defendant has been, and continues to be, unjustly enriched as a result of its wrongful conduct alleged herein.

130.    Plaintiffs and the Class Members involuntarily conferred a benefit on Defendant when they purchased the Meta Portal devices.

131.    Defendant benefitted through its unjust conduct by selling the Meta Portal devices with the intention to discontinue any useful value of the Meta Portal devices, resulting in a product that is worthless to Plaintiffs and Class Members, who overpaid for their Meta Portal devices and/or would not have purchased the Meta Portal devices had they known that Defendant would unilaterally phase out the Meta Portal devices and their services, rendering them less functional.

132.    Defendant unfairly, deceptively, unjustly, and/or unlawfully accepted said benefits, which under the circumstances, would be unjust to allow Defendant to retain.

133.    These unfair and fraudulent acts allowed Defendant to unlawfully receive monies that would not have been obtained but for Defendant's misconduct.

134.    Defendant lacked any legal justification for having engaged in a course of fraudulent conduct, as alleged herein at Plaintiffs' and Class Members' expense.

135.    Plaintiffs and Class Members lack an adequate remedy at law.

136.    Plaintiffs and the Classes, therefore, seek disgorgement of all wrongfully obtained monies received by Defendant as a result of its inequitable conduct as more fully stated herein.

137.    Plaintiffs incorporate by reference the allegations regarding the potential inadequacy of legal remedies.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the Classes, respectfully request that the Court enter judgment in their favor and against Defendant, as follows:

A.    Certifying the Classes as requested herein, appointing Plaintiffs as Class Representatives, and appointing their counsel as Class Counsel;

B.    Awarding monetary damages, statutory damages, and/or punitive damages where appropriate;

C.    Ordering Defendant to disgorge and make restitution of all monies Defendant acquired by means of the unlawful practices set forth above;

D.    Awarding declaratory and injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein;

E.    Ordering Defendant to distribute a refund in the amount of the MSRP to each Class Member;

F.    Awarding Plaintiffs and Class Members their costs and expenses incurred in the action, including reasonable attorneys' fees and both pre- and post-judgment interest on any amounts awarded; and

G.    Providing such further relief as may be just and proper.

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all issues so triable.

Dated: April 14, 2025                          **KALIELGOLD PLLC**

By:*/s/ Sophia Goren Gold*
Sophia Goren Gold (SBN 307971)
*sgold@kalielgold.com*
490 43rd Street, No. 122
Oakland, California 94609
Tel: (202) 350-4783

CLASS ACTION COMPLAINT

Jeffrey D. Kaliel (SBN 238293)
*jkaliel@kalielpllc.com*
**KALIELGOLD PLLC**
1100 15th Street NW, 4th Floor
Washington, D.C.  20005
Tel: (202) 350-4783

Annick M. Persinger (CA Bar No. 272996)
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, CA 94612
(510) 254-6808
*apersinger@tzlegal.com*

*Attorneys for Plaintiffs*

CLASS ACTION COMPLAINT