1  BAMBO OBARO (Bar No. 267683)
   bambo.obaro@weil.com
2  DAVID R. SINGH (Bar No. 300840)
   david.singh@weil.com
3  MORGAN D. MACBRIDE (Bar No. 301248)
   morgan.macbride@weil.com
4  SHIREEN LEUNG (Bar No. 334484)
   shireen.leung@weil.com
5  WEIL, GOTSHAL & MANGES LLP
   201 Redwood Shores Parkway, 4th Floor
6  Redwood Shores, CA  94065-1134
   Telephone: (650) 802-3000
7  Facsimile: (650) 802-3100
8
9  Attorneys for Defendants

10                    UNITED STATES DISTRICT COURT

11                  NORTHERN DISTRICT OF CALIFORNIA

12                     SAN FRANCISCO DIVISION

13

14

| ELIZABETH SHIPLEY and SHAUN HEROD, on behalf of themselves and all others similarly situated, | Case No. 3:25-cv-03324-WHO |
|---|---|
| Plaintiffs, | **DEFENDANTS META PLATFORMS, INC. AND META PLATFORMS TECHNOLOGIES, LLC'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT** |
| v. | |
| META PLATFORMS, INC., and META PLATFORMS TECHNOLOGIES, LLC, | |
| Defendants. | Date:   Wednesday, September 17, 2025 Time:  2:00 p.m. Dept.:  Courtroom 2 – 17th Floor Judge: Honorable William H. Orrick |

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**NOTICE OF MOTION**

2          TO THE COURT AND ALL PARTIES OF RECORD:

3          PLEASE TAKE NOTICE that on September 17, 2025, at 2:00 p.m., or as soon thereafter as the

4   matter may be heard before the Honorable William H. Orrick, in Courtroom 2, 17th Floor, Defendants

5   Meta Platforms, Inc. and Meta Platforms Technologies, LLC (collectively, "Defendants" or "Meta") will

6   and hereby do move to dismiss the First Amended Class Action Complaint filed by Plaintiffs Elizabeth

7   Shipley and Shaun Herod ("Plaintiffs") in this action.  Meta's motion to dismiss is brought pursuant to

8   Federal Rules of Civil Procedure 12(b)(1), 12 (b)(6), and 9(b).

9          This motion is based upon this Notice of Motion and Motion, the Memorandum of Points and

10  Authorities in support thereof, and all other pleadings and papers on file herein, and such argument and

11  evidence as may be presented to the Court.

12  Dated: August 7, 2025                                          Respectfully submitted,

13                                                                 WEIL, GOTSHAL & MANGES LLP

14

15                                                                 By:  _/s/ Bambo Obaro_____
                                                                        BAMBO OBARO

16
                                                                   Attorneys for Defendants META PLATFORMS,
17                                                                 and META PLATFORMS TECHNOLOGIES,
                                                                   LLC, INC.
18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

                                                                                            **Page**

INTRODUCTION ...................................................................................................1

STATEMENT OF THE ISSUES TO BE DECIDED.................................................2

BACKGROUND ....................................................................................................2

    I.     META LAUNCHES THE PORTAL WITH LIMITED WARRANTY
          DISCLOSURES.................................................................................2

    II.    PLAINTIFFS PURCHASE THE PORTAL ...........................................4

    III.   META DISCONTINUES THE PORTAL ...............................................5

    IV.   PLAINTIFFS FILE THIS LAWSUIT ...................................................5

LEGAL STANDARD..............................................................................................6

ARGUMENT ..........................................................................................................7

    I.     PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE CONSUMER
          PROTECTION STATUTES (COUNTS I–III, VI) .................................7

        A.    Plaintiffs Fail to Allege the Basic Elements of a Claim Under the
             CLRA or GBL (Counts III, VI) ..............................................7

            1.     Plaintiffs Fail to Allege an Actionable Pre-Purchase
                  Misrepresentation or Omission ......................................8

                  a.    Plaintiffs Fail to Allege an Actionable Pre-Purchase
                       Misrepresentation.................................................8

                  b.    Plaintiffs Fail to Allege an Actionable Omission .............10

            2.     Plaintiffs Fail to Adequately Allege Reliance or Causation ..........13

            3.     Plaintiffs Fail to Allege Fraudulent Intent ...................................15

         B.    Plaintiffs Fail to Allege a Claim Under the FAL (Count II).....................15

         C.    Plaintiffs Fail to State a Claim Under the UCL (Count I) ........................16

            1.     Plaintiffs Fail to Allege a UCL Claim Under the "Unlawful"
                  Prong ...........................................................................16

            2.     Plaintiffs Fail to Allege a UCL Claim Under the "Fraudulent"
                  Prong ...........................................................................16

            3.     Plaintiffs Fail to Allege a UCL Claim Under the "Unfair"
                  Prong ...........................................................................17

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

II.   PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF IMPLIED
      WARRANTY (COUNTS IV–V)........................................................................19

      A.    Plaintiffs Fail to Plausibly Allege a Breach of Any Implied Warranty .....19

      B.    Meta Properly Disclaimed Implied Warranties Under the Commercial
            Code ...........................................................................................................20

III.  PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE CFAA (COUNT
      VII)...............................................................................................................21

      A.    Plaintiffs Have Not Pled a CFAA Claim for Access or Transmission
            Without Authorization Causing Damage....................................................22

      B.    Plaintiffs Do Not Satisfy the $5,000 Loss Threshold ...............................23

IV.   PLAINTIFFS FAIL TO STATE A TRESPASS TO CHATTELS CLAIM
      (COUNT VIII) ............................................................................................24

V.    PLAINTIFFS FAIL TO STATE A CLAIM FOR UNJUST ENRICHMENT
      (COUNT IX) ..............................................................................................25

CONCLUSION...............................................................................................25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Actimmune Mktg. Litig.*,
  2010 WL 3463491 (N.D. Cal. Sept. 1, 2010), *aff'd*, 464 F. App'x 651 (9th Cir. 2011) ...14, 17

*Against Gravity Apparel, Inc. v. Quarterdeck Corp.*,
  267 A.D.2d 44 (N.Y. App. Div. 1999) ...................................................................................12

*Am. Suzuki Motor Corp. v. Superior Court*,
  37 Cal. App. 4th 1291 (1995) ...............................................................................................20

*Anderson v. Apple Inc.*,
  500 F. Supp. 3d 993 (N.D. Cal. 2020) (Orrick, J.) ...............................................................21

*In re Apple Inc. Device Performance Litig.*,
  347 F. Supp. 3d 434 (N.D. Cal. 2018) .................................................................................8, 9

*In re Apple Inc. Device Performance Litig.*,
  386 F. Supp. 3d 1155 (N.D. Cal. 2019) ...............................................................................6, 8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................................6

*Atkinson v. Elk Corp. of Tex.*,
  142 Cal. App. 4th 212 (2006) ...............................................................................................19

*Backus v. Gen. Mills, Inc.*,
  122 F. Supp. 3d 909 (N.D. Cal. 2015) ..................................................................................18

*Bank of N.Y. v. Fremont Gen. Corp.*,
  523 F.3d 902 (9th Cir. 2008) .................................................................................................24

*Baranco v. Ford Motor Co.*,
  294 F. Supp. 3d 950 (N.D. Cal. 2018) ..................................................................................12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................................6

*Berenblat v. Apple, Inc.*,
  2009 WL 2591366 (N.D. Cal. Aug. 21, 2009) .......................................................................9

*Boghossian v. Capella Univ., LLC*,
  2025 WL 934878 (S.D.N.Y. Mar. 27, 2025) ...................................................................10, 11

*Brodsky v. Apple Inc.*,
  445 F. Supp. 3d 110 (N.D. Cal. 2020) ...................................................................24, 25

*Broomes v. FullBeauty Brands Operations, LLC*,
  2025 WL 829589 (N.D. Cal. Jan. 31, 2025) ................................................................15

*Burdt v. Whirlpool Corp.*,
  2015 WL 4647929 (N.D. Cal. Aug. 5, 2015) ...............................................................17

*Camacho v. Auto. Club of S. Cal.*,
  142 Cal. App. 4th 1394 (2006) ....................................................................................19

*Campion v. Old Republic Home Prot. Co.*,
  272 F.R.D. 517 (S.D. Cal. Jan. 6, 2011) .....................................................................13

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999) .................................................................................................18

*Cohen v. DIRECTV, Inc.*,
  178 Cal. App. 4th 966 (2009) ......................................................................................14

*Chimienti v. Wendy's Int'l, LLC*,
  698 F. Supp. 3d 549 (E.D.N.Y. 2023) ............................................................................9

*Davidson v. Kimberly-Clark Corp.*,
  889 F.3d 956 (9th Cir. 2018) ..........................................................................................6

*Davis v. HSBC Bank Nev., N.A.*,
  691 F.3d 1152 (9th Cir. 2012) ................................................................................17, 18

*Ebner v. Fresh, Inc.*,
  838 F.3d 958 (9th Cir. 2016) ..........................................................................................8

*Eidmann v. Walgreen Co.*,
  522 F. Supp. 3d 634 (N.D. Cal. 2021) ...........................................................................3

*Facebook, Inc. v. Power Ventures, Inc.*,
  844 F.3d 1058 (9th Cir. 2016) ......................................................................................22

*Gale v. Int'l Bus. Machs. Corp.*,
  9 A.D.3d 446 (N.Y. App. Div. 2004) ...........................................................................14

*Garcia v. Sony Comput. Ent. Am., LLC*,
  859 F. Supp. 2d 1056 (N.D. Cal. 2012) ..................................................................11, 12

*In re Google Assistant Privacy Litig.*,
  546 F. Supp. 3d 945 (N.D. Cal. 2021) .........................................................................15

*In re Google Phone Litig.*,
    2012 WL 3155571 (N.D. Cal. Aug. 2, 2012) ........................................................................21

*Harris v. Pfizer Inc.*,
    586 F. Supp. 3d 231 (S.D.N.Y. 2022) ..................................................................................11

*Hernandez v. Path, Inc.*,
    2012 WL 5194120 (N.D. Cal. Oct. 19, 2012) .........................................................................3

*hiQ Labs, Inc. v. LinkedIn Corp.*,
    31 F.4th 1180 (9th Cir. 2022) ..............................................................................................21

*Hodsdon v. Mars, Inc.*,
    891 F.3d 857 (9th Cir. 2018) ............................................................................13, 14, 16, 17

*Inter-Mark USA, Inc. v. Intuit, Inc.*,
    2008 WL 552482 (N.D. Cal. Feb. 27, 2008) ........................................................................21

*In re iPhone Application Litig.*,
    6 F. Supp. 3d 1004 (N.D. Cal. 2013) ...................................................................................14

*Joslin v. Clif Bar & Co.*,
    2019 WL 5690632 (N.D. Cal. Aug. 26, 2019) .......................................................................8

*Kane v. Chobani, Inc.*,
    2013 WL 5289253 (N.D. Cal. Sept. 19, 2013) .....................................................................14

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009)] ......................................................................................14, 16

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018) ............................................................................................3, 6

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) ...............................................................................................3

*Kowalsky v. Hewlett-Packard Co.*,
    771 F. Supp. 2d 1156 (N.D. Cal. 2011) ..........................................................................15, 16

*Krystofiak v. BellRing Brands, Inc.*,
    737 F. Supp. 3d 782 (N.D. Cal. 2024) .................................................................................11

*Lam v. Gen. Mills, Inc.*,
    859 F. Supp. 2d 1097 (N.D. Cal. 2012) .................................................................................9

*Leite v. Crane Co.*,
    749 F.3d 1117 (9th Cir. 2014) ...............................................................................................6

*Long v. Hewlett-Packard Co.*,
     2007 WL 2994812 (N.D. Cal. July 27, 2007), *aff'd*, 316 F. App'x 585 (9th Cir.
     2009) ...........................................................................................................................9

*Lozano v. AT & T Wireless Servs., Inc.*,
     504 F.3d 718 (9th Cir. 2007) .............................................................................18

*LVRC Holdings LLC v. Brekka*,
     581 F.3d 1127 (9th Cir. 2009) ...........................................................................22

*Maloney v. Verizon Internet Servs., Inc.*,
     2009 WL 8129871 (C.D. Cal. Oct. 4, 2009), *aff'd*, 413 F. App'x 997 (9th Cir. 2011)...........10

*Marchante v. Sony Corp. of Am., Inc.*,
     2011 WL 6027602 (S.D. Cal. Dec. 5, 2011)........................................................11

*McGinity v. P&G*,
     69 F.4th 1093 (9th Cir. 2023) .............................................................................8

*Mehta v. Robinhood Fin. LLC*,
     2021 WL 6882377 (N.D. Cal. May 6, 2021) ........................................................8

*Minkler v. Apple Inc.*,
     65 F. Supp. 3d 810 (N.D. Cal. 2014) ..................................................................20

*Mobile Emergency Hous. Corp. v. HP, Inc.*,
     2021 WL 9867952 (N.D. Cal. Oct. 15, 2021)......................................................25

*Moore v. Microsoft Corp.*,
     293 A.D.2d 587 (N.Y. App. Div. 2002) .............................................................12

*Morales v. Kimberly-Clark Corp.*,
     2020 WL 2766050 (S.D.N.Y. May 27, 2020) .....................................................11

*Morgan v. Harmonix Music Sys., Inc.*,
     2009 WL 2031765 (N.D. Cal. July 7, 2009)........................................................17

*In re NJOY, Inc. Consumer Class Action Litig.*,
     2014 WL 12586074 (C.D. Cal. Oct. 20, 2014)......................................................6

*Norcia v. Samsung Telecomms. Am., LLC*,
     2015 WL 4967247 (N.D. Cal. Aug. 20, 2015) ....................................................16

*NovelPoster v. Javitch Canfield Grp.*,
     140 F. Supp. 3d 938 (N.D. Cal. 2014) (Orrick, J.) .............................................24

*Ocampo v. Apple Inc.*,
     2022 WL 767614 (N.D. Cal. Mar. 14, 2022)......................................................19

*Oestreicher v. Alienware Corp.*,
  544 F. Supp. 2d 964 (N.D. Cal. 2008), *aff'd*, 322 F. App'x 489 (9th Cir. 2009) ..................15

*Opperman v. Path, Inc.*,
  87 F. Supp. 3d 1018 (N.D. Cal. 2014) ..................................................................................15

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
  647 N.E.2d 741 (N.Y. 1995)............................................................................................10, 13

*Parziale v. HP, Inc.*,
  2020 WL 5798274 (N.D. Cal. Sept. 29, 2020) ............................................................23, 24

*Patt v. Antech Diagnostics, Inc.*,
  2020 WL 5076970 (C.D. Cal. May 18, 2020) ......................................................................13

*Peguero v. Toyota Motor Sales, USA, Inc.*,
  2020 WL 10354127 (C.D. Cal. Nov. 18, 2020)......................................................................6

*Pelman ex rel. Pelman v. McDonald's Corp.*,
  396 F.3d 508 (2d Cir. 2005)....................................................................................................6

*Phillips v. Apple Inc.*,
  2016 WL 1579693 (N.D. Cal. Apr. 19, 2016) ......................................................................14

*Pirozzi v. Apple Inc.*,
  996 F. Supp. 2d 909 (N.D. Cal. 2013) ..................................................................................14

*Price v. Apple Inc.*,
  2022 WL 1032472 (N.D. Cal. Apr. 6, 2022)........................................................................25

*Prince-Weithorn v. GMAC Mortg., LLC*,
  2011 WL 11651984 (C.D. Cal. May 5, 2011) ......................................................................17

*San Miguel v. HP Inc.*,
  317 F. Supp. 3d 1075 (N.D. Cal. 2018) ................................................................................23

*Sloan v. Gen. Motors LLC*,
  287 F. Supp. 3d 840 (N.D. Cal. 2018) ..................................................................................12

*Smith v. Intel Corp.*,
  745 F. Supp. 3d 853 (N.D. Cal. 2024) ..................................................................................17

*Smith v. LG Elecs. U.S.A., Inc.*,
  2014 WL 989742 (N.D. Cal. Mar. 11, 2014)..........................................................................8

*Song Fi Inc. v. Google, Inc.*,
  108 F. Supp. 3d 876 (N.D. Cal. 2015) ..................................................................................10

*In re Sony HDTV*,
    758 F. Supp. 2d 1077 (S.D. Cal. 2010)....................................................................11, 16, 19, 20

*In re Sony PS3 Other OS Litig.*,
    551 F. App'x 916 (9th Cir. 2014) ..........................................................................................15

*Stearns v. Select Comfort Retail Corp.*,
    2009 WL 1635931 (N.D. Cal. June 5, 2009) ..........................................................................20

*Stewart v. Electrolux Home Prods., Inc.*,
    304 F. Supp. 3d 894 (E.D. Cal. 2018).....................................................................................16

*Taleshpour v. Apple Inc.*,
    2021 WL 1197494 (N.D. Cal., Mar. 30, 2021) .......................................................................19

*Taleshpour v. Apple Inc.*,
    549 F. Supp. 3d 1033 (N.D. Cal. 2021), *aff'd*, 2022 WL 1577802 (9th Cir. May 19,
    2022) .......................................................................................................................................12

*Talyancich v. Microsoft Corp.*,
    2012 WL 12941690 (W.D. Wash. Nov. 2, 2012) ....................................................................24

*Tauler Smith, LLP v. Valerio*,
    2020 WL 1921789 (C.D. Cal. Mar. 6, 2020) ..........................................................................24

*United States v. Nosal*,
    676 F.3d 854 (9th Cir. 2012) ..................................................................................................21

*Van Buren v. United States*,
    593 U.S. 374 (2021)................................................................................................................23

*Wai Chu v. Samsung Elecs. Am., Inc.*,
    2020 WL 1330662 (S.D.N.Y. Mar. 23, 2020) ..........................................................................7

*Williams v. Visa, Inc.*,
    2025 WL 1518044 (N.D. Cal. May 28, 2025) .........................................................................17

*Wilson v. Hewlett-Packard Co.*,
    668 F.3d 1136 (9th Cir. 2012) .............................................................................10, 11, 12, 15

*Wright v. Charles Schwab & Co.*,
    2020 WL 6822887 (N.D. Cal. Nov. 20, 2020) .......................................................................25

*Zeller v. Optavia LLC*,
    2024 WL 1207461 (S.D. Cal. Mar. 14, 2024) ...........................................................................7

**Statutes**

18 U.S.C. § 1030.............................................................................................................................21

18 U.S.C. § 1030(a)(5)(A) ...........................................................................................22

18 U.S.C. § 1030(e)(6) .................................................................................................23

18 U.S.C. § 1030(e)(11) ...............................................................................................24

18 U.S.C. § 1030(g) ...............................................................................................22, 23

18 U.S.C. § 1080(a)(3), (6), (7) ...................................................................................23

Cal. Bus. & Prof. Code § 17200 ..................................................................................16

Cal. Civ. Code § 1770(a)(9) .........................................................................................15

Cal. Civ. Code § 1791.1(c) ..........................................................................................19

Cal. Com. Code § 2314 ..................................................................................................6

Cal. Com. Code § 2315 ..................................................................................................6

Cal. Com. Code § 2316(3)(a) .......................................................................................20

**Other Authorities**

S. Rep. No. 104-357, 1996 WL 492169 (1996) ...........................................................21

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

Meta launched the Portal in 2018. It is a device that helps connect family members and loved ones through video-calling and other features. Meta warranted each Portal for one year from the date of purchase, and Meta was careful to inform consumers that it "may update, modify or limit such software and services in [its] sole discretion." Such a disclaimer is helpful to consumers, in part, because modern technology demands constant maintenance and such maintenance requires continuous investment by the manufacturer. It is therefore common for technology products to lose their functionality over time because new technology outpaces them or market conditions change.

Plaintiffs are two consumers of the Portal who for many years had the ability to enjoy the product's video-calling and streaming features. Plaintiff Elizabeth Shipley purchased her Portal in November 2020, and Plaintiff Shaun Herod purchased his in March 2022. Neither points to any specific advertisements for the Portal they saw (or relied upon) in advance of their respective purchases. Yet they now bring this lawsuit raising a host of false advertising, consumer protection, and even computer hacking claims, asserting that in January 2025—more than four years after Shipley's purchase and nearly three years after Herod's—Meta phased out certain features of the Portal, thereby limiting some functionalities. Plaintiffs do not deny that for the years preceding that phaseout (and the entirety of the one-year warranty), they each had access to an array of applications originally available on the Portal.

This lawsuit accusing Meta of false advertising has no basis in the law. Meta never represented to consumers that all applications on the Portal would be available indefinitely or that Meta would continue to provide software support for all features of the Portal in perpetuity. Just the opposite: Meta expressly disclosed to Plaintiffs that it may alter or remove certain features of the Portal after the expiration of the one-year limited warranty period—and there is no dispute that Meta fully honored that limited warranty for Plaintiffs (and then some). Nor is there any allegation that Meta knew or believed at the time of Plaintiffs' purchases that it would ultimately discontinue certain applications on the Portal several years later, and it is implausible that Meta would have invested in the Portal if it knew in advance that the product would not attract sufficient consumer interest.

Contrary to Plaintiffs' insinuations otherwise, this is not a case of bait-and-switch. Plaintiffs used their devices for years without any disruption, and even today, Meta maintains certain functions on the Portal. Whatever motivations Plaintiffs impute to other technology manufacturers who allegedly degrade service on their products in order to induce consumers to purchase newer versions, no such motivations are even arguably present here: Meta has not released a next generation or replacement device for the Portal—instead, the product was simply discontinued and is no longer offered for sale.

This lawsuit essentially is an attempt to put a square peg in a round hole, recasting Plaintiffs' frustration with Meta as consumer protection claims. But the law does not support their theories. The Complaint should be dismissed in its entirety.

### STATEMENT OF THE ISSUES TO BE DECIDED

1.    Whether Plaintiffs plead allegations sufficient to state false advertising claims under California and New York consumer protection laws;

2.    Whether Plaintiffs plead allegations sufficient to state claims for breach of implied warranty;

3.    Whether Plaintiffs plead allegations sufficient to state claims for violation of the Computer Fraud and Abuse Act or for trespass to chattels;

4.    Whether Plaintiffs plead allegations sufficient to state a claim for unjust enrichment.

### BACKGROUND[1]

### I.    META LAUNCHES THE PORTAL WITH LIMITED WARRANTY DISCLOSURES

In 2018, Meta launched its first Portal device. First Am. Compl. ("FAC") ¶ 12. The Portal is a smart display device used with various applications and software functions, including video-calling and music and video streaming capabilities. *Id.* ¶ 13. Over time, Meta rolled out four different models of the Portal: Portal, Portal+, Portal TV, and Portal Go (collectively, the "Portal"). *Id.* ¶ 12.

---

[1] This background is drawn from the allegations of the FAC, and the facts alleged in the FAC are assumed as true only for purposes of this motion.

From the initial release of the Portal, customers were informed of the limited duration for which Meta guaranteed functionality and support, and of the possibility that Meta may ultimately phase out some features on the Portal.

On its website, Meta disclosed that "[a] one-year limited consumer warranty is provided with Portal purchases."  FAC ¶ 20 n.10; Request for Judicial Notice ("RJN") Ex. 1.[2]



In that Limited Consumer Warranty, which is also publicly available on Meta's website, Meta stated it "will make and keep software and services available during the Warranty period" and that Meta "may update, modify or limit such software and services in [its] sole discretion so long as [it continues] to maintain (or exceed) the Warranted Functionality."  Compl., Ex. A; RJN Ex. 2.  Meta further clarified that the Warranty "continues for one (1) year from the date of purchase."  Compl., Ex. A; RJN Ex. 2.  And finally, the Warranty states that Meta "does not extend any implied or statutory warranties, conditions or representations regarding the [Portal] or any connected software or online services."  *Id.*

---

[2] The exhibits referenced herein are all incorporated by reference into the FAC.  Exhibits 1, 2, and 4 are expressly cited or referenced in the FAC and may therefore be considered in resolving Meta's motion to dismiss.  *See* FAC ¶¶ 20 & n.10, 52 & n.22; *see also Eidmann v. Walgreen Co.*, 522 F. Supp. 3d 634, 641 (N.D. Cal. 2021).  Exhibit 3 (the Supplemental Portal Terms of Service) is also incorporated by reference because Plaintiffs' claims depend on the representations and disclosures made by Meta regarding the Portal and because the Supplemental Portal Terms of Service are necessary to provide complete context for Meta's disclosures.  *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998, 1002 (9th Cir. 2018); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *Hernandez v. Path, Inc.*, 2012 WL 5194120, at *3 (N.D. Cal. Oct. 19, 2012).  In the alternative, the Court may take judicial notice of the exhibits.  *See* RJN.

Meta provided additional disclosures through the Supplemental Terms of Service ("Supplemental Terms of Service"), which were made available to users when they first activated their devices. *See* RJN Ex. 3.[3]  By using their Portal devices, Plaintiffs agreed to these Supplemental Terms of Service. *Id.* ("By using your Portal, you agree to these Portal Terms and the [Meta] Terms of Service . . . .").  Relevant here, the Supplemental Terms of Service disclosed that "[f]unctionality may change or be limited" and that:

> [Meta] may . . . **impose limits on, suspend, eliminate, change, or update certain existing features** (including [Meta] Products, Facebook Company Products or Third-Party Services) or any part of your Portal's services, or restrict access to parts or all of your Portal ….

*Id.* (emphasis added).  The Supplemental Terms of Service also prominently disclaimed, in bold and capitalized letters, any implied warranties:

> **The [Meta] Products (including your Portal), however, are provided 'as is,' and we make no representations or guarantees that they always will be safe, secure, or error-free, or that they will function without disruptions, delays, or imperfections. To the fullest extent permitted by law, we also DISCLAIM ALL WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE, AND NON-INFRINGEMENT**.

*Id.* (emphasis in original).

## II.    PLAINTIFFS PURCHASE THE PORTAL

Plaintiff Shipley (from California) alleges she purchased a Portal directly from Meta on or around November 12, 2020 for $154.  FAC ¶ 8.  She alleges she purchased the Portal after "being exposed to" online advertisements marketing the device as an easy way to connect with family members, *id.* ¶ 36, but does not specify any particular advertisements she viewed or relied upon.  The only specific advertisement alleged in the FAC regarding connecting with family members is from November 2021, *see* FAC ¶ 15 & n.5, a full year after Shipley made her purchase.

Plaintiff Herod (from New York) alleges he purchased a Portal and Portal TV in or around March 2022 from Best Buy.  FAC ¶ 9.  He alleges he purchased the Portal devices after "being exposed to"

---

[3] These are in addition to the Terms of Service generally applicable to Meta's products and referenced by Plaintiffs.  *See* FAC ¶ 52; *see also* RJN Ex. 4.

television advertisements that marketed the devices as having streaming capabilities.  *Id.* ¶ 42.  But like Ms. Shipley, he does not identify any particular advertisements he viewed or relied upon.  Plaintiffs do not identify any specific television advertisements describing the Portal's streaming features in the FAC.

In addition to the November 2021 advertisement, Plaintiffs allege that at other times (unspecified by Plaintiffs), Meta advertised the Portal as a "step forward in smart video calling" and a new way "to 'share deeper connections and delightful moments'" with loved ones, FAC ¶ 2, and as "focusing on the depth of connection," *id.* ¶ 14.  Plaintiffs further allege that in December 2022—two years after Ms. Shipley made her purchase and nine months after Mr. Herod made his—Meta encouraged consumers to "Celebrate Together From Wherever" and "Connect and collaborate with confidence."  *Id.* ¶ 20 & n.10. Plaintiffs do not allege that they themselves viewed these advertisements, and identify no other specific advertisements for the Portal in their FAC.

## III.    META DISCONTINUES THE PORTAL

In or around June 2022, Meta publicly announced it would stop selling consumer versions of the Portal and would instead offer the Portal only for business use.  FAC ¶ 18.  Then, in November 2022, Meta announced it would discontinue the Portal line of products altogether.  *Id.* ¶ 19.  Following these announcements, Meta sold the devices at a significant discount.  *Id.* ¶ 20.

Plaintiffs allege that in mid-2023, Meta started the process of phasing out certain first-party and third-party applications and software functions on the Portal, to be "effective early 2025."  FAC ¶ 21. Plaintiffs specifically point to the phaseout of "the voice control feature," the "Facebook messenger calling feature" and the Facebook Live app beginning in January 2025.  *Id.* ¶¶ 39, 45.  By January 2025, Ms. Shipley had owned and used her Portal for more than four-and-a-half years; Mr. Herod had owned and used his Portal for nearly three years.  As of today, while Meta no longer sells the Portal, it continues to provide ongoing customer support for Portal owners.  FAC ¶ 40.

## IV.    PLAINTIFFS FILE THIS LAWSUIT

Plaintiffs filed this action on behalf of three putative classes defined as "[a]ll persons who reside in the United States who purchased a Meta Portal device," "[a]ll persons who reside in California who purchased a Meta Portal device," and "[a]ll persons who reside in New York who purchased a Meta

Portal device." FAC ¶ 49. Plaintiffs assert claims for violations of California's Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), and Consumer Legal Remedies Act ("CLRA") and New York's General Business Law ("GBL") (Counts I–III, VI), breaches of the implied warranties under the Song-Beverly Consumer Warranty Act and California Commercial Code Sections 2314 and 2315 (Counts IV–V), violation of the Computer Fraud and Abuse Act ("CFAA") (Count VII), as well as common law claims for trespass to chattels (Count VIII) and unjust enrichment (Count IX).

## LEGAL STANDARD

To state a plausible claim for relief, a plaintiff must allege "sufficient factual matter" that, taken as true, "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). These "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see also id.* at 570 (a complaint that fails to nudge "claims across the line from conceivable to plausible . . . must be dismissed"). When deciding a Rule 12(b)(6) motion, the Court may consider documents that are incorporated by reference in the complaint or otherwise subject to judicial notice. *See Khoja*, 899 F.3d at 998. Where a defendant makes a facial challenge to a plaintiff's standing, the Court "determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

In addition, Rule 9(b)'s heightened pleading standard applies to those claims sounding in fraud—the CLRA, UCL, FAL, CFAA, and trespass to chattels claims—and requires Plaintiffs to plead "with particularity the circumstances constituting fraud." *In re Apple Inc. Device Performance Litig.*, 386 F. Supp. 3d 1155, 1164, 1181 (N.D. Cal. 2019) (CFAA and trespass to chattels claims); *see also Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018) (CLRA, FAL, and UCL claims).[4]

---

[4] Although there is a split of authority, courts in this Circuit have held that Rule 9(b) applies to GBL claims where a plaintiff alleges a "unified course of fraudulent conduct." *Peguero v. Toyota Motor Sales, USA, Inc.*, 2020 WL 10354127, at *9 (C.D. Cal. Nov. 18, 2020) (quotation marks omitted); *see also In re NJOY, Inc. Consumer Class Action Litig.*, 2014 WL 12586074, at *14 (C.D. Cal. Oct. 20, 2014) (same). *But see Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005) (declining to apply Rule 9(b) to GBL claims). Plaintiffs here do claim such a "course of fraudulent conduct," FAC ¶ 131, and Rule 9(b) should therefore apply. That said, whether Rule 9(b) applies to the GBL claims does not alter the outcome.

**ARGUMENT**

## I. PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE CONSUMER PROTECTION STATUTES (COUNTS I–III, VI)

Plaintiffs' core legal theory is that Meta violated false advertising and consumer protection laws when it advertised the Portal to consumers. FAC ¶¶ 58–74, 75–81, 82–90, 101–13. Whether pled under California's CLRA, FAL, or UCL or New York's GBL,[5] these claims fail for several reasons. At the most basic level, Plaintiffs have not identified any false or misleading statement or omission by Meta. Meta is not alleged to have made any representations about the duration of support for the Portal; in fact, Meta warranted the functionality of the Portal for only one year after purchase and disclosed to Plaintiffs that outside of the limited warranty period, Meta may modify or discontinue certain features on the Portal. Plaintiffs do not dispute that each of them has enjoyed the advertised features of the Portal for several years (well beyond the one-year limited warranty) and do not identify a single, specific advertisement either of them saw (let alone relied upon) prior to purchasing a Portal. Plaintiffs have not stated a plausible claim under any of the various statutes they invoke.

### A. Plaintiffs Fail to Allege the Basic Elements of a Claim Under the CLRA or GBL (Counts III, VI)

Plaintiffs' claims premised on sections (a)(5), (a)(9), and (a)(16) of the CLRA under California law and on section 349 of the GBL under New York law fail because Plaintiffs have not alleged the essential elements of such claims. *See Zeller v. Optavia LLC*, 2024 WL 1207461, at *5 (S.D. Cal. Mar. 14, 2024) (holding the same basic standards apply to sections (a)(5), (a)(9), and (a)(16) the CLRA and collecting cases); *Wai Chu v. Samsung Elecs. Am., Inc.*, 2020 WL 1330662, at *6 (S.D.N.Y. Mar. 23, 2020) ("New York [and] California['s] . . . consumer protection statutes and common law all require that plaintiffs could plausibly allege that a reasonable consumer would be misled.").

---

[5] The Supplemental Terms of Service contain a choice-of-law provision selecting California as the governing law. RJN Ex. 3, § 9. Meta proceeds here on the assumption that the choice-of-law provision does not bar the assertion of a claim under the GBL—because it is immaterial for purposes of this motion—but reserves all rights in the event a dispute as to choice of law arises later in the proceedings.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

> **1.    Plaintiffs Fail to Allege an Actionable Pre-Purchase Misrepresentation or Omission**

Both the CLRA and the GBL require either an affirmative misrepresentation or a misleading omission.  Plaintiffs pursue both theories here but have not plausibly alleged either.

> **a.    Plaintiffs Fail to Allege an Actionable Pre-Purchase Misrepresentation**

To state a claim based on an affirmative misrepresentation, plaintiffs must "show that 'members of the public are likely to be deceived'" by the representation.  *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (citation omitted); *see also Joslin v. Clif Bar & Co.*, 2019 WL 5690632, at *6 (N.D. Cal. Aug. 26, 2019).  In order to be actionable, a representation must mislead a "significant portion" of the public acting reasonably under the circumstances.  *McGinity v. P&G*, 69 F.4th 1093, 1097 (9th Cir. 2023) (quotation marks omitted).  Plaintiffs do not meet this pleading requirement.

At the outset, Plaintiffs fail to identify any affirmative statements that convey objective information capable of giving rise to a consumer protection claim.  Plaintiffs allege that Meta marketed the Portal as a "Gift of Deeper Connection" (FAC ¶ 15), a "step forward in smart video calling" (*id.* ¶ 2), and a new way "to 'share deeper connections and delightful moments'" with friends and families" (*id.*).  These statements are precisely the kind of "general assertions" that "are very unlikely to mislead a reasonable consumer," because they "say nothing about the specific characteristics or components" of the device.  *In re Apple Inc. Device Performance Litig.*, 347 F. Supp. 3d 434, 457 (N.D. Cal. 2018) ("*Device Performance I*"), *on reconsideration in part*, 386 F. Supp. 3d 1155 (N.D. Cal. 2019); *Mehta v. Robinhood Fin. LLC*, 2021 WL 6882377, at *10 (N.D. Cal. May 6, 2021) (holding that statements like "take[s] privacy and security seriously" and  "[d]edicated to maintaining the highest security standards" are non-actionable because a reasonable consumer could not rely on these statements as "specific, non-subjective guarantee[s]"); *Smith v. LG Elecs. U.S.A., Inc.*, 2014 WL 989742, at *6 (N.D. Cal. Mar. 11, 2014) (statements that "machines . . . would provide many years of reliable service, and that they were designed and manufactured for years of dependable service . . . are not statements of affirmation and promise, but rather non-actionable puffery").  No reasonable consumer would interpret such statements

as objective representations about the nature or services of the Portal, and for that reason alone, Plaintiffs'
affirmative misrepresentation theory fails.

Plaintiffs' affirmative misrepresentation claims also "fail to particularly explain what is false or
misleading about" the statements. *Device Performance I*, 347 F. Supp. 3d at 457 (quoting *Yastrab v.
Apple Inc.*, 173 F. Supp. 3d 972, 979 (N.D. Cal. 2016)). Indeed, Plaintiffs do not dispute that the Portal
*did* represent a "step forward in smart video calling," FAC ¶ 2, *did* offer a new way "to share deeper
connections and delightful moments" with friends and families," *id.*, and *did* provide friends and family
members the opportunity of a "Deeper Connection," *id.* ¶ 15. That is all Meta is alleged to have
represented, and as a matter of law, statements accurately conveying the features or benefits of a product
cannot give rise to a claim of affirmative misrepresentation. *See Lam v. Gen. Mills, Inc.*, 859 F. Supp.
2d 1097, 1103–04 (N.D. Cal. 2012) (finding that "the statement 'gluten free' cannot support Plaintiff's
claims under the UCL, CLRA, or FAL" because "[t]he statement [was] objectively true and
communicates nothing more than the absence of gluten in the product"); *see also Chimienti v. Wendy's
Int'l, LLC*, 698 F. Supp. 3d 549, 559 (E.D.N.Y. 2023) (dismissal warranted when "customers received
the same objective amount of product that was advertised yet alleged that the defendants' advertisements
made it appear that customers would receive a larger portion").

Plaintiffs' theory that Meta's eventual phaseout of certain Portal features rendered years-old
statements about "specific features, functions, and services" false or misleading is a non-starter. FAC
¶ 84. None of these statements said anything about the ongoing support Meta would provide for the
Portal, much less anything about the *duration* of any associated features. And certainly none of them
included any representation that Meta would support all features in perpetuity or beyond the express
limited warranty. Courts have dismissed similar claims based on an alleged loss of an advertised
functionality outside of the express warranty period (here, one year). *See Berenblat v. Apple, Inc.*, 2009
WL 2591366, at *6 (N.D. Cal. Aug. 21, 2009) ("If the memory slots were functional throughout the
period of the express warranty, a later failure would not conflict with a statement regarding memory
capacity because there was no representation as to the durability of the memory slot."); *Long v. Hewlett-
Packard Co.*, 2007 WL 2994812, at *8 (N.D. Cal. July 27, 2007) ("In this case, HP is not alleged to have

made any representation as to the life of its inverter, or even as to the useful life of its Pavilions.  As such, a consumer's only reasonable expectation was that the Pavilions would function properly for the duration of HP''s limited one-year warranty.  HP fulfilled this expectation."), *aff'd*, 316 F. App'x 585 (9th Cir. 2009).  Were it otherwise, companies would be exposed to false advertising claims any time their products lost functionality or support over time, even if years after purchase (as is the case here).  There is no basis in the law for such a theory of liability.

Were that not sufficient on its own (it is), Meta further disclosed to Plaintiffs that it *may not*, in fact, provide support for all features of the Portal indefinitely.  Specifically, Plaintiffs agreed in the Supplemental Terms of Service that Meta could "suspend, eliminate, change, or update certain existing features . . . or any part of your Portal's services, or restrict access to parts or all of your Portal."  RJN Ex. 3.  Given these explicit terms, no reasonable consumer could have interpreted Meta's high-level statements about the value and features of the Portal to represent a promise to maintain software support for all features in perpetuity.  *See Song fi Inc. v. Google, Inc.*, 108 F. Supp. 3d 876, 885 (N.D. Cal. 2015) ("conduct authorized by a contract cannot give rise to a claim"); *Maloney v. Verizon Internet Servs., Inc.*, 2009 WL 8129871, at *5 (C.D. Cal. Oct. 4, 2009) (dismissing UCL claim where Verizon's Terms of Service "gave clear notice to plaintiff of . . . Verizon's intention to provision a customer's internet speed at its maximum working capacity, and disclaimed any expectation of a definitive 3 Mbps internet speed"), *aff'd*, 413 F. App'x 997 (9th Cir. 2011); *see also Boghossian v. Capella Univ., LLC*, 2025 WL 934878, at *5 (S.D.N.Y. Mar. 27, 2025) (dismissing GBL claim in part because the disclosure "forms contained extensive disclaimers that made it clear that [defendant] was not guaranteeing that its programs would lead to the student being licensed").

### b.    Plaintiffs Fail to Allege an Actionable Omission

Plaintiffs also have failed to allege any actionable omission.  An omission is actionable under California's consumer protection laws only if the omission "is contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose."  *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012) (quotation marks omitted).  New York's consumer protection laws similarly treat an omission as actionable only if such omission renders an affirmative

1   representation materially misleading or if the defendant "alone possesses material information that is

2   relevant to the consumer and fails to provide this information." *Oswego Laborers' Local 214 Pension*

3   *Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 745 (N.Y. 1995).

4       Plaintiffs assert that Meta "omitted material facts about its intent to discontinue the Meta Portal

5   and strip it of many of its advertised uses," FAC ¶ 84, but for the reasons already set forth above, such

6   an alleged "omission" is not contrary to representations made by Meta.  None of Meta's advertising

7   statements encouraging consumers to pursue "deeper connections" through the Portal (*id.* ¶ 2) made any

8   claims about the duration of support for the Portal beyond the one-year warranty.  *See Krystofiak v.*

9   *BellRing Brands, Inc.*, 737 F. Supp. 3d 782, 803 (N.D. Cal. 2024) (dismissing omission claims about a

10  product's lead content where plaintiffs failed to allege the connection between the alleged amount of

11  lead in the Products and the representations on the Products); *Harris v. Pfizer Inc.*, 586 F. Supp. 3d 231,

12  243–44 (S.D.N.Y. 2022) ("A plaintiff does not have a claim under the GBL just because she comes away

13  from an advertisement with an incorrect impression. That impression must be reasonably traceable to a

14  misleading statement from the defendant.").  "[A]bsent an affirmative misrepresentation, consumers

15  have no legitimate expectation that a product will properly function after the expiration of the warranty."

16  *Garcia v. Sony Comput. Ent. Am., LLC*, 859 F. Supp. 2d 1056, 1065 (N.D. Cal. 2012)

17      Nor did Meta have any duty to disclose—in fact, it is not clear what Plaintiffs claim Meta should

18  or even *could* have disclosed.  Despite resting their theory on an alleged omission of an "intent to

19  discontinue" the Portal and some of its features, FAC ¶ 84, nowhere do Plaintiffs allege (much less allege

20  with particularity) that Meta in fact *had* such an intent at the time Plaintiffs purchased their Portals.  A

21  seller has no duty to disclose information of which it is unaware.  *See Wilson*, 668 F.3d at 1145 ("[U]nder

22  the CLRA, plaintiffs must sufficiently allege that a defendant was aware of a defect at the time of sale

23  to survive a motion to dismiss."); *Marchante v. Sony Corp. of Am., Inc.*, 2011 WL 6027602, at *3 (S.D.

24  Cal. Dec. 5, 2011) ("[A] manufacturer has no duty to disclose facts of which it was unaware." (quotation

25  marks omitted));  *In re Sony HDTV*, 758 F. Supp. 2d 1077, 1095 (S.D. Cal. 2010) ("Sony had no duty to

26  disclose facts of which it was unaware.");  *see also Boghossian*, 2025 WL 934878, at *5 (dismissing

27  GBL claim in part because "the FAC does not allege that Defendants knew, at the time they made the

28

1  alleged misrepresentations," the allegedly omitted or withheld fact); *Morales v. Kimberly-Clark Corp.*,

2  2020 WL 2766050, at *6 (S.D.N.Y. May 27, 2020) (dismissing GBL claims where "the FAC does not

3  plausibly allege that Defendant had any knowledge of [the defect]").  And Meta is not alleged to have

4  made the decision to phase out any applications on the Portal until the middle of 2023—nearly three

5  years after Shipley purchased her Portal (FAC ¶ 8) and more than a year after Herod purchased his (*id.*

6  ¶ 9).  Meta is not liable for having failed to disclose a fact that did not even exist until well after Plaintiffs

7  purchased their Portals.  *See Garcia*, 859 F. Supp. 2d at 1063 ("[The plaintiff] simply cannot maintain

8  an action sounding in fraud based on Sony's supposed clairvoyance as to unspecified, future

9  technological advancements in the field.").

10      Even if such awareness could be plausibly alleged, however, that still would not suffice under

11  California law.  Plaintiffs do not dispute that their Portals functioned during the one-year express

12  warranty period, and California law is clear that a manufacturer has no duty to disclose alleged "defects"

13  (if the eventual phaseout of support for certain features could even be termed a "defect") that arise outside

14  of the warranty period, unless the defect relates to a safety issue.  *See Taleshpour v. Apple Inc.*, 549 F.

15  Supp. 3d 1033, 1044 (N.D. Cal. 2021), *aff'd*, 2022 WL 1577802 (9th Cir. May 19, 2022); *Baranco v.

16  Ford Motor Co.*, 294 F. Supp. 3d 950, 960 (N.D. Cal. 2018); *Sloan v. Gen. Motors LLC*, 287 F. Supp.

17  3d 840, 869 (N.D. Cal. 2018).  There are good reasons for such a limited duty:  "[T]o broaden the duty

18  to disclose beyond safety concerns would eliminate term limits on warranties, effectively making them

19  perpetual or at least for the useful life of the product."  *Wilson*, 668 F.3d at 1141 (quotation marks

20  omitted); *see also Baranco*, 294 F. Supp. 3d at 960 ("The purpose of this limitation in the post-warranty

21  context is to ensure that durational limits on express warranties are not rendered meaningless.").  That is

22  the precise risk posed by Plaintiffs' theory here, which effectively demands that Meta (and any other

23  technology company) commit to indefinite support for its products, at its own expense.  The law imposes

24  no such duty, nor should it.[6]

---

[6] Although New York law is less clear, some courts have suggested that the scope and duration of an express warranty is at least relevant to whether there is a duty to disclose. *See, e.g.*, *Moore v. Microsoft Corp.*, 293 A.D.2d 587, 587–88 (N.Y. App. Div. 2002); *Against Gravity Apparel, Inc. v. Quarterdeck Corp.*, 267 A.D.2d 44, 44 (N.Y. App. Div. 1999).

Setting aside the bar against non-safety-related omission theories arising after the warranty period, none of the four circumstances in which a duty to disclose arises under California consumer protection laws—a fiduciary relationship, exclusive knowledge not known to Plaintiffs, active concealment, or a partial and misleading representation—exists here.  *See Hodsdon v. Mars, Inc.*, 891 F.3d 857, 862 (9th Cir. 2018).  Meta was not (and is not alleged to have been) a fiduciary of Plaintiffs. As set forth above, Meta did not have any exclusive knowledge unavailable to Plaintiffs, because Plaintiffs do not allege (and lack any basis to allege) that Meta had any intent at the time of Plaintiffs' purchases to discontinue any software features or applications on the Portal.  And there are no plausible allegations that Meta took active steps to conceal any alleged facts for the same reasons.  Finally, nothing about Meta's representations was false or misleading, as already detailed.  *See Patt v. Antech Diagnostics, Inc.*, 2020 WL 5076970, at *10 (C.D. Cal. May 18, 2020) ("Where the Court finds that the alleged affirmative representations by Defendants are not actionable, Plaintiff cannot proceed on the basis of misleading partial representations."  (quotation marks omitted)).

The same analysis holds under New York law, which imposes an affirmative duty to disclose only where the defendant withholds unique information known only to it.  But withholding unique information is a factual impossibility here given there are no allegations Meta knew prior to November 2022 that it would discontinue the Portal, nor that it knew prior to "mid-2023" that it would phase out certain Portal features.  *See Oswego*, 647 N.E.2d at 745; *see also* FAC ¶¶ 19, 21.

But even if Plaintiffs could somehow clear *all* of these dispositive obstacles, they still could not prevail on an omission theory under either California or New York law.  That is because the basic fact remains that Meta *did* disclose to Plaintiffs that it warranted the Portal only for one year and that it may alter software support for the Portal in a way that could affect its functions.  RJN Exs. 2–3.  There is no other fact Meta could possibly have disclosed at the time of Plaintiffs' purchases and thus there was nothing "omitted" from its representations.

### 2.    Plaintiffs Fail to Adequately Allege Reliance or Causation

Plaintiffs' consumer protection claims fail for the additional reason that the FAC does not adequately plead reliance or causation.  Actual reliance is an element under the CLRA.  *See Campion v.*

*Old Republic Home Prot. Co.*, 272 F.R.D. 517, 537 (S.D. Cal. Jan. 6, 2011) (citing *Cohen v. DIRECTV, Inc.*, 178 Cal. App. 4th 966, 981 (2009)).  Under the GBL, "the plaintiff must show that the defendant's material deceptive act caused the injury," which a plaintiff cannot establish "[i]f plaintiff did not see any of [the challenged] statements." *Gale v. Int'l Bus. Machs. Corp.*, 9 A.D.3d 446, 446–47 (N.Y. App. Div. 2004).  And as to both claims, "courts have held that actual reliance is required to demonstrate causation for purposes of Article III standing when the plaintiffs assert that their injury is the result of deceptive misrepresentations or omissions." *Phillips v. Apple Inc.*, 2016 WL 1579693, at *6 (N.D. Cal. Apr. 19, 2016) (citing *In re iPhone Application Litig.*, 6 F. Supp. 3d 1004, 1015 (N.D. Cal. 2013); *Kane v. Chobani, Inc.*, 2013 WL 5289253, at *5–6 (N.D. Cal. Sept. 19, 2013); *Pirozzi v. Apple Inc.*, 966 F. Supp. 2d 909, 919 (N.D. Cal. 2013); *In re Actimmune Mktg. Litig.*, 2010 WL 3463491, at *10 (N.D. Cal. Sept. 1, 2010), *aff'd*, 464 F. App'x 651 (9th Cir. 2011)).

The FAC is remarkably thin on allegations regarding the circumstances of Plaintiffs' purchases and falls well short of the Rule 9 pleading standard (and Rule 8).  Plaintiffs do not identify any particular advertisement or sales materials they even *saw* before purchasing the Portal.  In fact, the FAC fails to identify any advertisements that Plaintiffs *could* have viewed and relied upon prior to purchase.  Ms. Shipley alleges she purchased the Portal after seeing an (unspecified) online advertisement about connecting with family members, *see* FAC ¶ 36, but the only such advertisement identified in the FAC post-dates her purchase by a year, *see id.* ¶ 15 & n.5.  And Mr. Herod alleges he purchased the Portal after seeing a television advertisement describing streaming features, *see id.* ¶ 42, but the FAC does not identify any such television advertisement.  The absence of any allegations linking Plaintiffs' purchases to any particular advertisements is fatal to Plaintiffs' claims.  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (affirming dismissal where plaintiff failed to "specify when he was exposed to [the advertisements] or which ones he found material"); *Gale*, 9 A.D.3d at 447 (similar).

Even if Plaintiffs had identified any such advertisements, though, they never plead that they "actually relied" on those (hypothetical) advertisements.  *Hodsdon*, 162 F. Supp. 3d at 1022; *Phillips*, 2016 WL 1579693, at *7 ("Plaintiffs must have actually relied on the misrepresentations or omissions to have been harmed by them.").  In other words, "[w]hat [the Complaint] fails to do is connect any

specific Plaintiff to any specific representation." *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1047 (N.D. Cal. 2014).  Plaintiffs' failure to adequately plead (much less with the requisite particularity) reliance or causation provides an independent ground for dismissal of these claims.

### 3.    Plaintiffs Fail to Allege Fraudulent Intent

Lastly, Plaintiffs' CLRA claim under Cal. Civ. Code § 1770(a)(9) must be dismissed for failure to allege that Meta acted with fraudulent intent.  *See In re Sony PS3 Other OS Litig.*, 551 F. App'x 916, 921 (9th Cir. 2014) (analyzing intent to defraud under Section 1770(a)(9)).  In order to plead an intent to defraud, a plaintiff must at least allege particular facts showing that the defendant had knowledge of the undisclosed fact that rendered the public statements false or misleading.  *See Wilson*, 668 F.3d at 1146; *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 968 (N.D. Cal. 2008), *aff'd*, 322 F. App'x 489 (9th Cir. 2009).  But for all of the reasons described above, there are no allegations that Meta knew, at the time it made the challenged representations, of the allegedly undisclosed fact, i.e., the eventual phasing out of certain Portal features.

Additionally, even where knowledge of a fact contradicting or undermining a representation is alleged, that does not mean the defendant had the requisite intent to *deceive* consumers into purchasing a product.  *See Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1156, 1161 (N.D. Cal. 2011) (discussing examples in which a defendant may have knowledge but not fraudulent intent).  Accordingly, in addition to allegations of knowledge, Plaintiffs here must allege with particularity that Meta "*at the time of the alleged misrepresentations*, had the intent to mislead or omit material information about the future circumstances" of its software support for the Portal."  *In re Google Assistant Privacy Litig.*, 546 F. Supp. 3d 945, 970 (N.D. Cal. 2021) (emphasis in original).  There are no such allegations here, and if anything, the facts point in the opposite direction:  Meta accurately represented the features available on the Portal, provided and stood behind a one-year warranty, and disclosed to Plaintiffs that software support and related applications may change in the future.  That simply is not fraud.

### B.    Plaintiffs Fail to Allege a Claim Under the FAL (Count II)

Plaintiffs' FAL claims fail for all of the reasons described above—particularly in light of the heightened pleading standard for fraud that applies under the FAL.  *See Broomes v. FullBeauty Brands*

*Operations, LLC*, 2025 WL 829589, at *1 (N.D. Cal. Jan. 31, 2025) ("UCL, FAL, and CLRA claims involving similar allegations commonly rise and fall together at the motion to dismiss stage."). Importantly, though, a FAL claim must be based on an affirmative statement, not an alleged omission. *See, e.g.*, *Norcia v. Samsung Telecomms. Am., LLC*, 2015 WL 4967247, at *8 (N.D. Cal. Aug. 20, 2015) (dismissing FAL claim based on an omission because "[t]here can be no FAL claim where there is no statement" (internal quotation marks omitted)). An omission theory under FAL is viable only if a plaintiff "identif[ies] an affirmative statement that was made false or misleading by the omission of relevant and material information." *Stewart v. Electrolux Home Prods., Inc.*, 304 F. Supp. 3d 894, 908 (E.D. Cal. 2018). For the reasons discussed above, Plaintiffs have not alleged any actionable misrepresentation, nor have they alleged any statement that was rendered misleading by the omission of relevant information. Their FAL claim thus fails for that additional reason.

## C.    Plaintiffs Fail to State a Claim Under the UCL (Count I)

Plaintiffs' claim under the UCL likewise fails. The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Each prong of the UCL is a separate and distinct theory of liability," *Kearns*, 567 F.3d at 1127, and Plaintiffs invoke all three prongs, *see* FAC ¶ 59. Plaintiffs have not stated a viable claim under any UCL theory.

### 1.    Plaintiffs Fail to Allege a UCL Claim Under the "Unlawful" Prong

Plaintiffs predicate their "unlawful" UCL claim on Meta's alleged violation of the CLRA, GBL, FAL, and CFAA. FAC ¶ 67. Because, as described above and below, Plaintiffs have not stated a viable claim under any of these statutes, their "unlawful" UCL claim fails. *See Hodson*, 891 F.3d at 865.

### 2.    Plaintiffs Fail to Allege a UCL Claim Under the "Fraudulent" Prong

The elements under the "fraudulent" prong of the UCL are substantially the same as under the CLRA. *See Kowalsky*, 771 F. Supp. 2d at 1159–62 & n.1. While a plaintiff need not plead that the defendant intended to deceive the public, it must plausibly allege that the defendant had "knowledge of the facts that rendered its representations misleading at the time it made the representations." *Id.* at 1161; *see also In re Sony HDTV*, 758 F. Supp. 2d at 1090 (dismissing UCL fraudulent claim because the

1    plaintiffs "failed to offer sufficiently particularized allegations showing that [the defendant] was aware

2    of the defect when Plaintiffs purchased the televisions").  And a UCL "fraudulent" claim premised on

3    omission must be dismissed in the absence of a duty to disclose.  *Burdt v. Whirlpool Corp.*, 2015 WL

4    4647929, at *8 (N.D. Cal. Aug. 5, 2015); *see also Hodson*, 891 F.3d at 865 ("A failure to disclose a fact

5    one has no affirmative duty to disclose is not likely to deceive anyone within the meaning of the UCL."

6    (alterations and quotation marks omitted)).  For all the reasons discussed above, Plaintiffs have not

7    alleged a duty to disclose.  *See Morgan v. Harmonix Music Sys., Inc.*, 2009 WL 2031765, at *5 (N.D.

8    Cal. July 7, 2009) (dismissing UCL fraudulent claim because "the only expectation buyers could have

9    had about the drum pedals was that they would function properly for the length of the express warranty").

10    **3.    Plaintiffs Fail to Allege a UCL Claim Under the "Unfair" Prong**

11    Plaintiffs likewise have not stated a claim under the "unfairness" prong of the UCL.

12    Initially, Plaintiffs cannot use the UCL to recast their deficient fraud claims.  *See Smith v. Intel Corp.*,

13    745 F. Supp. 3d 853, 868 (N.D. Cal. 2024) (dismissing UCL unfairness claim since there was "little to

14    no daylight between these allegations and the allegations supporting Plaintiffs' fraud claims, which the

15    Court found inactionable"); *In re Actimmune Mktg. Litig.*, 2010 WL 3463491, at *11 (dismissing unfair

16    claim because alleged unfair acts were "quintessential examples of fraud").

17    In any event, Plaintiffs have not plausibly alleged a claim under any potentially applicable

18    standard for an "unfair" UCL claim.  Courts have applied three different tests for "unfair" UCL claims:

19    "(1) the balancing test; (2) the tether test; and (3) the FTC test."  *Prince-Weithorn v. GMAC Mortg.,*

20    *LLC*, 2011 WL 11651984, at *7 (C.D. Cal. May 5, 2011).  "[A]lthough the unfair competition law's

21    scope is sweeping, it is not unlimited," and courts "may not simply impose their own notions of the day

22    as to what is fair or unfair."  *Williams v. Visa, Inc.*, 2025 WL 1518044, at *7 (N.D. Cal. May 28, 2025)

23    (quotation marks omitted).  Here, Plaintiffs do not plead the elements of *any* test.

24    *First*, under the balancing test, an 'unfair' business practice is one that "offends an established

25    public policy" or is "immoral, unethical, oppressive, unscrupulous or substantially injurious to

26    consumers."  *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012) (quotation marks

27    omitted).  There are no such allegations here—Meta made no express or implied representations about

28

1  the scope of software support for the Portal beyond the one-year warranty and disclosed the possibility

2  that certain features may be altered.  *See id.* at 1170 (affirming dismissal of "unfair" UCL claim where

3  the challenged advertisements "warned that 'other restrictions might apply'").

4      To the extent Plaintiffs intend to premise this claim on the theory that it is intrinsically "unfair"

5  for Meta to phase out certain features several years after Plaintiffs purchased their respective Portals, no

6  court has ever recognized such an inchoate duty and there is no basis in California law to infer one.

7  Plaintiffs' reference to third-party critiques of alleged "bricking" by technology companies (FAC ¶¶ 29–

8  35) likewise misses the mark.  While Plaintiffs opine that "[m]anufacturers are incentivized to render

9  devices obsolete so that they can manufacture and sell new ones," *id.* ¶ 29, their subjective assessment

10  of general market practices is no basis for UCL liability.  And in any event, Plaintiffs have not alleged

11  that Meta plans to "sell new [Portal devices]" such that this concern is even relevant here.

12      If anything, these third-party views confirm that Meta's conduct did not violate any established

13  public policy.  The FTC staff report (not even issued by the Commissioners) Plaintiffs cite simply

14  confirms that manufacturers must follow the law and make accurate representations to consumers

15  regarding the functionalities of their products.  FAC ¶ 30.  The only such representation Meta made was

16  the one-year limited warranty, which there is no dispute Meta honored for Plaintiffs.  And the Consumer

17  Reports magazine article Plaintiffs cite admits there is no regulation in this area, referring instead to

18  attempts to lobby the FTC to *create* a standard for guaranteed software support timeframes.  *Id.* ¶ 32.

19      *Second*, under the tether test, "unfairness . . . [must] be tethered to some legislatively declared

20  policy or proof of some actual or threatened impact on competition."  *Cel-Tech Commc'ns, Inc. v. L.A.*

21  *Cellular Tel. Co.*, 20 Cal. 4th 163, 186–87 (1999).  There is no allegation here that Meta's advertising

22  gave it an unfair advantage over other competitors or otherwise impaired competition in the way

23  contemplated by the antitrust laws.

24      *Third*, Plaintiffs fail to state a UCL claim under the FTC test.  The Ninth Circuit has rejected the

25  application of the FTC test to consumer cases.  *See Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d

26  718, 736 (9th Cir. 2007); *Backus v. Gen. Mills, Inc.*, 122 F. Supp. 3d 909, 929 (N.D. Cal. 2015) ("[T]he

27  Ninth Circuit has rejected the use of the FTC test in the consumer context.").  Even assuming the FTC

28

test could apply, Plaintiffs have not alleged the substantiality of the consumer injury or whether there are any countervailing benefits to consumers or corporations, which are the essential elements under that test.  *See Camacho v. Auto. Club of S. Cal.*, 142 Cal. App. 4th 1394, 1403 (2006).

## II.    PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF IMPLIED WARRANTY (COUNTS IV–V)

Plaintiffs' implied warranty claims under the California Commercial Code (Count V) and the Song-Beverly Warranty Act (Count IV) fail because Plaintiffs' own allegations confirm that each of them had access to the full range of functionality on the Portal for the entire warranty period (and then some).  Plaintiffs' claim under the California Commercial Code fails for the additional reason that Meta disclaimed all implied warranties under that statute.

### A.    Plaintiffs Fail to Plausibly Allege a Breach of Any Implied Warranty

Plaintiffs' implied warranty claims fail because their own allegations establish that each Plaintiff experienced full functionality of the Portal device throughout the entire warranty period—and beyond.

The implied warranty of merchantability does not guarantee complete functionality in perpetuity. An alleged reduction in functionality several years after purchase does not establish that a device was unmerchantable at the time of sale.  *See Ocampo v. Apple Inc.*, 2022 WL 767614, at *6 (N.D. Cal. Mar. 14, 2022) (dismissing claim where plaintiff used his device for three years without issues and could not demonstrate their devices were unfit for ordinary use); *Taleshpour v. Apple Inc.*, 2021 WL 1197494, at *13 (N.D. Cal., Mar. 30, 2021) (similar).  And the implied warranty of merchantability and fitness under the Song-Beverly Warranty Act is limited by statute to a maximum of "one year following the sale of new consumer goods to a retail buyer."  Cal. Civ. Code § 1791.1(c); *see also Atkinson v. Elk Corp. of Tex.*, 142 Cal. App. 4th 212, 231 (2006) (same).  Within that limit, "[t]he duration of the implied warranty of merchantability and where present the implied warranty of fitness shall be coextensive in duration with an express warranty which accompanies the consumer goods."  Cal. Civ. Code § 1791.1(c); *see also In re Sony HDTV*, 758 F. Supp. 2d at 1100 ("By limiting the duration of an Express Warranty, manufacturers may impose limits on implied warranties.").

1    Here, the express warranty for the Portal is limited to one year after purchase, coextensive with

2    the statutory maximum period for an implied warranty.  *See* RJN Ex. 2.  But Plaintiffs Shipley and Herod

3    purchased their devices in 2020 and 2022, respectively, and do not allege they experienced any issues

4    within one year of either purchase.  Indeed, their Song-Beverly Act claim expressly targets conduct that

5    allegedly occurred "a few years after purchase."  FAC ¶ 93.  Because this claim is based on events that

6    occurred well after the expiration of the one-year warranty, it is barred.  *See In re Sony HDTV*, 758 F.

7    Supp. 2d at 1100 ("Plaintiffs have failed to state a claim for breach of implied warranties because they

8    have not sufficiently alleged that Sony breached the implied warranties within the one-year Express

9    Warranty period."); *Stearns v. Select Comfort Retail Corp.*, 2009 WL 1635931, at *8 (N.D. Cal. June 5,

10   2009) (implied warranty claim failed where alleged issue did not arise until years later).[7]

11       **B.     Meta Properly Disclaimed Implied Warranties Under the Commercial Code**

12   Plaintiffs' implied warranty claim under the California Commercial Code independently fails

13   because Meta properly disclaimed all implied warranties.  Implied warranties generally may be

14   disclaimed under the California Commercial Code where a merchant includes "expressions like 'as is,'

15   'with all faults,' or other language which in common understanding calls the buyer's attention to the

16   exclusion of warranties and makes plain that there is no implied warranty."  Cal. Com. Code

17   § 2316(3)(a).  A seller may disclaim the implied warranty of merchantability so long as the disclaimer

18   "mentions[s] merchantability" and is "conspicuous," and may disclaim the implied warranty of fitness

19   as long as the disclaimer is in writing and "conspicuous."  *Minkler v. Apple Inc.*, 65 F. Supp. 3d 810,

20   819 (N.D. Cal. 2014).

21   Here, Meta's warranty for the Portal states in clear and conspicuous language that Meta "does

22   not extend any implied or statutory warranties, conditions or representations regarding the Product or

23   
---
[7] To the extent Plaintiffs intend to raise a claim for breach of the implied warranty of fitness, that claim fails because Plaintiffs have not identified a "particular purpose" for which they purchased their Portals beyond the ordinary purpose for which the Portal is used.  *Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1295 n.2 (1995) ("Because real parties have failed to identify any legally cognizable 'particular purpose' for which they supposedly obtained their vehicles (other than the general purpose of providing transportation), no implied warranty of fitness claim against Suzuki has been stated.").

any connected software or online services." Compl., Ex. A at 3; RJN Ex. 2.  Moreover, Meta's Supplemental Terms of Service prominently and conspicuously state that the Portal devices are sold "as is," that Meta makes "no representations or guarantees that they always will be safe, secure, or error-free, or that they will function without disruptions, delays, or imperfections," and that Meta "**DISCLAIM[S] ALL WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE, AND NON-INFRINGEMENT**."  RJN Ex. 3, § 7.  Courts have repeatedly held that such clear and conspicuous disclaimers are sufficient to bar claims for breach of implied warranty under the Commercial Code.  *See Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1026 (N.D. Cal. 2020) (Orrick, J.) ("The Warranty properly disclaims the implied warranty of merchantability.  It 'mentions' merchantability; is near the top of the Warranty document; and is in uppercase letters under an underlined, uppercase heading that reads 'Warranty Limitations Subject to Consumer Law.'"); *In re Google Phone Litig.*, 2012 WL 3155571, at *8 (N.D. Cal. Aug. 2, 2012) (finding a disclaimer "in the middle of a paragraph on the fourth page of a six-page document" was conspicuous in "light of the contrasting type, size, and font of the heading and the body text"); *Inter-Mark USA, Inc. v. Intuit, Inc.*, 2008 WL 552482, at *8 (N.D. Cal. Feb. 27, 2008) (finding a disclaimer on the fourth and fifth pages to "stand[] out visually" because it used all uppercase and bold).

## III.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE CFAA (COUNT VII)

Plaintiffs' meritless claim under the CFAA (18 U.S.C. § 1030) further exemplifies the extent to which the FAC seeks to stretch the boundaries of the law.  Although the Ninth Circuit has cautioned that the CFAA should be narrowly construed as an "an anti-hacking statute" and not "an expansive misappropriation statute," *United States v. Nosal*, 676 F.3d 854, 857 (9th Cir. 2012), Plaintiffs attempt to repurpose the CFAA into a sweeping consumer protection statute, which they contend prohibits routine software updates of the kind technology companies perform across billions of devices each year, *see* FAC ¶¶ 117–19.  The Court should decline that invitation:  "The CFAA was enacted to prevent intentional intrusion onto someone else's computer—specifically, computer hacking."  *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1196 (9th Cir. 2022); *see also* S. Rep. No. 104-357, 1996 WL 492169 at

*9–10 (1996) (describing problem of "either outside hackers or malicious insiders" "br[eaking] into" or "attack[ing]" computers).  It does not aid Plaintiffs here.

**A.     Plaintiffs Have Not Pled a CFAA Claim for Access or Transmission Without Authorization Causing Damage**

To qualify for the CFAA's narrow private cause of action, a civil plaintiff must allege a violation of at least one provision listed in Section 1030(a)(1)–(7) and invoke one of five specified standing factors in subsection (c)(4)(A)(i).  *See* 18 U.S.C. § 1030(g).  But Plaintiffs fail altogether to specify which of the various subclauses of the CFAA they seek to invoke.  Because, however, Plaintiffs refer to Meta's "authorization" to access their Portal devices, Meta will focus on those subclauses that implicate such a theory of liability.

Sections 1030(a)(5)(B) and (C) provide for liability where a defendant "intentionally accesses a protected computer without authorization" and causes damage as a result.  Section 1030(a)(5)(A) imposes liability if a defendant "knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer."  18 U.S.C. § 1030(a)(5)(A).  Accessing a computer "without authorization" means either that "the person has not received permission to use the computer for any purpose (such as when a hacker accesses someone's computer without any permission)" or "the [computer owner] has rescinded permission to access the computer and the defendant uses the computer anyway."  *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1135 (9th Cir. 2009); *see also Facebook, Inc. v. Power Ventures, In*c., 844 F.3d 1058, 1066 (9th Cir. 2016) (same).

Here, Plaintiffs do not allege that Meta lacked authorization to access their devices—they allege only that they "did not provide Meta with authorization to access their Meta Portal devices *for purposes of* limiting the functionality of the Meta Portal."  FAC ¶ 118 (emphasis added).  If anything, that is a theory of use *in excess* of authorization, which arises only under Sections 1030(a)(1) and (2) (obtaining information unlawfully) and Section 1030(a)(4) (furthering fraud), none of which Plaintiffs have even arguably invoked here.  And in any event, the Supreme Court has clarified that the CFAA does not reach instances in which information is accessed with authorization but for an allegedly "improper purpose"

beyond that authorized. *Van Buren v. United States*, 593 U.S. 374, 396 (2021). Because Plaintiffs' theory expressly turns on the alleged "purpose[]" of Meta's access—and not on a lack of authorization to access their devices generally—it is not cognizable.[8]

Nor could Plaintiffs plausibly allege that Meta lacked or exceeded authorization to access their Portals. Under the CFAA, the term "exceeds authorized access" means "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter." 18 U.S.C. § 1030(e)(6). But the Supplemental Terms of Service—to which Plaintiffs agreed—expressly allow Meta to limit the functionality and remove software applications from the device, and the Warranty discloses that Meta may "update, modify or limit such software and services in [Meta's] sole discretion[.]" RJN Ex. 2. Plaintiffs confirm their consent in the FAC by admitting that the continuing functionality of the Portal requires periodic "software updates" and "software support" from Meta. FAC ¶ 30; *see also Parziale v. HP, Inc.*, 2020 WL 5798274, at *7 (N.D. Cal. Sept. 29, 2020) (dismissing CFAA claim because plaintiff "was on notice of the potential firmware update and its effects"). Because Plaintiffs' own allegations confirm that Meta was authorized to access their devices, any claims under these subsections fail. *See San Miguel v. HP Inc.*, 317 F. Supp. 3d 1075, 1085 (N.D. Cal. 2018) (subsections (5)(B) and (5)(C) were "inapplicable in light of Plaintiffs' admission in the Complaint that HP had 'authorized access' to Plaintiffs' printers").

## B. Plaintiffs Do Not Satisfy the $5,000 Loss Threshold

Plaintiffs also do not satisfy the $5,000 loss threshold required for a private cause of action under the CFAA. To state a private cause of action, Plaintiffs must allege one of the five factors set forth in Section 1030(c)(4)(A)(i). *See* 18 U.S.C. § 1030(g). The only factor Plaintiffs could possibly rely on here is Section 1030(c)(4)(A)(i)(I), which applies when a CFAA violation results in economic loss or damages in an amount "aggregating at least $5,000 in value" to "1 or more persons during any 1-year period." "Loss" is defined under the statute to include "any reasonable *cost* to any victim, including the

---

[8] None of Plaintiffs' allegations even arguably implicates any other subclauses of the CFAA, and Plaintiffs plainly cannot allege the essential elements of those subclauses in any event. *See, e.g.*, 18 U.S.C. § 1080(a)(3), (6), (7).

1   cost of responding to an offense, conducting a damage assessment, and restoring the data, program,

2   system, or information," as well as "any *revenue* lost, cost incurred, or other consequential damages."

3   18 U.S.C. § 1030(e)(11) (emphases added).

4          Plaintiffs have not offered a single fact demonstrating either of them has suffered any "loss"

5   under the CFAA, let alone a "loss" of at least $5,000.  "A conclusory allegation of harm is not sufficient.

6   *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 949 (N.D. Cal. 2014) (Orrick, J.) (dismissing

7   CFAA claim where plaintiffs included only a single, conclusory allegation of harm); *see also Brodsky

8   v. Apple Inc.*, 445 F. Supp. 3d 110, 130 (N.D. Cal. 2020) ("Without more, the SAC does not adequately

9   plead how Plaintiffs' damages based on their devices, Apple services subscriptions, or third-party apps

10  for 2–5 minutes satisfy the CFAA's $5,000 loss during a one-year period requirement."); *Tauler Smith,

11  LLP v. Valerio*, 2020 WL 1921789, at *3 (C.D. Cal. Mar. 6, 2020) (dismissing claim where Plaintiff "did

12  not plead enough facts to support the reasonable inference that Defendant caused the amount of harm

13  necessary to trigger liability under the CFAA.").  Here, Plaintiffs have not attempted to identify any

14  "cost" incurred or "revenue" lost as a result of Meta's alleged intrusion, nor any theory of "consequential

15  damages."  That is reason alone to dismiss this claim.

16  **IV.   PLAINTIFFS FAIL TO STATE A TRESPASS TO CHATTELS CLAIM (COUNT VIII)**

17         Plaintiffs' claim for trespass to chattels fails for many of the same reasons as their CFAA claim.

18  Similar to their CFAA claim, Plaintiffs' trespass claim turns on whether Plaintiffs "consent[e]d to

19  [Meta's] exercise of dominion" over their property.  *Bank of N.Y. v. Fremont Gen. Corp.*, 523 F.3d 902,

20  914 (9th Cir. 2008); *see also Parziale*, 2020 WL 5798274, at *7 (essence of trespass claim is

21  "unauthorized" entry or interference).  In the context of "trespasses" based on the issuance of software,

22  a plaintiff must demonstrate lack of consent by establishing "that the defendant intentionally *and without

23  authorization* interfered with plaintiff's possessory interest in the computer system."  *Talyancich v.

24  Microsoft Corp.*, 2012 WL 12941690, *4 (W.D. Wash. Nov. 2, 2012) (emphasis added) (quotation marks

25  omitted) (applying California law).  For example, when a consumer brought a trespass to chattels claim

26  alleging that a software update "prevented her console from accessing Xbox LIVE," the court dismissed

27  the claim, holding that the plaintiff "consented to Microsoft's download of software to her console."  *Id.*

28

As discussed in Section III above, Plaintiffs have not plausibly alleged access "without authorization" by Meta, and in any event, Plaintiffs consented to Meta's access to their devices through the Supplemental Terms of Service and Warranty and their continuing use of their devices. Plaintiffs' consent and authorization for Meta to limit the functionality and phase out software applications from the device "dooms [their] trespass claim." *Price v. Apple Inc.*, 2022 WL 1032472, at *6 (N.D. Cal. Apr. 6, 2022) (dismissing claim where plaintiff conceded that he accepted Apple's Terms that gave Apple the right to terminate a user's Apple ID account); *Mobile Emergency Hous. Corp. v. HP, Inc.*, 2021 WL 9867952, at *12 (N.D. Cal. Oct. 15, 2021) (dismissing trespass to chattels claim where plaintiffs alleged that defendant had the "exclusive ability to install firmware updates to the printers it sells that are connected to the Internet").

## V.    PLAINTIFFS FAIL TO STATE A CLAIM FOR UNJUST ENRICHMENT (COUNT IX)

Plaintiffs' fallback claim for unjust enrichment—premised on the same allegations as the consumer protection claims—also fails a matter of law. "California does not recognize a separate cause of action for unjust enrichment," and "[a]s a result, courts have consistently dismissed stand-alone claims for unjust enrichment." *Brodsky*, 445 F. Supp. 3d at 132–34 (dismissing unjust enrichment claim where plaintiffs brought claim based on alleged breaches of defendant's terms of use). In some circumstances, courts have construed purported claims for unjust enrichment as quasi-contract claims seeking restitution. *Id*. However, "an action based on an implied-in-fact or quasi-contract cannot lie where there exists between the parties a valid express contract covering the same subject matter." *Id*.

Here, Plaintiffs do not allege that Meta is liable in quasi-contract. And even if they had, the Supplemental Terms of Service and the Warranty would foreclose the claim. *See Wright v. Charles Schwab & Co.*, 2020 WL 6822887, at *4 (N.D. Cal. Nov. 20, 2020) ("The court dismisses the unjust-enrichment claim because the parties have a contract, and there thus cannot be a separate claim for unjust enrichment.").

## CONCLUSION

For the foregoing reasons, Meta respectfully requests that the Court dismiss Plaintiffs' First Amended Complaint in its entirety.

1

Dated: August 7, 2025                     Respectfully submitted,

2                                          WEIL, GOTSHAL & MANGES LLP

3

4                                          By: _/s/ Bambo Obaro_____
                                                  BAMBO OBARO

5
                                           Attorneys for Defendant META PLATFORMS,
6                                          INC. and META PLATFORMS
                                           TECHNOLOGIES, LLC,
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28