Annick M. Persinger (SBN 272996)
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, California 94612
Telephone: (510) 254-6808
*apersinger@tzlegal.com*

Sophia Goren Gold (SBN 307971)
**KALIELGOLD PLLC**
490 43rd Street, No. 122
Oakland, California 94609
Telephone: (202) 350-4783
*sgold@kalielgold.com*

*Attorneys for Plaintiffs and the Putative Classes*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH SHIPLEY, and SHAUN HEROD individually and on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>META PLATFORMS, INC., and META PLATFORMS TECHNOLOGIES, LLC,<br><br>Defendants. | Case No. 3:25-CV-03324-WHO<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Date: October 22, 2025<br>Time: 2:00 p.m. PDT<br>Courtroom: 2 (17th Floor)<br>Judge: Hon. William H. Orrick |

# TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................................................1

II.  LEGAL STANDARD .................................................................................................3

III.  STATEMENT OF ISSUES TO BE DECIDED ........................................................3

IV.  BACKGROUND ........................................................................................................3

V.  ARGUMENT .............................................................................................................5

    A.  Plaintiffs Allege a Violation of the Unfair Prong of the UCL ........................5

    B.  Plaintiffs State Claims for Violation of the CLRA, UCL, FAL, and
        GBL Based on Meta's Misrepresentations and Omissions ............................7

        1.  Plaintiffs allege an actionable omission under
            California and New York law. ...........................................................7

            (a)  Meta's omission is actionable given its
                affirmative advertising statements regarding
                the features of the Portal Devices. ............................................8

            (b)  Meta omitted the possibility it would
                undermine the Portal Devices' core
                functionality. ...........................................................................9

        2.  Plaintiffs allege actionable misrepresentations under
            California and New York law. ......................................................... 10

        3.  Plaintiffs allege reliance and causation. .............................................. 12

        4.  Meta had the requisite knowledge and fraudulent
            intent for CLRA Section 1770(a)(9). .............................................. 12

        5.  Plaintiffs also allege a violation of the unlawful prongs
            of the UCL. ...................................................................................... 13

        6.  Meta's warranty does not apply to limit Plaintiffs'
            consumer protection claims. ............................................................. 13

        7.  The Court should decline to consider the
            Supplemental Terms of Service, which also do not
            affect Plaintiffs' claims. .................................................................. 15

        8.  Plaintiffs sufficiently allege a breach of implied
            warranty. .......................................................................................... 17

        9.  Plaintiffs state a claim under the CFAA. .......................................... 19

        10.  Plaintiffs state a claim for trespass to chattels. ................................ 21

        11.  Plaintiffs state a claim for unjust enrichment. .................................. 23

VI.  CONCLUSION ........................................................................................................ 23

# TABLE OF AUTHORITIES

**Cases**                                                                                                      **Page(s)**

*In re Adobe Sys., Inc. Priv. Litig.,*
66 F. Supp. 3d 1197 (N.D. Cal. 2014) ...................................................................................5

*In re Apple & AT & TM Antitrust Litig.,*
596 F. Supp. 2d 1288 (N.D. Cal. 2008) ...............................................................19, 21, 22

*In re Apple Inc. Device Performance Litig.,*
386 F. Supp. 3d 1155 (N.D. Cal. 2019) ................................................................................9

*In re Apple Inc. Device Performance Litig.,*
347 F. Supp. 3d 434 (N.D. Cal. 2018) ............................................................................. 20

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) .............................................................................................................3

*Asis Internet Servs. v. Subscriberbase Inc.,*
2010 WL 1267763 (N.D. Cal. Apr. 1, 2010) ...................................................................... 15

*Astiana v. Hain Celestial Grp., Inc.,*
783 F.3d 753 (9th Cir. 2015) ............................................................................................ 23

*Barker v. Lull Eng'g Co.,*
20 Cal. 3d 413 (Cal. 1978) ................................................................................................ 14

*Biederman v. FCA US LLC,*
765 F. Supp. 3d 920 (N.D. Cal. 2025) ............................................................................. 11

*Boghossian v. Capella Univ., LLC,*
2025 WL 934878 (S.D.N.Y. Mar. 27, 2025) ..................................................................... 10

*Brodsky v. Apple Inc.,*
445 F. Supp. 3d 110 (N.D. Cal. 2020) .............................................................................. 23

*Bruton v. Gerber Prods. Co.,*
703 F. App'x 468 (9th Cir. 2017) ..................................................................................... 23

*Candelore v. Tinder, Inc.,*
228 Cal. Rptr. 3d 336 (Cal. Ct. App. 2018) .........................................................................5

*Cardinal Health 301, Inc. v. Tyco Elecs. Corp.,*
87 Cal. Rptr. 3d 5 (Cal. Ct. App. 2008) ........................................................................... 17

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.,*
20 Cal. 4th 163 (C.A. 1999) ............................................................................................. 13

*Chapman v. Skype,*
162 Cal. Rptr. 3d 864 (Cal. Ct. App. 2013) ..................................................................... 15

ii

*Chimienti v. Wendy's Int'l, LLC,*
   698 F. Supp. 3d 549 (E.D.N.Y. 2023) ...................................................................................9

*Christian v. Betak,*
   2024 WL 5191973 (N.D. Cal. Dec. 20, 2024) ...................................................................20

*Clark v. LG Elecs. U.S.A., Inc.,*
   2013 WL 5816410 (S.D. Cal. Oct. 29, 2013) ...................................................................18

*Cousins v. Lockyer,*
   568 F.3d 1063 (9th Cir. 2009) ...........................................................................................3

*Daniel v. Ford Motor Co.,*
   806 F.3d 1217 (9th Cir. 2015) .........................................................................................12

*Davidson v. Apple, Inc.,*
   2017 WL 976048 (N.D. Cal. Mar. 14, 2017) ...................................................................14

*DeSimone v. Select Portfolio Servicing, Inc.,*
   748 F. Supp. 3d 136 (E.D.N.Y. 2024) ...............................................................................7

*Dorman v. Int'l Harvester Co.,*
   120 Cal. Rptr. 516 (Cal. Ct. App. 1975) .........................................................................18

*Eichorn v. Palm, Inc.,*
   2008 WL 102222 (Cal. Ct. App. Jan. 10, 2008) ..............................................................18

*Epic Games, Inc. v. Apple, Inc.,*
   67 F.4th 946 (9th Cir. 2023) ..............................................................................................5

*Garcia v. Sony Comput. Ent. Am. LLC,*
   859 F. Supp. 2d 1056 (N.D. Cal. 2012) ...........................................................................12

*Grisafi v. Sony Elecs. Inc.,*
   2019 WL 1930756 (D.N.J. April 30, 2019) .................................................................20, 21

*Harris v. Pfizer Inc.,*
   586 F. Supp. 3d 231 (S.D.N.Y. 2022) ................................................................................8

*Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.,*
   61 Cal. 4th 988 (Cal. 2015) ..............................................................................................23

*Hauter v. Zogarts,*
   14 Cal. 3d 104 (Cal. 1975) ...............................................................................................18

*Hodsdon v. Mars, Inc.,*
   891 F.3d 857 (9th Cir. 2018) .........................................................................................5, 8

*Kasky v. Nike, Inc.,*
   27 Cal. 4th 939 (Cal. 2002) ...............................................................................................7

*Keegan v. Am. Honda Motor Co.*,
  838 F. Supp. 2d 929 (C.D. Cal. 2012) ............................................................................. 18

*Koch v. Acker, Merrall & Condit Co.*,
  967 N.E.2d 675 (N.Y. 2012) ............................................................................................. 15

*Kowalsky v. Hewlett-Packard Co.*,
  771 F. Supp. 2d 1156 (N.D. Cal. 2011) ........................................................................... 12

*In re MacBook Keyboard Litig.*,
  2019 WL 1765817 (N.D. Cal. Apr. 22, 2019) ..................................................... 9, 10, 12, 14

*Marchante v. Sony Corp. of America, Inc.*,
  2011 WL 6027602 (S.D. Cal. Dec. 5, 2011) ....................................................................... 9

*Marshall v. Red Lobster Mgmt.*,
  2023 WL 9111611 (C.D. Cal. Dec. 18, 2023) ................................................................... 16

*Marsu, B.V. v. Walt Disney Co.*,
  185 F.3d 932 (9th Cir. 1999) ............................................................................................ 16

*McKee v. Audible, Inc.*,
  2017 WL 7388530 (C.D. Cal. Oct. 26, 2017) ................................................................... 15

*Mexia v. Rinker Boat Co.*,
  95 Cal. Rptr. 3d 285 (Cal. Ct. App. 2009) ....................................................................... 18

*Morales v. Kimberly-Clark Corp.*,
  2020 WL 2766050 (S.D.N.Y. May 27, 2020) ................................................................... 10

*Morgan v. Apple Inc.*,
  2018 WL 2234537 (N.D. Cal. May 16, 2018) ............................................................. 14, 17

*Naranjo v. Drs. Med. Ctr. of Modesto, Inc.*,
  332 Cal. Rptr. 3d 812 (Cal. Ct. App. 2025) ....................................................................... 5

*Norcia v. Samsung Telecomms. Am., LLC*,
  2018 WL 4772302 (N.D. Cal. Oct. 1, 2018) ..................................................................... 10

*Ocampo v. Apple Inc.*,
  2022 WL 767614 (N.D. Cal. Mar. 14, 2022) ................................................................... 17

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
  647 N.E.2d 741 (N.Y. 1995) ....................................................................................... 8, 10

*Pirozzi v. Apple, Inc.*,
  966 F. Supp. 2d 909 (N.D. Cal. 2013) ............................................................................. 11

*Reyes v. Upfield US Inc.*,
  694 F. Supp. 3d 408 (S.D.N.Y. Sept. 26, 2023) ............................................................... 11

*Rubenstein v. Neiman Marcus,*
    687 F. App'x 564 (9th Cir. 2017) ....................................................................................7

*In re Safeway Tuna Cases,*
    2016 WL 3743364 (N.D. Cal. July 13, 2016) .............................................................. 23

*San Miguel v. HP Inc.,*
    317 F. Supp. 3d 1075 (N.D. Cal. 2018) ..............................................................19, 20

*Schneider v. Chipotle Mexican Grill, Inc.,*
    328 F.R.D. 520 (N.D. Cal. 2018) ............................................................................... 16

*Shin v. ICON Found.,*
    553 F. Supp. 3d 724 (N.D. Cal. 2021) ..................................................................21, 22

*So v. HP, Inc.,*
    2023 WL 4596778 (N.D. Cal. July 17, 2023) ............................................................. 21

*In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litigation,*
    758 F. Supp. 2d 1077 (S.D. Cal. 2010) ..................................................................9, 17

*In re Sony PS3 Other OS Litig.,*
    551 F. App'x 916 (9th Cir. 2014) ..........................................................................6, 12, 13

*Stearns v. Select Comfort Retail Corp.,*
    2009 WL 1635931 (N.D. Cal. June 5, 2009) .............................................................. 17

*Taleshpour v. Apple Inc.,*
    2021 WL 1197494 (N.D. Cal., Mar. 30, 2021) ........................................................... 17

*Taleshpour v. Apple, Inc.,*
    2022 WL 1577802 (9th Cir. May 19, 2022) .................................................................9

*Taleshpour v. Apple Inc.,*
    549 F. Supp. 3d 1033 (N.D. Cal. 2021) ...................................................................8, 9

*In re Tobacco II Cases,*
    93 Cal. Rptr. 3d 559 (Cal. 2009) ............................................................................... 12

*Williams v. Gerber Prods. Co.,*
    552 F.3d 934 (9th Cir. 2008) ...........................................................................7, 15, 17

*Wilson v. Hewlett-Packard Co.,*
    668 F.3d 1136 (9th Cir. 2012) .....................................................................................9

*Zamora v. CVS Pharmacy, Inc.,*
    2021 WL 405898 (Cal. Ct. App. Feb. 5, 2021) .......................................................... 16

**Statutes**

18 U.S.C. § 1030 ..................................................................................................19, 21

Cal. Civ. Code § 1770 ................................................................................................................ 13

Cal. Com. Code § 1201 .............................................................................................................. 18

Cal. Com. Code § 2315 .............................................................................................................. 17

## I.    INTRODUCTION

It is a basic part of the bargain in any consumer purchase: the seller will not actively and intentionally sabotage its own products after sale, reducing the value or functionality of the good purchased. A seller of fresh-cut flowers will not spray them with slow-acting herbicide before they leave the shop. A seller of wood furniture will not later sneak into a home and place termites in the furniture. A car manufacturer will not, after purchase, deactivate the software that runs the vehicle's core features like braking and starting.

Plaintiffs Elizabeth Shipley and Shaun Herod ("Plaintiffs") had the reasonable expectation that Meta would not sabotage the expensive Meta Portal Devices[1] they purchased. They reasonably believed that—even if better, more advanced devices came on the market later—the devices they purchased would at least maintain the functionality they had at the time of sale for their physical life. But Defendants Meta Platforms Inc., and Meta Platforms Technology, LLC (hereafter "Meta") had other plans. Shortly after launching and extensively marketing the Portal, including by touting it in as a senior-friendly device to keep in touch with grandchildren, Meta announced its intention to cut costs, retrench, and discontinue the Portal. It immediately began stripping the Portals' core functionality, rendering all Portals significantly less functional. Stripping hardware of critical software necessary for the device to operate is called "bricking" and it has been condemned by the FTC and consumer advocacy groups as an unfair and deceptive practice. FAC ¶¶ 30-32.

While nothing lasts forever, it was reasonable for Plaintiffs to expect their $199-$349 investment in a Portal would buy them enough goodwill from Meta that the company would not go out of its way to kill the devices they had just purchased. Meta never once warned consumers prior to sale that the devices they purchased were entirely dependent on its corporate whims—and that Meta could render the devices useless with the push of a button. It never told consumers the devices would begin to die within a year. Instead it urged them, over and over again, to buy an exciting new piece of technology by promising consumers that it would *function*.

---

[1] The Meta Portal Devices include four different models: Portal, Portal+, Portal TV, and Portal Go. First. Am. Compl. ("FAC") ¶ 12.

Meta's decision to intentionally undercut the Portals' software functionality a few short years after purchase is fundamentally unfair, in violation of the UCL. It is deceptive in that no warning of this possibility was given prior to sale, and insofar as consumers purchased the devices in reliance on the uncontroversial proposition that the devices would function as advertised without intentional efforts by Meta to interfere with that function. As one example, Meta touted that the revolutionary new Portal was a voice-activated device that can connect with various "apps." Now it can do neither, thanks to cost-cutting choices by Meta.

Meta does not dispute that it "phased out certain features of the Portal, thereby limiting some functionalities." It nevertheless argues that it was allowed to do so because it is "common for technology products to lose their functionality over time because new technology outpaces them or market conditions change over time." Motion to Dismiss ("Mot.") at 1, ECF No. 20. But it is one thing for a new product to outpace an old one, and quite another for Meta to affirmatively render an operable device inoperable.

In moving to dismiss Plaintiffs' claims, Meta argues that the fine print in post-purchase Supplemental Portal Terms of Service ("Supplemental Terms of Service") and Limited Consumer Warranty ("Warranty") gave them the right to kill the product whenever it chose. The fine print did no such thing. The Warranty covers manufacturing defects; it says nothing about Meta's right to intentionally eliminate essential software. And there is no evidence Plaintiffs ever assented to the Supplemental Terms of Service at all. Even if they had, California law is clear that fine print cannot neuter prominent marketing representations and/or omissions. And the fine print requires Meta to act at all times in good faith, which it totally failed to do here.

Meta also argues that it did not yet know if it was going to kill the Portal at the time Plaintiffs made their purchases. But the argument is belied by the fine print it now relies on. Meta cannot, on the one hand, argue it had no idea it would "brick" the Portal, while simultaneously arguing it disclosed its intent to do so in the Supplemental Terms of Service.

Meta's argument that there is no breach of implied warranty here also fails as Meta had reason to know that Plaintiffs and other consumers would purchase the Portal Devices to use the various software applications that were included with the device at the time of purchase. Since these devices

do not conform to those implied warranties, Plaintiffs sufficiently state a claim. Finally, Meta's arguments regarding Plaintiffs' claims for violation of the CFAA, trespass to chattels, and unjust enrichment are also unpersuasive and each of those claims should be upheld. Accordingly, for these reasons and the reasons below, Plaintiffs respectfully submit that Meta's Motion to Dismiss should be denied in full.

## II.    LEGAL STANDARD

In ruling on a motion to dismiss under Rule 12(b)(6), the Court must take all allegations of material fact as true and construe them in the light most favorable to Plaintiffs. *Cousins v. Lockyer*, 568 F.3d 1063, 1067-68 (9th Cir. 2009). The complaint need not "contain detailed factual allegations," but only allege "enough facts to state a claim to relief that is plausible on its face." *Cousins*, 568 F.3d at 1067-68. Facial plausibility is satisfied when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III.    STATEMENT OF ISSUES TO BE DECIDED

(1)  Whether Plaintiffs plausibly allege an unfair practice under the UCL;

(2)  Whether Plaintiffs plausibly allege actionable misrepresentations and omissions under the UCL, CLRA, FAL, and GBL;

(3)  Whether Plaintiffs state claims for breach of implied warranty;

(4)  Whether Plaintiffs state a claim under the Computer Fraud and Abuse Act and for trespass to chattels; and

(5)  Whether Plaintiffs state a claim for unjust enrichment.

## IV.    BACKGROUND

In the fall of 2018, Meta launched the Meta Portal, a smart display and video calling device. FAC ¶ 12. Over time, Meta rolled out four different models within the Meta Portal product line: Portal, Portal +, Portal TV, and Portal Go (together, the "Portal Devices"). *Id.* The Portal Devices came equipped with numerous software applications, including videochatting applications such as Facebook Messenger, WhatsApp, Zoom, Facebook Live; workplace connectivity applications, including Workplace Live and Microsoft Teams; the "Hey Portal" voice command integrated through

Amazon's Alexa function; music streaming services through applications like Spotify, Pandora, iHeartRadio, Tidal Music; video streaming through Netflix, Amazon Prime Video, Showtime, CBS News, and ESPN; the "Story Time" feature which created augmented reality for reading children's books; a digital photo and video slideshow frame; special effects, such as background effects and masks available on Facebook Messenger video calls; and the Calendar and Microsoft Intune functions. *Id.* ¶¶ 13, 21.

Meta knew that access to these applications was important to consumers. The Portal marketing repeatedly touted these features, emphasizing the ability to sync Portal with "trusted apps." *Id.* ¶¶ 13, 20. And this marketing tactic worked: Meta sold "millions" of the Portal Devices. *Id.* ¶ 16.

In spite of Meta's promise that the Portal Devices would work with various "trusted apps," Meta announced in November 2022 that it would discontinue the Portal Devices and soon after unilaterally began removing nearly every first-party and third-party application it had advertised and touted, as well as voice functionality, in waves, effective in early 2025. *Id.* ¶¶ 19-21. The applications it removed or will soon remove include Zoom, Amazon "Alexa" voice assistant, "Hey Portal" voice assistant (all voice functionality), Facebook Live, Workplace Live, Microsoft Teams, Microsoft Intune, Spotify, StoryTime, Pandora, iHeartRadio, Tidal Music, Deezer, SideChef, BlueJeans, GoToMeeting, Webex, Red Bull TV, Watch Together, Facebook Watch, The Calendar, CCBS News, ESPN, Photo Booth, background effects and masks on Messenger video calls, and the MetaPortal App. *Id.* ¶¶ 21, 25. Meta's unilateral decision to discontinue consumer access to these applications renders the Portal Devices significantly less useful. *Id.* ¶¶ 25-26.

The FTC has identified "bricking" practices like Meta's as unfair and deceptive. As stated by the FTC, "Manufacturers marketing a device as having certain features and then subsequently failing to provide software updates needed to maintain those features raises concerns about consumer harm resulting from deceptive practices." FAC ¶ 30. The FTC also stated that "failure to provide software updates or the failure to disclose the duration of software support" could be considered "unfair" in violation of the FTC Act because it may constitute "substantial injury that could not be reasonably avoided by consumers" that is "not outweighed by any offsetting consumer or competitive benefits[.]" *Id.*

Consumer Reports also recently highlighted the problem and emphasized that consumers should know when and if loss and features of functions will happen *before* they purchase a device:

> The refusal to disclose how long a consumer can expect their connected appliances to stay secure and retain the exciting software-based functions that a consumer may have paid extra for is an example of how efforts to turn everyday devices into internet-connected computers have left a regulatory loophole that allows manufactures to infringe on consumers' ability to truly own a product … **And consumers should know when this potential loss features or functions will happen before they plunk down their hard earned case on a device or appliance**. …. Absent this information, a consumer could spend thousands on a large appliance, only for the features they rely on to stop working in a few years.

*Id.* ¶ 32 (emphasis added).

This is precisely what happened to Plaintiffs and other putative class members. Indeed, in a letter to the FTC, consumer advocacy groups specifically identified Defendants and their Portal Device as an example of a company that has engaged in an unfair and deceptive "bricking" practice. *Id.* ¶ 35.

## V.    ARGUMENT

### A.    Plaintiffs Allege a Violation of the Unfair Prong of the UCL

Meta's bricking of the Portal is fundamentally unfair and prohibited by the UCL. California courts have applied a variety of tests to determine what constitutes an "unfair" business practice. *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 866-67 (9th Cir. 2018); *see also Naranjo v. Drs. Med. Ctr. of Modesto, Inc.,* 332 Cal. Rptr. 3d 812, 838 (Cal. Ct. App. 2025). Under the tethering test, "the public policy which is a predicate to a consumer unfair competition action under the 'unfair' prong of the UCL must be tethered to specific constitutional, statutory, or regulatory provisions." *In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d 1197, 1226 (N.D. Cal. 2014) (cleaned up). The balancing test looks at whether the business practice is "'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim.'" *Id.* (cleaned up). The tests are not mutually exclusive. *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 1000 (9th Cir. 2023). The standard for an "unfair" practice in a consumer action is intentionally broad, thus allowing courts maximum discretion to prohibit new schemes to defraud. *Candelore v. Tinder, Inc.*, 228 Cal. Rptr. 3d 336, 350 (Cal. Ct. App. 2018).

Plaintiffs have sufficiently alleged an "unfair" prong claim under any of the foregoing tests. Indeed, as explained by the FTC the failure to disclose the duration of the software support is unfair because it results in unavoidable harm to consumers causing them substantial injury:

> **[T]he failure to provide software updates or the failure to disclose the duration of software support raises concerns about harm consumers cannot avoid. A practice is unfair and violates the FTC Act if it is likely to cause substantial injury that could not be reasonably avoided by consumers** and the injury is not outweighed by any offsetting consumer or competitive benefits that the sales practice also produces. Thus, when evaluating a manufacturer's failure to provide updates or its failure to disclose the duration of software support it is appropriate to consider the scope of injury caused by the failure, whether this injury is reasonably avoidable by consumers, and whether there may be any offsetting benefits arising from the failure to provide software updates or disclosures about the duration of software support.

FAC ¶ 30 (emphasis added). Thus, as the FTC already identified, Meta's practice of discontinuing essential software for the Portal devices "could not be reasonably avoided by consumers," "cause[d] substantial injury" and is "not outweighed by any offsetting consumer or competitive benefits." *See id.* It was therefore an unfair business practice, in violation of California law. *See also* FAC ¶¶ 33-35, 65.

The Ninth Circuit has also recognized that bricking is an unfair practice under the UCL. The Ninth Circuit's decision in *In re Sony PS3 Other OS Litig.,* 551 F. App'x 916, 920-21 (9th Cir. 2014) is factually analogous to this case and instructive as to the viability of the same California consumer protection claims alleged here. In *Sony PS3,* the plaintiffs alleged that Sony's software update intentionally disabled the PlayStation3's advertised "dual functionality" feature of being able to use other operating systems. In reversing the dismissal of the "unfair" prong under the UCL, the Court held that "Plaintiffs sufficiently allege that Sony caused them substantial injury by charging a premium for the PS3's dual functionality and then discontinuing access to both the [] features," "lost money" as a result, and "there are no countervailing benefits to consumers or competition that outweigh the substantial injury to consumers." *Id.* at 922.

The same logic applies here. Plaintiffs sufficiently allege that Meta caused them substantial injury by charging a premium for Portals' software features—including its ability to sync with various apps and operate via voice technology—and then discontinued access to that same software. Plaintiffs lost money as a result and there no countervailing benefits to consumers or competition that outweigh the substantial injury to consumers. The claim should therefore be upheld. *See id.*

**B.    Plaintiffs State Claims for Violation of the CLRA, UCL, FAL, and GBL Based on Meta's Misrepresentations and Omissions**

Meta's decision to strip the advertised software features of its Portal Devices also violates California's and New York's consumer protection laws insofar as it renders its marketing of the product untruthful.[2] Both the CLRA and GBL broadly prohibit deceptive conduct, which is generally defined as conduct likely to deceive a reasonable consumer. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (CLRA claim is "governed by the 'reasonable consumer' test"); *DeSimone v. Select Portfolio Servicing, Inc.,* 748 F. Supp. 3d 136, 168 (E.D.N.Y. 2024) ("Deceptive acts are defined objectively as acts likely to mislead a reasonable consumer acting reasonably under the circumstances." (cleaned up)). Given this standard, "it is a rare situation in which granting a motion to dismiss is appropriate." *Rubenstein v. Neiman Marcus,* 687 F. App'x 564, 566 (9th Cir. 2017) (cleaned up); *see also Williams,* 552 F.3d at 938 (whether or not a reasonable consumer would be misled "is a question of fact not appropriate for determination [on a motion to dismiss]").

Similarly, under the FAL and the fraudulent prong of the UCL set forth in California's Business and Professions Code, to state a claim "based on false advertising or promotional practices, it is necessary only to show that members of the public are likely to be deceived." *Kasky v. Nike, Inc.,* 27 Cal. 4th 939, 951 (Cal. 2002) (cleaned up). The FAL and UCL fraudulent prong prohibit "not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Id.* (cleaned up).

Here, Meta's conduct violates each of the above statutes.

*1.    Plaintiffs allege an actionable omission under California and New York law.*

Plaintiffs allege an actionable omission. Specifically, Plaintiffs allege Meta failed to inform them of the possibility that they would disable key software features from the Portal Devices, rendering the device a fundamentally different product than purchased. FAC ¶¶ 38, 44. This is

---

[2] Based on the Facebook Terms of Service (which are distinct from the Supplemental Terms of Service), California law applies to this suit. *See* FAC ¶ 52 ("California law applies to a Nationwide Class"). Meta does not dispute that California is the governing law. *see also* Mot. at 7 n.5 ("California [i]s the governing law"). Because Meta does not move to dismiss Plaintiffs' alternative claim brought under New York law, Plaintiffs brief the consumer protection statutes of both California and New York. Plaintiffs reserve the right to address choice of law at a later stage in the proceedings.

actionable omission under both California and New York Law—regardless of whether the omission relates to a safety issue. *Hodsdon,* 891 F.3d at 861-62 ("Omissions may be the basis of claims under California consumer protection laws, but to be actionable the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." (cleaned up)); *see also Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,* 647 N.E.2d 741, 744-45 (N.Y. 1995). Meta had a duty to disclose the possibility it would disable software features because (1) Meta made representations contrary to its omission; and (2) such software is critical to the Portal's core functionality.

> (a)    *Meta's omission is actionable given its affirmative advertising statements regarding the features of the Portal Devices.*

Under the applicable laws in California and New York, Meta's omission of the possibility it would eventually brick the Portal Devices is actionable because it was contrary to other affirmative misrepresentations made by Meta. *Hodsdon,* 891 F.3d at 861-62; *Harris v. Pfizer Inc.,* 586 F. Supp. 3d 231, 241 (S.D.N.Y. 2022).

Specifically, in marketing the devices, Meta touted applications like the "Hey Portal" voice command and the Portals' ability to sync with "Zoom and your other trusted apps." FAC ¶ 20; *see also* FAC ¶¶ 13-15. The truth—that Meta was secretly reserving the right to eventually eliminate these functionalities at its whim—is contrary to Meta's advertising of the Portals' functionality. Because Meta did not conspicuously disclose that it could remove this functionality at its whim, at the same time it touted the voice function and other apps and features it later removed, Meta is liable for its omission.

Meta argues there is no omission claim outside of a safety issue, in reliance on *Taleshpour v. Apple Inc.,* 549 F. Supp. 3d 1033 (N.D. Cal. 2021). But in *Taleshpour,* Judge Davila continued to cite the standard that no safety risk need be pled where "(1) the omission is material; (2) the defect is central to the product's function; and (3) at least one of the following four factors is met: the defendant is the plaintiff's fiduciary; the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; the defendant actively conceals a material fact from the plaintiff; or the defendant makes partial representations that are misleading because some other material fact has not

been disclosed." *Id.* at 1042 (citing *In re Apple Inc. Device Performance Litig.*, 386 F. Supp. 3d 1155, 1176 (N.D. Cal. 2019)). In *Taleshpour*, the plaintiffs failed to point to separate affirmative statements regarding the laptops at issue. *Id.* at 1039-42. In affirming Judge Davila's dismissal of a fraudulent omission claim about later versions of MacBook keyboards, the Ninth Circuit found no plausible deception when the plaintiff's allegations only amounted to a claim that a defect might, or might not, shorten the effective life span of the later model of MacBooks in that case. *Taleshpour v. Apple, Inc.*, 2022 WL 1577802, at *2 (9th Cir. May 19, 2022). Conversely, here, Plaintiffs allege that Meta made contrary affirmative statements about the audio and video capabilities of the software applications it sold with the devices. Further, here, unlike *Taleshpour*, Plaintiffs plausibly allege that Meta acted intentionally in removing application functionality from these devices. The omission that just a few years after purchase—while the device otherwise functioned perfectly—Meta would remove applications originally enabled on the Portal Devices was deceptive given Meta's contrary representations. *See In re MacBook Keyboard Litig.*, 2019 WL 1765817, at *6-7 (N.D. Cal. Apr. 22, 2019).[3]

> **(b)    Meta omitted the possibility it would undermine the Portal Devices' core functionality.**

Where, like here, an omission goes to the core function of a product, courts find that defendants have a duty to disclose, and a plaintiff may maintain a claim for fraudulent omission. *See, e.g., In re MacBook Keyboard Litig.*, 2019 WL 1765817, at *5 (listing cases). Here, Plaintiffs sufficiently allege that Meta had a duty to disclose the possibility it would eliminate core functionality—for any reason or no reason at all—by alleging each of the following:

(1) Omission of the eventual removal of software applications sold with the device was material to reasonable consumers. *See In re MacBook Keyboard Litig.*, 2019 WL 1765817, at *6; *Chimienti v. Wendy's Int'l, LLC*, 698 F. Supp. 3d 549, 557 (E.D.N.Y. 2023); *see also* FAC ¶¶ 37 & 41 (Plaintiff Shipley), ¶¶ 43 & 46 (Plaintiff Herod); *id.* ¶ 87-88. This is a "question of fact that should be left to the

---

[3] Meta's other cited cases are not helpful to its position. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136 (9th Cir. 2012), *Marchante v. Sony Corp. of America, Inc.*, 2011 WL 6027602, at *3 (S.D. Cal. Dec. 5, 2011), and *In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litigation*, 758 F. Supp. 2d 1077 (S.D. Cal. 2010) stand for the unremarkable proposition that under the CLRA, a defendant's duty to disclose a facts requires that the defendant have knowledge of those facts. Notably, none of those cases dealt with software bricking.

1    jury unless the statement at issue is obviously unimportant." *See In re MacBook Keyboard Litig.*, 2019 WL

2    1765817, at *6 (cleaned up).

3        (2) The removed software applications are central to the functioning of these devices. *See*

4    *Norcia v. Samsung Telecomms. Am., LLC*, 2018 WL 4772302, at *2 (N.D. Cal. Oct. 1, 2018) ("No

5    reasonable person could disagree that 'speed and performance' go to the heart of a smartphone's

6    central function . . . . Samsung's failure to disclose its alleged manipulation of the Galaxy S4's

7    performance on benchmarking apps is actionable. That manipulation was a material fact not known

8    to plaintiff and, as alleged, was within the exclusive knowledge of Samsung. Plaintiff has adequately

9    alleged an omission of a fact that Samsung was obliged to disclose.").

10       (3) Meta had exclusive knowledge of when and if it would remove applications that were part

11   of the Portal Devices' functionality at the time they were sold, which

12       (4) Meta actively concealed by reserving this right to remove functionality in fine print in

13   documents available only after purchase. *See In re MacBook Keyboard Litig.*, 2019 WL 1765817, at *6

14   (citing *Hodsdon*, 891 F.3d at 862); *see* FAC ¶¶ 84-86; ECF No. 20-2 at Ex. 3.

15       Thus, here, Meta's omission is actionable because the omission related to a material fact that

16   Meta was obliged to disclose. *See In re MacBook Keyboard Litig.*, 2019 WL 1765817, at *7.[4]

17           2.    *Plaintiffs allege actionable misrepresentations under California and New York law.*

18       Plaintiffs plausibly allege that Meta misrepresented the advertised software features of its

19   Portal Device. On this point, the experiences of both Plaintiff Shipley and Plaintiff Herod are

20   instructive. For example, Plaintiff Shipley alleges that she purchased a Portal after viewing an online

21   advertisement, in reliance on the representation that it was voice operated. *See* FAC ¶¶ 36-37. That

22   feature was particularly important to Plaintiff Shipley because her mother is disabled and unable to

23

24   ────────────────────────────
     [4] The law in New York is essentially the same. Under the GBL, "[f]or an omission to constitute
25   deception, Plaintiffs must show either that the business alone possessed the relevant information, or
     that a consumer could not reasonably obtain the information." *Boghossian v. Capella Univ., LLC*, 2025
26   WL 934878, at *4 (S.D.N.Y. Mar. 27, 2025) (cleaned up); *see also Morales v. Kimberly-Clark Corp.*, 2020
     WL 2766050, at *6 (S.D.N.Y. May 27, 2020). The facts of this case perfectly align with the relevant
27   GBL standard. That Meta could and would brick the Portal Devices is knowledge that "Defendant[s]
     alone possessed," *id.* at *6 and was "uniquely known by Defendants." *Boghossian*, 2025 WL 934878, at
28   *4. *See also Oswego Laborers' Local 214 Pension Fund*, 647 N.E.2d at 745.

use buttons. *Id.* But that touted benefit proved false when Meta unilaterally disabled the voice control software of its Portal Devices a few years after Plaintiff Shipley purchased it. *Id.* ¶ 39. When a product is advertised as voice activated, but is not, that is a misrepresentation.[5]

Similarly, Plaintiff Herod purchased a Portal after viewing an advertisement on TV that marketed the devices as compatible with certain apps that allowed for streaming content. *Id.* ¶ 42. He specifically wanted to use the Portal to stream media through apps like Facebook Live, Pluto TV, Amazon Video, and Netflix. *Id.* ¶ 43. But that too turned out to be false, as Meta soon disabled the software that allowed for Portals' compatibility with each of those apps. *Id.* ¶ 45. Again, when a product does not operate as advertised, that states a claim under both California and New York law.[6]

The Ninth Circuit's decision in *Sony PS3* is helpful on this point, too. In reversing the lower court's order dismissing plaintiffs' CLRA section 1770(a)(5),(7) claim, the Ninth Circuit held:

> Plaintiffs have alleged sufficient facts as to each element of these claims. First, they allege that Sony's representations at the time of sale mischaracterized the dual functionality of the PS3—and were likely to deceive members of the public—because Sony later restricted users to using either the Other OS feature or accessing the PSN feature, but not both. Second, Plaintiffs allege that they reviewed Sony's website, relevant articles on the internet, and the PS3 box label before making their purchases, and that they relied on Sony's representations about the PS3's features. Finally, Plaintiffs allege that they suffered damages because they paid more for the PS3 than they would have otherwise because of the supposed dual functionality.

---

[5] Courts routinely uphold affirmative misrepresentation claims where plaintiffs similarly allege they viewed and relied upon specific advertised product benefits in making their purchases. *See, e.g., Biederman v. FCA US LLC,* 765 F. Supp. 3d 920, 942 (N.D. Cal. 2025) (plaintiffs considered defendants' diesel engine performance representations to be "desirable traits" that influenced their purchase and would not have purchased the trucks had they known they contained devices that emitted pollutants beyond the legal limit); *Pirozzi v. Apple, Inc.,* 966 F. Supp. 2d 909, 921 (N.D. Cal. 2013) (upholding affirmative misrepresentation claim under the UCL, FAL, and CLRA where plaintiff identified a statement she read on the defendant's website regarding how third-party apps operate securely on the iPhone, that she relied on it when making her purchasing decision because the "apps were an essential part of the device" and "would not have paid as much for the iPhone" had she known the apps were insecure); *Reyes v. Upfield US Inc.,* 694 F. Supp. 3d 408, 422-45 (S.D.N.Y. Sept. 26, 2023) (upholding GBL claim where plaintiffs relied on defendant's plant butter packaging stating it was "with almond oil" and were misled because it contained a predominant blend of other oils).
[6] Meta incorrectly asserts that the affirmative misrepresentations here are Meta's statements about Portal being a "Gift of Deeper Connection" and a way to "share deeper connections and delightful moments with friends and families." *See* Mot. at 8. That's incorrect. Plaintiffs clearly identify Meta's specific misrepresentations about the Portal's objective, advertised features—*i.e.,* the voice-operated and app streaming features—such that Meta's cases involving non-actionable "general assertions" are inapposite. *See id.*

1  551 F. App'x at 920-21.

2        The same analysis applies here. Plaintiffs each allege that they viewed advertisements regarding

3  the functionality and apps of the Portals and relied on those representations when purchasing it. FAC

4  ¶¶ 36-37, 42-43. They further allege that they paid more than they would have otherwise paid because

5  of those features. *Id.* ¶¶ 41, 46. Under the logic of *Sony PS3,* Plaintiffs therefore state a claim under

6  state consumer protection law.[7]

7               *3.      Plaintiffs allege reliance and causation.*

8        Meta next argues that Plaintiffs fail to adequately allege reliance and causation. While it is true

9  Plaintiffs must sufficiently plead that they relied on Meta's misrepresentations and omission to their

10  determinant to maintain their claims, they have done so here. *See Daniel v. Ford Motor Co.*, 806 F.3d

11  1217, 1225 (9th Cir. 2015); *see also* FAC ¶ 41 ("Plaintiff Shipley would not have purchased the Meta

12  Portal device had she known that Meta would unilaterally make the device significantly less functional

13  within years of her purchase, or otherwise would have paid substantially less for the Meta Portal

14  Device"); *id.* ¶ 46 ("Plaintiff Herod would not have purchased the Meta Portal devices had he known

15  that Meta would unilaterally make these devices significantly less functional within years of his

16  purchase, or otherwise would have paid substantially less for the Meta Portal Devices."). Moreover,

17  here, since the misrepresentation and omission is material—it can be inferred that the Plaintiffs and

18  all consumers would have behaved differently. *In re MacBook Keyboard Litig.*, 2019 WL 1765817, at *7

19  (citing *In re Tobacco II Cases*, 93 Cal. Rptr. 3d 559, 581-82 (Cal. 2009) and *Daniel*, 806 F.3d at 1226).

20               *4.      Meta had the requisite knowledge and fraudulent intent for CLRA Section 1770(a)(9).*

21        Similarly, the proposition that a defendant must have knowledge of the pertinent facts in order

22  to violate the fraudulent prong of the UCL does not doom Plaintiffs' UCL claims. *See* Mot. at 16

23  (citing *Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1156, 1159-62 (N.D. Cal. 2011) and *In re Sony

24  HDTV Television Litig.*, 758 F. Supp. 2d at 1090). Indeed, unlike in *Garcia v. Sony Computer Entertainment

25  America LLC*, 859 F. Supp. 2d 1056, 1063 (N.D. Cal. 2012) (cited at Mot. at 12), Plaintiffs do not argue

26  that Meta had some sort of "clairvoyance as to unspecified, future technological advancements in the

27

28  _____

[7] Meta cannot use its Warranty or Supplemental Terms of Service to shield itself from liability for these claims the reasons discussed in Sections V.B.6 and V.B.7, *infra.*

1  field" or merely that Meta "was generally aware of the competitive and dynamic nature" of the

2  industry. Meta's knowledge that it could or would brick the Portal Devices is not some forward-

3  thinking, hypothetical scenario that it could not have known at the time it sold the Devices.[8]

4       Moreover, Meta's fraudulent intent argument only applies to the CLRA Section 1770(a)(9). *See*

5  Mot. at 15. In any event, Plaintiffs have sufficiently alleged both knowledge and intent. *See* FAC ¶¶

6  84-86. Meta's argument that it did not have the requisite fraudulent intent at the time of Plaintiffs'

7  purchase is belied by the fact that its own decision-making led to the device's bricking. It is

8  disingenuous for Meta to feign surprise at its own conduct. Moreover, Meta's argument that it allegedly

9  reserved for itself the right to terminate software applications in fine print in its Supplemental Terms

10  of Service further demonstrates intent.[9]

11       5.       *Plaintiffs also allege a violation of the unlawful prongs of the UCL.*

12       With respect to the "unlawful" prong, the UCL "borrows violations of other laws and treats

13  them as unlawful practices that the unfair competition law makes independently actionable[.]" *Cel-Tech*

14  *Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (C.A. 1999) Plaintiffs adequately allege Meta

15  violates the "unlawful" prong via its violation of the CLRA, GBL, and FAL. *See* FAC ¶ 67.

16       6.       *Meta's warranty does not apply to limit Plaintiffs' consumer protection claims.*

17       Meta argues that customers were informed of the limited duration for which Meta guaranteed

18  functionality and of the possibility that Meta may phase out features because on its website, Meta

19  disclosed that a one-year limited consumer warranty is provided with Portal purchases.  Not only does

20  that statement fail to inform reasonable consumers that Meta would intentionally phase out

21  applications and functionalities for these devices, but the Warranty also does not apply to this case at

22  all given that such a Warranty facially applies only to *manufacturing defects* and not fraudulent conduct

23  that violates consumer protection laws.

24

25

26  [8] Importantly, the "knowledge" standard discussed above is a more lenient standard than the
    "fraudulent intent" requirement that applies only to Plaintiffs' claims under a specific subsection of
27  the CLRA—Cal. Civ. Code § 1770(a)(9). *See* Mot. at 15; *see also In re Sony PS3 Other OS Litig.*, 551 F.
    App'x at 921 ("Section 1770(a)(9) is the only subsection that requires pleading fraud" (cleaned up)).
28  [9] If necessary, Plaintiffs should be given leave to amend to bolster these allegations.

1    Indeed, the plain text of the Warranty makes clear that it (1) applies only to manufacturing

2  defect claims; and (2) is not intended to abrogate consumer claims like those that Plaintiffs bring here,

3  stating that:

4    **What Does This Warranty Do?**

5    This Warranty gives you specific legal rights, and you may also have other rights, which
     vary from state to state and country to country. This Warranty is in addition to, and

6    does not affect any rights you have under the laws in your jurisdiction concerning the
     sale of consumer goods (including, without limitation, national laws implementing EC

7    Directive 44/99/EC).

8

9    **What Does This Warranty Cover?** This Warranty covers defects and malfunctions
     in the new Facebook Technologies product(s) it accompanies (the "Product").

10   ….

11   **What Will Facebook Technologies Do If There's a Problem With The Product?**
     If your Product is defective or malfunctioning, we will either repair or replace that

12   Product, or update software or services, so that the Product performs substantially
     according to the Warranted functionality.

13  ECF No. 20-2 at Ex. 2.

14    Thus, by the language of the Warranty itself, it applies only to manufacturing defects when the

15  Product is "defective or malfunctioning" and does not "affect" Plaintiffs' "rights" under California

16  and New York consumer protection law.

17    Other courts have read similar warranties in like fashion and have declined to extend such

18  warranties to limit consumer protection claims. *See Morgan v. Apple Inc.*, 2018 WL 2234537, at *6 (N.D.

19  Cal. May 16, 2018) (explaining that a manufacturing defect was one where the injury-producing

20  product was not up to par with the manufacturer's plans or with other units and finding that Apple's

21  one-year limited warranty did not apply to claims brought by purchasers of headphones alleging a

22  fundamental design defect) (citing *Barker v. Lull Eng'g Co.*, 20 Cal. 3d 413, 428 (Cal. 1978)); *Davidson v.*

23  *Apple, Inc.*, 2017 WL 976048, at *11 (N.D. Cal. Mar. 14, 2017) (stating a "manufacturing defect" exists

24  when an item is produced in a substandard condition" and is demonstrated "by showing the product

25  performed differently from other ostensibly identical units of the same product line." (cleaned up));

26  *In re MacBook Keyboard Litig.*, 2019 WL 1765817 at *4 (finding that Apple's One Year Limited Warranty

27

28

applied to manufacturing and production defects and thus did not apply to alleged defects with the design of Apple's keyboards.

In any event, even if the Warranty applied (it does not), its language does not help Meta. The language Meta relies on states only that "We may update, modify or limit such software and services in our sole discretion *so long as we continue to maintain (or exceed) the Warranted Functionality*."[10] (Emphasis added). Meta did not "maintain or exceed the Warranted Functionality" when it stripped the devices of the software necessary for it to operate as advertised.

Finally, even if the Warranty meant what Meta claims it does, Meta may not use fine print to disclaim its prominent misrepresentations and omissions. *See e.g., Williams*, 552 F.3d at 939-40 (generally holding a company may not prominently falsely advertise and then disclaim that advertising in small print); *Koch v. Acker, Merrall & Condit Co.*, 967 N.E.2d 675, 676 (N.Y. 2012) (disclaimers do not bar GBL "claims for deceptive trade practices at this stage of the proceedings, as they do not establish a defense as a matter of law"). At a minimum, whether its fine print disclaimer is exculpatory is a question for the trier of fact.[11]

> 7.   *The Court should decline to consider the Supplemental Terms of Service, which also do not affect Plaintiffs' claims.*

Next, Meta claims that its Supplemental Terms of Service allow it to brick these devices. As an initial matter, the Supplemental Terms of Service (ECF No. 20-2, Ex. 3) are not referenced in Plaintiffs' Complaint and not appropriately considered on a Motion to Dismiss.

---

[10] On the first page of its Motion, Meta misleadingly states that it informed consumers that it "may update, modify or limit such software and services in [its] sole discretion." Mot. at 1. That is not the complete sentence and is misleading. Meta omits the critical phrase, "so long as we continue to maintain (or exceed) the Warranted Functionality."

[11] *See also Axis Internet Servs. v. Subscriberbase Inc.,* 2010 WL 1267763, at *5 (N.D. Cal. Apr. 1, 2010) ("[I]t is inappropriate to suggest that a subject line is not deceptive because of corrective disclaimers in the fine print of the message itself, or terms written in a hyperlinked page"); *McKee v. Audible, Inc.*, 2017 WL 7388530, at *20 (C.D. Cal. Oct. 26, 2017) (Plaintiff adequately stated claim that Audible misrepresented its cancellation and rollover policies in advertisements despite disclaimer); *Chapman v. Skype*, 162 Cal. Rptr. 3d 864, 872-73 (Cal. Ct. App. 2013) (reasonable consumer who saw advertising of "Unlimited" plan could be deceived about whether the plan had limits despite defendant's disclaimer).

1    Even if considered, Meta has wholly failed to meet its burden that Plaintiffs were ever even

2    *shown* the Supplemental Terms of Service let alone agreed to them. *See* Mot. at 4 (Stating, without any

3    evidentiary support, the Supplemental Terms "were made available to users when they first activated

4    their devices.").

5    In any event, Meta's post-purchase disclosure is too little too late. It is undisputed the

6    Supplemental Terms of Service were not available at purchase and therefore cannot render Plaintiffs'

7    and similar users' beliefs at the time of purchase unreasonable. *See, e.g., Zamora v. CVS Pharmacy, Inc.*,

8    2021 WL 405898, at *7 (Cal. Ct. App. Feb. 5, 2021); *Schneider v. Chipotle Mexican Grill, Inc.*, 328 F.R.D.

9    520, 532 (N.D. Cal. 2018); *Marshall v. Red Lobster Mgmt.*, 2023 WL 9111611, at *8 (C.D. Cal. Dec. 18,

10    2023).

11    And, the Supplemental Terms of Service still do not say what Meta wishes that they do because

12    they do not expressly say that the specific software applications originally touted with the device could

13    be systematically removed, resulting in a bricked device. The Supplemental Terms of Service are vague,

14    implying only that software can be changed, updated, or in certain instances, removed—not that all

15    software will be removed, such that the device no longer works.

16    **Functionality may change or be limited**. Your Portal's functionality, performance,
      or both may change over time. We may introduce new features (including new
17    Facebook Products, Facebook Company Products or Third-Party Services), impose
      limits on, suspend, eliminate, change, or update certain existing features (including
18    Facebook Products, Facebook Company Products or Third-Party Services) or any part
      of your Portal's services, or restrict access to parts or all of your Portal. Certain Portal
19    features may require a Facebook account. If our software is downloaded to your Portal
      or used by you, you give us permission to download and install upgrades, updates, and
20    additional features for the software where available. For clarity, this right includes
      permission to download and install upgrades, updates, and additional features for
21    software embedded on your device, including during device setup.

22

23    *See* ECF No. 20-2, Ex. 3.

24    No reasonable interpretation of this provision allows Meta to eliminate virtually ***all*** Portal

25    software such that the device no longer operates as advertised. That is not a good faith interpretation

26    of Meta's rights under the foregoing provision. *See Marsu, B.V. v. Walt Disney Co.*, 185 F.3d 932, 937

27    (9th Cir. 1999) (the implied covenant of good faith and fair dealing is present in all contracts).

28

1    At best for Meta, whether the Supplemental Terms of Service adequately counteract its

2  misrepresentations and omissions is a question for the trier of fact. *Williams*, 552 F.3d at 939-40.

3              8.    *Plaintiffs sufficiently allege a breach of implied warranty.*

4    Plaintiffs also sufficiently allege a breach of implied warranty premised on Meta's bricking of

5  their Portals.[12] FAC ¶¶ 91-100. "'[T]he implied warranty of fitness for a particular purpose is a warranty

6  implied by law when a seller has reason to know that a buyer wishes goods for a particular purpose

7  and is relying on the seller's skill and judgment to furnish those goods.'" *Cardinal Health 301, Inc. v.*

8  *Tyco Elecs. Corp.*, 87 Cal. Rptr. 3d 5, 23 (Cal. Ct. App. 2008) (citation omitted); *see* Cal. Com. Code §

9  2315. Here, Plaintiffs allege Meta had reason to know that Plaintiffs purchased the Portal Devices to

10 use the specific applications that it advertised as part of the marketing and sale of its Portal Devices.

11 *See e.g.*, FAC ¶ 7. And, as with the Plaintiffs' other claims that arose from promises separate and apart

12 from the Warranty, here, Plaintiffs' implied warranty claims are not tethered to the Warranty or the

13 time period applicable to it. *See Morgan*, 2018 WL 2234537, at *6-8 (finding that implied warranty of

14 fitness for particular purpose claims could be upheld with amendment and finding that manufacturing

15 defect limited warranty did not apply to limit claims). Rather, the implied warranty here arose from

16 Meta's knowledge of the software applications that Meta itself touted in its advertising.

17   Tellingly, Meta relies solely on cases involving physical product defects—faulty cables, mold

18 growth, and compromised optical equipment. *See Ocampo v. Apple Inc.*, 2022 WL 767614, at *1 (N.D.

19 Cal. Mar. 14, 2022); *Taleshpour v. Apple Inc.*, 2021 WL 1197494, at *13 (N.D. Cal., Mar. 30, 2021); *In re*

20 *Sony HDTV Television Litig.*, 758 F. Supp. 2d at 1095; *Stearns v. Select Comfort Retail Corp.*, 2009 WL

21 1635931, at *8 (N.D. Cal. June 5, 2009). Each of these cases is materially inapposite. Here, the "defect"

22 in question is Meta's intentional removal of software features from Plaintiffs' devices. FAC ¶¶ 21-25,

23 48. Plaintiffs could not have been expected to anticipate Meta's "bricking" of their devices prior to

24 purchase. *Id.* ¶ 86.

25

26 _____
[12] Meta incorrectly suggests that Plaintiffs identify no "purpose" for purchasing the Portal. Mot. 20
27 n.7. The FAC belies this assertion. FAC ¶ 36 (alleging voice control factored into Plaintiff Shipley's
   purchase); *id.* ¶ 42 (alleging Plaintiff Herod bought a Portal for streaming); *id.* ¶¶ 93, 98- 99 (alleging
28 that Plaintiffs purchased devices for video-calling, streaming, effects, storytelling, and voice
   command).

1    The facts here are more closely analogous to *Eichorn v. Palm, Inc.*, 2008 WL 102222 (Cal. Ct.

2    App. Jan. 10, 2008). There, defendant marketed a handheld computer as providing consumers with

3    wireless Internet service. *Id.* at *1. Defendants' marketing materials did not disclose that the service

4    was tied to its proprietary network. *Id.* Several years later, defendant terminated access to its network,

5    "rendering the wireless functionality useless." *Id.* at *2. Because plaintiffs were stripped of the use of

6    their devices, the California Superior Court sustained their claim for breach of implied warranty. *Id.*

7    Here, as in *Eichorn*, Meta has rendered its products defective after the point of sale by electronically

8    depriving them of their usefulness. Meta's contention that the Portal was not "unmerchantable at the

9    time of sale" is moot. Mot. at 19.

10    Additionally, Plaintiffs' claims are timely. A consumer is not subject to California's one-year

11    durational limitation on implied warranty claims when, as here, the issue manifests more than a year

12    after purchase. *See Mexia v. Rinker Boat Co.*, 95 Cal. Rptr. 3d 285, 293-94 (Cal. Ct. App. 2009) (statute's

13    duration provision did not bar implied warranty claim where alleged defect first arose two years after

14    purchase); *Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 948 (C.D. Cal. 2012) (citing *Mexia* and

15    sustaining implied warranty claim where defect appeared more than a year after purchase).

16    As a final matter, the Court should reject Meta's attempt to disclaim liability based on the

17    Supplemental Terms of Service. *See supra*. Even if the Court does consider this document, Meta's

18    disclaimer argument is a nonstarter. Disclaimers of implied warranty are strictly construed against a

19    seller. *See Hauter v. Zogarts*, 14 Cal. 3d 104, 119-20 (Cal. 1975). Such disclaimers "must be made available

20    to the consumer prior to the sale of the product in order to be binding." *Clark v. LG Elecs. U.S.A.,*

21    *Inc.*, 2013 WL 5816410, at *12 (S.D. Cal. Oct. 29, 2013) (citing *Dorman v. Int'l Harvester Co.*, 120 Cal.

22    Rptr. 516, 522-23 (Cal. Ct. App. 1975)).

23    Here, Meta concedes that its Supplemental Terms of Service were first made available when

24    users had already "activated their devices"—not at the point of sale. Mot. at 4. Similarly, Meta does

25    not suggest that Plaintiffs were provided with the Warranty at the time of purchase. Mot. at 3. It notes

26    that the Warranty is "available on Meta's website" but does not specify how prominently the warranty

27    is featured or the steps a website visitor must take to find it. *Id.* Meta's silence on this issue dooms its

28    disclaimer argument. *See* Cal. Com. Code § 1201(10) (disclaimer is valid if it is "so written, displayed,

18

1   or presented that … a reasonable person against whom it is to operate ought to have noticed it"). In

2   sum, Meta falls well short of providing a conspicuous pre-sale disclaimer as required under California

3   law.

4       Plainly, Plaintiffs have adequately alleged their implied warranty claims.

5       9.    *Plaintiffs state a claim under the CFAA.*

6       Plaintiffs adequately allege that Meta violated section 1030(a)(5)(A) of the CFAA when it

7   intentionally removed software applications, services, and features from the Portal Devices, thereby

8   rendering them significantly less functional and largely obsolete. FAC ¶¶ 114-120. The CFAA makes

9   it unlawful to knowingly cause the transmission of a program, information, code, or command, and

10  as a result of such conduct, ***intentionally causing damage without authorization***, to a protected

11  computer. *See* 18 U.S.C. § 1030(a)(5)(A) (emphasis added). The CFAA defines "damage" as "any

12  impairment to the integrity or availability of data, a program, a system, or information." *Id.* §

13  1030(e)(8). Plaintiffs allege Meta caused damage without authorization by "bricking" the Portal devices

14  when it intentionally stripped them of nearly all of their key functions. FAC ¶¶ 21, 35, 39, 118 (class

15  members "did not provide Meta with authorization to access their Meta Portal devices for purposes

16  of limiting the functionality of the Meta Portal."). Plaintiffs allege Meta's intentional removal of many

17  of the Portal's advertised features caused damage to Plaintiffs in the form of "a significantly less useful

18  product." *Id.* ¶¶ 119, 23-25. Plaintiffs' allegations demonstrate that Meta acted without authorization

19  because, at the time of purchase, Plaintiffs had no reason to believe Meta would cut these features,

20  cease supporting the software, and make the device significantly less functional within only a couple

21  years of purchase. *Id.* ¶¶ 2, 4, 26-27, 41, 46.

22      Similar allegations concerning unauthorized damage have routinely been upheld on motions

23  to dismiss in the Northern District of California, including the *San Miguel* case Meta cites. *See e.g., San

24  Miguel v. HP Inc.,* 317 F. Supp. 3d 1075, 1085-86 (N.D. Cal. 2018) (denying motion to dismiss section

25  1030(a)(5)(A) claim where plaintiffs alleged defendant knowingly transmitted firmware update that

26  disabled printers, intentionally made third-party ink cartridges unusable, and plaintiffs did not consent

27  to the installation of the disabling firmware that limited and devalued the printers' functionality); *In re

28  Apple & AT & TM Antitrust Litig.,* 596 F. Supp. 2d 1288, 1308 (N.D. Cal. 2008) (upholding section

19

1030(a)(5)(A) claim where "Plaintiffs authorized a software update, but did not authorize damage to

their iPhones" that the update caused); *In re Apple Inc. Device Performance Litig.,* 347 F. Supp. 3d 434,

452 (N.D. Cal. 2018) (same where Apple's iOS update intentionally slowed processor speed and

plaintiffs "never gave permission for Apple to cause damage to their iPhones"); *Christian v. Betak,* 2024

WL 5191973, at *3-4 (N.D. Cal. Dec. 20, 2024) (same where plaintiff alleged "Mr. Betak had

credentials as GoPlug's system administrator to control Mr. Christian's email account," but did not

have "authorization to disable entirely the email" account).

      Meta's attempt to recast Plaintiffs' claim as one alleging Meta exceeded its authorization in

accessing the Portal devices misses the mark. *Cf.* Mot. at 22-23. Plaintiffs are not arguing that Meta

lacked authorization or exceeded its authorization to *access* the Portal devices. Indeed, liability under

section 1030(a)(5)(A) does not require Meta's "access" to be unauthorized, but rather, concerns

"*damage* without authorization," like Meta's bricking of the Portal. *See San Miguel,* 317 F. Supp. 3d at

1086 (emphasis added); *see also Christian,* 2024 WL 5191973, at *4 ("Mr. Betak's authorization to

control GoPlug's computer systems does not defeat Mr. Christian's [§ 1030(a)(5)(A)] CFAA claim").

Thus, Meta's reliance on its Warranty and Terms of Service—the latter of which Plaintiffs may never

have agreed to, and which should not be considered at this stage—is irrelevant. In rejecting a similar

argument on a motion to dismiss involving substantially similar facts of bricking a personal viewer

device, District Court Judge John Michael Vazquez of the District of New Jersey upheld a section

1030(a)(5)(A) claim and explained:

> The EULA does not say that Sony can delete *all* features. Instead, . . . [the EULA]
> implies that automatic software updates will *improve* or *enhance* the Dash – not destroy
> its functionality. The Court cannot say at this stage in the proceedings that by using
> the Dash and thus implicitly agreeing to the EULA, Plaintiff authorized Sony to render
> his Dashes inoperable. Plaintiff plausibly pled that Sony acted 'without authorization'
> in bricking the Dash.

*Grisafi v. Sony Elecs. Inc.,* 2019 WL 1930756, at *4 (D.N.J. April 30, 2019). At this stage, Plaintiffs

adequately allege that Meta violated section 1030(a)(5)(A) when it damaged the Portal devices without

authorization by unilaterally disabling nearly *all* of its core features and functions, which Plaintiffs

never agreed to, nor anticipated at the time of purchase.

      Meta also argues that Plaintiffs fail to identify a "loss." Mot. at 23-24. Not so. To state a claim

for unauthorized damage to a protected computer, there must be a loss in the aggregate in excess of $5,000 within a one-year period. 18 U.S.C. § 1030(c)(4)(A)(i)(I). "Loss" is defined as "any reasonable cost to any victim, including the cost of responding to an offense," "restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." *Id.* § 1030(e)(11). Plaintiffs may aggregate their individual damages across those of the putative class to reach the $5,000 threshold. *See In re Apple & AT & TM Antitrust Litig.,* 596 F. Supp. 2d at 1308; *Grisafi,* 2019 WL 1930756, at *5 (allowing plaintiff to aggregate his loss with putative class members whose devices were bricked by Sony's update).

Here, Plaintiffs adequately allege that Meta's bricking of its Portal devices caused "loss" in the form of the value of the Portal, which has now been rendered functionally worthless. Plaintiffs allege they would not have purchased the Portal or would have paid substantially less for it had they known Meta would abandon all support and strip nearly all of its software applications and key features within years of purchase. FAC ¶¶ 4, 26, 41, 46. Plaintiff Shipley alleges she paid $154 for her Portal, and that the Portal devices were initially offered for sale for $349 and $199. *Id.* ¶¶ 36, 12. Plaintiffs further allege the proposed class contains "at least thousands" of similarly situated consumers. *Id.* ¶ 53. These allegations suffice to allege the requisite "loss" under the CFAA at this early juncture. *See e.g., So v. HP, Inc.,* 2023 WL 4596778, at *11 (N.D. Cal. July 17, 2023) (CFAA damages pled where "Plaintiff So alleges that due to the firmware update, . . . the value of his [printer], which he purchased for $79.99 plus tax, dropped").[13]

### 10.   *Plaintiffs state a claim for trespass to chattels.*

Plaintiffs plausibly allege (1) that they never authorized Meta to access their devices "for purposes of limiting [their] functionality" and (2) that Meta's unapproved meddling rendered their devices useless. FAC ¶¶ 29, 47-48, 117-18. They thus adequately plead a trespass to chattels claim premised on Meta's interference with their Meta Portals. *See Shin v. ICON Found.,* 553 F. Supp. 3d 724, 733 (N.D. Cal. 2021) ("intermeddling" with another's digital property without authorization

---

[13] Should the Court disagree, Plaintiffs respectfully request that they be given leave to amend to bolster these allegations.

1  constitutes trespass to chattels).

2      While Meta asserts that the Supplemental Terms of Service and Warranty permit it to render

3  a Portal inoperable by disabling features and functions, Mot. 25, the argument is belied by the plain

4  language of both documents. *See supra*. The Supplemental Terms of Service state—unremarkably–that

5  Meta "may" introduce or eliminate "certain" features of the Portal. ECF No. 20-2, Ex. 3 at 2. But the

6  same paragraph also explicitly describes the narrow set of circumstances in which Meta is authorized

7  to access users' devices:

8      **Functionality may change or be limited**. Your Portal's functionality,
   performance, or both may change over time. We may introduce new features
9    (including new Facebook Products, Facebook Company Products or Third-Party
   Services), impose limits on, suspend, eliminate, change, or update certain existing
10   features (including Facebook Products, Facebook Company Products or Third-Party
   Services) or any part of your Portal's services, or restrict access to parts or all of your
11   Portal. Certain Portal features may require a Facebook account. If our software is
   downloaded to your Portal or used by you, *you give us permission to download
12   and install upgrades, updates, and additional features for the software where
   available. For clarity, this right includes permission to download and install
13   upgrades, updates, and additional features for software embedded on your
   device*, including during device setup.

14

15

16 *Id.* (emphasis added). The Terms include no other references to Meta's permission or authorization

17 to access devices. Accordingly, Meta's permission to access Portal Devices is confined to "upgrading"

18 or "updating" the Portal with "additional features"—it does not include eliminating nearly all

19 functionality entirely. The plain language of the Terms thus supports Plaintiffs' plausible allegation

20 that Meta interfered with their Portal devices without authorization. *See Shin*, 553 F. Supp. 3d at 732

21 (sustaining trespass to chattels claim where no contractual terms permitted defendant to "freeze"

22 digital assets held in plaintiff's account).

23      Even if the Court finds the Supplemental Terms of Service ambiguous, it must resolve the

24 ambiguity in Plaintiffs' favor. *In re Apple & AT&TM Antitrust Litig.*, 596 F. Supp. 2d at 1307

25 (sustaining trespass claim where defendant warned plaintiffs that "permanent inoperability 'may'

26 result" from a software installation, as the ambiguity of the warning "serve[d] to vitiate" Plaintiffs'

27 alleged consent). At bottom, no provision in the Supplemental Terms of Service grants Meta the right

28 to strip a Portal of its essential functionality.

1   As explained *supra*, the Portal's Warranty similarly provides no such authority. It simply

2   acknowledges that Meta will "make and keep software and services available during the Warranty

3   Period." ECF No. 20-2, Ex. 2 at 1.

4   The Court should reject Defendants' strained interpretation of these agreements and sustain

5   Plaintiffs' trespass to chattels claim.

6   *11.    Plaintiffs state a claim for unjust enrichment.*

7   As a final matter, Plaintiffs properly assert a claim for unjust enrichment. The California

8   Supreme Court clarified in 2015 that unjust enrichment is a standalone cause of action. *See Bruton v.*

9   *Gerber Prods. Co.*, 703 F. App'x 468, 470 (9th Cir. 2017) (citing *Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*,

10  61 Cal. 4th 988, 1000 (Cal. 2015)).[14] Plaintiffs are entitled to plead unjust enrichment in the alternative

11  to their legal claims. *See In re Safeway Tuna Cases*, 2016 WL 3743364, at *2 (N.D. Cal. July 13, 2016)

12  ("Plaintiffs are permitted to plead unjust enrichment, even if it were duplicative of their other claims,

13  at the pleading stage.") (citing *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762-63 (9th Cir. 2015)).

14  **VI.    CONCLUSION**

15  Based on the foregoing, Plaintiffs request that the Court deny Meta's motion in full. If,

16  however, the Court decides to grant Meta's motion in any respect, Plaintiffs seek leave to amend,

17  which should be freely given.

18

19  Date: September 11, 2025          */s/ Annick M. Persinger*
                                      Annick M. Persinger (SBN 272996)
20                                    **TYCKO & ZAVAREEI LLP**
                                      1970 Broadway, Suite 1070
21                                    Oakland, California 94612
                                      Telephone: (510) 254-6808
22                                    Facsimile: (202) 973-0950
                                      *apersinger@tzlegal.com*
23

24                                    Sophia Goren Gold (SBN 307971)
                                      **KALIELGOLD PLLC**
25                                    490 43rd Street, No. 122
                                      Oakland, California 94609
26                                    Telephone: (202) 350-4783

27  ---
    [14] In asserting otherwise, Meta improperly relies on *Brodsky*, Mot. 25, which, in turn, cites outdated

28  California law, *see Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 132 (N.D. Cal. 2020) (citing pre-2015
    cases).

*sgold@kalielgold.com*

*Attorneys for Plaintiffs and the Putative Classes*

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:25-CV-03324-WHO