United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH SHIPLEY, et al.,<br><br>       Plaintiffs,<br><br>   v.<br><br>META PLATFORMS, INC., et al.,<br><br>       Defendants. | Case No. 25-cv-03324-WHO<br><br>**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>Re: Dkt. Nos. 20, 21, 25, 29 |

In this putative class action, plaintiffs allege that defendant Meta Platforms, Inc. ("Meta") violated various consumer protection laws by selling its Meta Portal (the "Portal") smart device to consumers, then later rendering the devices obsolete. Meta now moves to dismiss plaintiffs' claims as inadequately pleaded. As described in further detail below, I agree with Meta that plaintiffs' complaint is deficient except with respect to the unfair prong of the Unfair Competition Law ("UCL"). Accordingly, defendants' motion to dismiss will be GRANTED IN PART and DENIED IN PART, with leave to amend.

## BACKGROUND

The following facts, presumed true, are drawn from plaintiffs' First Amended Complaint ("FAC"). *See* Dkt. No. 18.

In the fall of 2018, Meta launched the Portal, a "smart display and video calling device." *Id.* ¶ 12. The Portal devices were equipped with an "Android-based operating system" that provided users with several unique features, including auto-zooming video chatting through Meta-supported messaging applications, music and video streaming, and voice command functions. *Id.* ¶ 13. The Portal became "particularly popular" during the COVID-19 pandemic and resulting in the purported sale of "millions" of devices. *Id.* at ¶¶ 15–16.

But this boom in sales did not last forever. In November 2022, Meta publicly announced that it would "discontinue the Meta Portal devices all together." *Id.* ¶ 19. Meta continued to sell its Portal product, albeit at a lower price, to consumers, and "continued to tout its purported features." *Id.* ¶ 20. By mid-2023, Meta began to phase out the Portal devices by "unilaterally removing nearly every first-party and third-party application and its voice functionality in waves, effectively early 2025." *Id.* ¶ 21. These included applications like Zoom, Amazon "Alexa" voice assistant, Spotify, Facebook Live, and more. *Id.* As a result, Meta "rendered the Meta Portal devices significantly less functional and largely obsolete." *Id.* ¶ 23. While some consumers received notice from Meta regarding the end-of-life functionality of the Portal, other consumers received no notification whatsoever. *Id.* ¶ 22.

Today, Meta asserts that it is "committed to providing ongoing support for Meta Portal owners" by "provid[ing] notifications of major changes to the device experiences through the device itself" and "maintain[ing] system software with critical bug fixes and security." *Id.* ¶ 24. But plaintiffs paint a different picture. They claim that this "commitment" is nothing but an "empty promise, as the Meta Portal devices are now significantly less usable." *Id.* ¶ 25.

## LEGAL STANDARD

### Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the

1   plaintiff.  *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  However, the court

2   is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of

3   fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir.

4   2008).

5          If the court dismisses the complaint, it "should grant leave to amend even if no request to

6   amend the pleading was made, unless it determines that the pleading could not possibly be cured

7   by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).  In making

8   this determination, the court should consider factors such as "the presence or absence of undue

9   delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments,

10   undue prejudice to the opposing party and futility of the proposed amendment."  *Moore v. Kayport*

11   *Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

12   **Rule 9(b)**

13          Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard where a

14   complaint alleges fraud or mistake.  Under FRCP 9(b), to state a claim for fraud, "a party must

15   state with particularity the circumstances constituting fraud," and the allegations must be "specific

16   enough to give defendants notice of the particular misconduct . . . so that they can defend against

17   the charge and not just deny that they have done anything wrong."  *Kearns v. Ford Motor Co.*, 567

18   F.3d 1120, 1124, 1126 (9th Cir. 2009) (citations omitted).  "Averments of fraud must be

19   accompanied by 'the who, what, when, where, and how' of the misconduct charged."  *Vess v.*

20   *Ciba-Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted).  However, "Rule 9(b)

21   requires only that the circumstances of fraud be stated with particularity; other facts may be

22   plead[ed] generally, or in accordance with Rule 8."  *United States ex rel. Lee v. Corinthian Colls.*,

23   655 F.3d 984, 992 (9th Cir. 2011) (emphasis omitted).

24                                          **DISCUSSION**

     **I.      Judicial Notice**

25          As a threshold matter, the parties dispute whether I should take judicial notice of Meta's

26   Supplemental Terms of Services ("Supplemental TOS") at the motion to dismiss stage.  Plaintiffs

27   claim that these documents should not be considered as they are never referenced in the complaint.

28

United States District Court
Northern District of California

3

United States District Court
Northern District of California

Oppo. at 15–17. Even so, plaintiffs maintain that Meta has "wholly failed to meet its burden that [they] were ever even *shown* the Supplemental Terms of Service let alone agreed to them." *Id.* at 16. This is because plaintiffs believe the documents were "not available at purchase and therefore [could not] render Plaintiffs' and similar users' beliefs at the time of purchase unreasonable." *Id.* In response, Meta argues that these documents were provided in an unopposed request for judicial notice, and that these documents show that Meta did, in fact, limit their liability at the time of plaintiffs' purchases. Repl. at 6 n.4; *see* Dkt. No. 21.

As a general rule, courts "may take judicial notice of publications introduced to 'indicate what was in the public realm at the time, not whether the contents of those articles were in fact true.'" *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) (quoting *Premier Growth Fund v. Alliance Capital Mgmt.*, 435 F.3d 396, 401 n.15 (3d Cir. 2006)). But a court "cannot take judicial notice of disputed facts contained in such public records." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

I agree with Meta that judicial notice of the Supplemental TOS is proper at this stage of litigation. While plaintiffs argue that there is a factual dispute over whether plaintiffs were shown the Supplemental TOS upon purchase, and whether this document was available at purchase, evidence provided by Meta in their request for judicial notice shows that the Supplemental TOS existed prior to 2022, when both plaintiffs purchased their Portal devices. *See* Dkt. No. 21, Exs. B, C. The parties dispute *how* the Supplemental TOS was (or was not presented) to the plaintiffs, but it does not appear that the parties dispute the authenticity or accuracy of the Supplemental TOS submitted to the Court. Indeed, plaintiffs refer to the Supplemental TOS in their argument regarding the trespass to chattels. Accordingly, Meta's request for judicial notice as to the existence and contents of the Supplemental TOS is GRANTED. *Cf. Matera v. Google Inc.*, No. 15-CV-04062-LHK, 2016 WL 8200619, at *5 (N.D. Cal. Aug. 12, 2016) (taking judicial notice of Google's public terms of service); *Coffee v. Google, LLC*, No. 20-CV-03901-BLF, 2021 WL 493387, at *4 (N.D. Cal. Feb. 10, 2021) (same). I will not make any inference that plaintiffs were, in fact, aware of these terms.

United States District Court
Northern District of California

## II.    Consumer Protection Laws

Turning to the plaintiffs' complaint, Meta argues that plaintiffs "have not identified any false or misleading statement or omission by Meta" that would lead to a successful false advertising or consumer protection claim under California's Consumer Legal Remedies Act ("CLRA"), Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), or New York's General Business Law ("GBL"). Mot. at 5. I address each argument in turn.

### A.    Counts III and VI: Violations of California's CLRA and New York's GBL

Counts III and VI of the complaint allege violations of sections (a)(5), (a)(9), and (a)(16) of the CLRA, as well as section 349 of the GBL. *See* Mot. at 7. Meta asserts that each of these causes of action must fail because (1) plaintiffs fail to show that Meta made any affirmative misrepresentations about the Portal; (2) there is no plausible theory of an actionable omission; (3) plaintiffs fail to establish reliance or causation; and (4) the complaint fails to adhere to the Rule 9(b) heightened pleading standard for plaintiffs' CLRA § (a)(9) claim. Plaintiffs disagree with all four arguments.

As an initial matter, the parties both recognize that the CLRA and the GBL require showing either an "affirmative misrepresentation or a misleading omission" to state an actionable claim. *See* Mot. at 8. Both laws require plaintiffs to "plausibly allege that a reasonable consumer would be misled." *Wai Chu v. Samsung Elecs. Am., Inc.*, No. 1:18-CV-11742-GHW, 2020 WL 1330662, at *6 (S.D.N.Y. Mar. 23, 2020). "Whether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires consideration and weighing of evidence from both sides and which usually cannot be made on [a motion to dismiss]." *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 134–35 (2007) (internal quotations removed). CLRA or GBL claims that "sound in fraud" are subject a heightened pleading standard under Rule 9(b). *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).

#### 1.    Affirmative Misrepresentation

To state a claim for affirmative misrepresentation, a plaintiff must show that "members of the public are likely to be deceived" by the representation. *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (citation omitted). Such representations must mislead a "significant portion"

of a reasonable public to be actionable. *See McGinity v. Proctor & Gamble Co.*, 69 F.4th 1093, 1097 (9th Cir. 2023) (internal quotations omitted).

Meta asserts that plaintiffs have failed to meet this pleading requirement. They focus particularly on the representations that plaintiff made in their complaint about the Portal, including that it was a "Gift of Deeper Connection," a "step forward in smart video calling," and a new way to "share deeper connections and delightful moments" with its users. *See* Mot. at 8; FAC ¶¶ 2, 15. Because these statements are "general assertions" that are "very unlikely to mislead a consumer," and "say nothing about the specific characteristics or components" of the device, Meta concludes that dismissal is proper. Mot. at 8 (quoting *In re Apple Inc. Device Performance Litig.*, 347 F. Supp. 3d 434, 457 (N.D. Cal. 2018), *on reconsideration in part*, 386 F. Supp. 3d 1155 (N.D. Cal. 2019)). Meta similarly claims that plaintiffs' complaint fails to "particularly explain what is false or misleading" about Meta's representations about the Portal, which Meta believes were true. Mot. at 9 (quoting *In re Apple Inc. Device Performance Litig.*, 347 F. Supp. 3d at 457).

In opposition, plaintiffs allege that the "experiences of both Plaintiff Shipley and Plaintiff Herod are instructive." Oppo. at 10. They highlight that the plaintiffs were influenced to purchase a Portal after viewing advertisements that touted features of the product that were ultimately disabled. *See id.* at 10–11. From this, they conclude that "when a product does not operate as advertised, that states a claim under both California and New York law." *Id.* at 11.

Even assuming plaintiffs are correct that the affirmative misrepresentations alleged in the complaint are about the "Portal's objective, advertised features," their complaint is deficient. Plaintiffs maintain that Meta made "misleading misrepresentations to consumers that the Meta Portal devices had specific features, functions, and services," but each of the alleged misrepresentations were not, in fact, false at the point of purchase. *See* FAC ¶ 84. Take Plaintiff Shipley, who purchased a Portal device "after being exposed to online advertisements that touted the device as an easy way to connect with isolated, elderly family members during lockdown." *Id.* ¶ 36. Plaintiffs allege that the Portal's "voice control feature factored into her purchase, as she was looking for a device that would enable her to talk to her mother who was disabled and unable to use buttons." *Id.* ¶ 37. These features *were* present on the Portal in November 2020—and as

1    plaintiffs readily admit, continued to exist until January 31, 2025.  *Id.* ¶ 39.  These statements

2    cannot reasonably be interpreted as affirmative misrepresentations about the quality and nature of

3    their product.

4         The same is true for Plaintiff Herod, who purchased the Portal "after being exposed to

5    advertisements on TV that marketed the devices as having multimedia functions for streaming

6    content on TV."  *Id.* ¶ 42.  Plaintiffs assert that these "media functions factored into his purchase,

7    as he wanted to use the devices for media through apps like Facebook Live, Pluto TV, Amazon

8    Video, and Netflix."  *Id.* ¶ 43.  But again, these features were present in March 2022—when

9    Herod purchased the Portal—and continued to exist until around January 2025.  *Id.* ¶¶ 43, 45.

10   These advertisements by Meta do not constitute an affirmative misrepresentation since the

11   "members of the public are [not] likely to be deceived" by the representations made by Meta that

12   were true at the time of purchase.  *See Ebner*, 838 F.3d at 965.

13        Plaintiffs also claim that the "continued software functionality of the Meta Portal device[s]

14   . . . was a substantial factor" in both named plaintiffs' decisions to purchase the devices.  FAC ¶¶

15   37, 43.  But nowhere in the complaint do they mention that Meta affirmatively misrepresented the

16   functionality of the devices.  Rather, their argument relies on the presumption that Meta knew

17   about the future loss of functionality of the Portal but failed to disclose it to consumers—an

18   argument more apt for an omissions theory.

19        *In re Sony PS3 Other OS Litigation*, 551 F. App'x 916 (9th Cir. 2014), relied on by

20   plaintiffs, is distinguishable.  There, the court considered whether Sony violated the CLRA by

21   charging a premium for a "dual functionality" feature on their PS3 product, then subsequently

22   discontinuing access to both product features.  *Id.* at 922.  The court found that "representations at

23   the time of sale mischaracteriz[ing] the dual functionality of the PS3" were sufficient to allege a

24   claim under sections (a)(5) and (7) of the CLRA.  *Id.* at 920–21.  Key to the court's decision,

25   however, was that the seller made "advertising and promotional statements" that the product

26   would have a "ten-year lifespan."  *Id.* at 922.  Here, plaintiffs do not articulate in the complaint

27   whether Meta made affirmative representations about the lifespan of their products.  *In re Sony*

28   accordingly holds little, if any, weight for plaintiffs' argument.

United States District Court
Northern District of California

1    I am similarly unpersuaded by the other authority cited by the plaintiffs, as they all deal

2    with situations where the defendant made an affirmative misrepresentation about the quality of the

3    product *at the time of purchase*.  *See, e.g.*, *Biederman v. FCA US LLC*, 765 F. Supp. 3d 920(N.D.

4    Cal. 2025); *Pirozzi v. Apple, Inc.*, 966 F. Supp. 2d 909 (N.D. Cal. 2013); *Reyes v. Upfield US Inc.*,

5    694 F. Supp. 3d 408 (S.D.N.Y. 2023).  That is not the case here, where the alleged

6    misrepresentations were, in fact, accurate at the point of purchase.

7    Because plaintiffs have failed to allege any fact that plausibly shows an affirmative

8    misrepresentation, their CLRA and GBL claims under this theory must be dismissed.

9    **2.    Omission**

10    An omission is actionable under the CLRA if it is "contrary to a representation actually

11    made by the defendant, or an omission of a fact the defendant was obliged to disclose."  *Wilson v.*

12    *Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012) (quoting *Daughtery v. Am. Honda*

13    *Motor Co.*, 144 Cal. App. 4th 824, 835 (2006)).  Similarly, under New York's GLB, an omission

14    may be actionable if a "business alone possesses material information that is relevant to the

15    consumer and fails to provide this information."  *Oswego Laborers' Local 214 Pension Fund v.*

16    *Marine Midland Bank*, 85 N.Y.2d 20, 26 (1995).  Plaintiffs must "plausibly allege[] that . . .

17    [d]efendants had knowledge of the [material information] and failed to disclose or actively

18    concealed such information."  *In re Sling Media Slingbox Advert. Litig.*, 202 F. Supp. 3d 352, 359

19    (S.D.N.Y. 2016).  "A defendant's failure to reveal facts about which even it was unaware at the

20    time will not lead to liability."  *Mirza v. Ignite USA, LLC*, 439 F. Supp. 3d 1058, 1072 (N.D. Ill.

21    2020) (citing *In re Sling Media Slingbox Advert. Litig.*, 202 F. Supp. 3d at 359).

22    Plaintiffs maintain that their complaint shows that "Meta failed to inform them of the

23    possibility that they would disable key software features from the Portal Devices, rendering the

24    device a fundamentally different product than purchased."  Oppo. at 7; FAC ¶¶ 38, 44.  They

25    highlight that when "marketing the devices, Meta touted applications like the 'Hey Portal' voice

26    command and the Portals' ability to sync with 'Zoom and your other trusted apps,'" but the truth

27    was that "Meta was secretly reserving the right to eventually eliminate these functionalities at its

28    whim."  Oppo. at 8.  It is this alleged failure to disclose that Meta "could remove [such]

functionality at its whim" that serves as the basis of their omission theory. *Id.*

Plaintiffs point to four pieces of evidence in the complaint they believe are dispositive on this issue. First, they highlight that the "[o]mission of the eventual removal of software applications sold with the device was material to reasonable consumers." *Id.* at 9; FAC ¶¶ 37, 41, 43, 46, 87–88. Second, the "removed software applications [were] central to the functioning of these devices." *Id.* at 10. Third, Meta had "exclusive knowledge of when and if it would remove applications that were part of the Portal Devices' functionality at the time they were sold." *Id.* Finally, Meta "actively concealed . . . reserving this right to remove functionality in fine print in documents available only after purchase." *Id.*; FAC ¶¶ 84–86.

Meta responds that "[n]one of Meta's advertising statements . . . made any claims about the duration of support for the Portal beyond the one-year warranty." Mot. at 11. Similarly, it points out that "nowhere do Plaintiffs allege (much less allege with particularity) that Meta in fact *had* such an intent at the time Plaintiffs purchased their Portals." *Id.* Finally, Meta asserts that a "limited duty" applies to alleged "defects" that arise outside of a warranty period, "unless the defect relates to a safety issue." *Id.* at 12. Because the alleged defects by plaintiffs are not safety related, Meta concludes that an omissions theory was inadequately pleaded. *See id.*

Though this is a closer question than an affirmative misrepresentation, I agree with Meta. Plaintiffs bear the burden of showing in their complaint that "at the time of the alleged misrepresentations, [Meta] had the intent to mislead or omit material information about the future circumstances" of its devices. *See In re Google Assistant Privacy Litig.*, 546 F. Supp. 3d 945, 970 (N.D. Cal. 2021). While plaintiffs' complaint alleges that Meta "failed to disclose and actively concealed its intention to discontinue many of its features, services, and uses of the Meta Portal devices, and ultimately render the Meta Portal devices less functional," nowhere does it plausibly explain, even under the looser pleading standard of Rule 8, that Meta *knew* at the time of plaintiffs' purchase that it was going to strip the functionality of the Portal. *See* FAC ¶ 105. Accordingly, plaintiffs' omission theory under the CLRA and GBL are inadequately pleaded.

### 3.    Reliance and Causation

Both parties agree that plaintiffs must sufficiently plead that they relied on Meta's

1    allegedly fraudulent misrepresentations or omissions to maintain their claims under the CLRA and

2    GBL.  *See Campion v. Old Republic Home Prot. Co.*, 272 F.R.D. 517, 537 (S.D. Cal. 2011) (citing

3    *Cohen v. DIRECTV, Inc.*, 178 Cal. App. 4th 966, 981 (2009)) (CLRA); *Gale v. Int'l Bus. Machs.*

4    *Corp.*, 9 A.D.3d 446, 446–47 (N.Y. App. Div. 2004) (GBL).  Actual reliance is "required to

5    demonstrate causation for purposes of Article III standing when the plaintiffs assert that their

6    injury is the result of deceptive misrepresentations or omissions."  *Phillips v. Apple, Inc.*, No. 15-

7    CV-04879-LHK, 2016 WL 1579693, at *6 (N.D. Cal. Apr. 19, 2016) (citing *In re iPhone*

8    *Application Litig.*, 6 F. Supp. 3d 1004, 1015 (N.D. Cal. 2013)).

9         The parties disagree, however, whether this burden has been met by plaintiffs.  Meta

10   asserts that the consumer protection claims fail because the complaint "falls well short of the Rule

11   9 pleading standard (and Rule 8)."  Mot. at 14.  Specifically, Meta claims that plaintiffs "do not

12   identify any particular advertisement or sales materials they even *saw* before purchasing the

13   Portal," and "fails to identify any advertisements that Plaintiffs *could* have viewed and relied upon

14   prior to purchase."  *Id.*  Even if plaintiffs *had* identified such advertisements, Meta claims that

15   they "never plead[ed] that they 'actually relied'" on them.  *Id.* at 14–15.

16        In opposition, plaintiffs point to two sections of their complaint—paragraphs 41 and 46—

17   that they believe meet the requisite pleading standard.  Oppo. at 12.  Those paragraphs note that

18   plaintiffs Shipley and Herod "would not have purchased the Meta Portal device had [they] known

19   that Meta would unilaterally make the device significantly less functional within years of [their]

20   purchase or otherwise would have paid substantially less for the Meta Portal Device."  Oppo. at

21   12; FAC ¶¶ 41, 46.  Since plaintiffs believed the alleged misrepresentation and omission is

22   "material," they conclude that "it can be inferred that the Plaintiffs and all consumers would have

23   behaved differently" if Meta made them aware of such loss of functionality, and thus "actually

24   relied" on their advertisements.  *Id.*

25        *Kearns v. Ford Motor Company*, cited by Meta, is instructive on this point.  567 F.3d 1120

26   (9th Cir. 2009).  There, the Ninth Circuit squarely addressed a similar complaint raising claims

27   under the CLRA.  Finding that Rule 9(b) pleading applies to CLRA claims, the court concluded

28   that a complaint was improperly pleaded if it failed to "specify what . . . advertisements or other

United States District Court
Northern District of California

10

1    sales material *specifically* stated." *Id.* at 1126.  In other words, to successfully plead under Rule

2    9(b), a party must not state "neutral facts," but rather articulate "the who, what, when, where, and

3    how of the misconduct alleged." *Id.*

4         Here, plaintiffs have failed to articulate with reasonable particularity the circumstances

5    surrounding the named plaintiffs' decisions to purchase the Portal device.  The factual allegations

6    about plaintiff Shipley, for example, fail to address *when* she was "exposed to online

7    advertisements that touted the device as an easy way to connect with isolated, elderly family

8    members during lockdown." FAC ¶ 36.  Nor does it explain *what* Shipley relied on in those

9    advertisements in deciding to purchase the Portal—the complaint merely says that the "continued

10   software functionality" and "voice control feature factored into her purchase." *Id.* ¶ 37.  Under

11   *Kearns*, these allegations seem more akin to "neutral facts" that the level of particularity required

12   for CLRA claims.  *See* 567 F.3d at 1126.  The recitation of plaintiff Herod's circumstances

13   similarly fails under Rule 9(b) for lack of actual reliance and causation.  While plaintiffs *do*

14   provide a time frame for when Herod viewed the advertisements—"[i]n or around March 2022"—

15   there is a lack of facts specifically showing reliance on the advertisement.  FAC ¶ 42.

16        Plaintiffs' reliance on *In re MacBook Keyboard Litigation*, No. 5:18-CV-02813-EJD, 2019

17   WL 1765817, at *7 (N.D. Cal. Apr. 22, 2019), is also misplaced.  There, the Hon. Judge Davila

18   explained that when an "omission is material, then it can be inferred that the plaintiff would have

19   behaved differently." *Id.*  However, for this to apply, a plaintiff must show that "had the omitted

20   information been disclosed, one would have been aware of it and behaved differently." *Id.*

21   (quoting *Mirkin v. Wasserman*, 5 Cal.4th 1082, 1093 (1993)).  Because plaintiffs have failed to

22   identify the advertisements the named plaintiffs viewed, it is impossible to conclude from the face

23   of the complaint what information was provided in the advertisement, what information *wasn't*,

24   and how the plaintiffs relied on those statements in making their purchase decisions.  Given the

25   lack of actual reliance and causation, plaintiffs' CLRA and GBL claims also fail on this ground.

                    **4.      Section (a)(9) of the CLRA**

26        Meta finally claims that the plaintiffs' (a)(9) claim under the CLRA must be dismissed for

27   "failure to allege that Meta acted with fraudulent intent."  Mot. at 15.  Section (a)(9) prohibits the

"[a]dvertising [of] goods or services with intent not to sell them as advertised." Cal. Civ. Code § 1770(a)(9). As explained earlier, to plead fraudulent intent under the heightened Rule 9(b) standard, plaintiffs must show that "at the time of the alleged misrepresentations, [Meta] had the intent to mislead or omit material information about the future circumstances" of its devices. *See In re Google Assistant Privacy Litig.*, 546 F. Supp. at 970. Plaintiffs have failed to meet this burden because they do not show how Meta had the intent to deceive plaintiffs at their respective times of purchases.

### B.    Count II: California's FAL

Count II of plaintiffs' complaint alleges violations of the California False Advertisement Law. *See* Cal. Bus. & Prof. Code § 17500. Under the FAL:

> It is unlawful for any . . . corporation . . . . with intent . . . to dispose of . . . personal property . . . to induce the public to enter any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatsoever, including over the Internet, any statement . . . which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

*Id.* Plaintiffs allege that Meta's "material misrepresentations and omissions" violate the FAL because they "knew or should have known that [they] were false, deceptive, and misleading." FAC ¶¶ 77–78. Meta, however, argues that the FAL claim fails for the reasons the consumer protection claims fail—that plaintiffs have "not alleged any actionable misrepresentation" or "any statement that was rendered misleading by the omission of relevant information." Mot. at 16. Plaintiffs provide no meaningful response in their opposition, except that it is "necessary only to show that members of the public are likely to be deceived" to raise a FAL claim. Oppo. at 7 (quoting *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (Cal. 2002)) (cleaned up).

For the reasons described above, I agree with Meta. As explained in Section II.A.1, *supra*, plaintiffs have not provided any affirmative misrepresentation that would meet the Rule 9(b) pleading standard under the FAL. *See, e.g.*, *Norcia v. Samsung Telecomms. Am., LLC*, 2015 WL 4967247, at *8 (N.D. Cal. Aug. 20, 2015) (requiring an affirmative statement to plead under the

United States District Court
Northern District of California

1   FAL).  Even taking plaintiffs' "likely to be deceived standard" into consideration, the complaint

2   still fails, because there are no facts suggesting that any affirmative statements made by Meta

3   deceived the consuming public.  *See Kasky*, 27 Cal. 4th at 951.  Nor does plaintiff identify any

4   "affirmative statement that was false or misleading by the omission of relevant and material

5   information."  *Stewart v. Electrolux Home Prods., Inc.*, 304 F. Supp. 3d 894, 908 (E.D. Cal.

6   2018).

7        Unless plaintiffs adequately plead an affirmative misrepresentation made by Meta, I cannot

8   find that their FAL claim is valid.

    **C.    Count I: Violation of California's Unfair Competition Law (the "UCL")**

9        Meta also argues that plaintiffs have failed to state a claim under California's UCL, which

10  prohibits any "unlawful, unfair, or fraudulent business act or practice."  Cal. Bus. & Prof. Code §

11  17200.  "Each prong of the UCL is a separate and distinct theory of liability," and must be

12  analyzed independently.  *Kearns*, 567 F.3d at 1127.

13       Plaintiffs' complaint alleges violations of all three prongs of the statute, *see* FAC ¶ 68, but

14  their opposition does not rebut Meta's argument that the "fraudulent" prong is inapplicable.

15  Oppo. at 5.  Accordingly, plaintiffs have forfeited this argument, and I focus my attention to

16  whether the complaint properly alleges violations of the "unfair" or "unlawful" prongs.

17

            **1.    Unfair**

18       The "unfair" prong of the UCL creates a cause of action for a "business practice that is

19  unfair even if not proscribed by some other law."  *In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp.

20  3d 1197, 1225 (N.D. Cal. 2014) (citing *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th

21  1134, 1143 (2003)).  This prong is "intentionally framed in its broad, sweeping language,

22  precisely to enable judicial tribunals to deal with the innumerable new schemes which the fertility

23  of man's invention would contrive."  *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal.

24  4th 163, 180 (1999) (internal quotations omitted).  As a result, courts have applied two tests to

25  analyze "unfair" UCL claims: (1) a balancing test, and (2) a tether test.  *Prince-Weithorn v. GMAC

26  Mortg., LLC*, No. CV 11-00816 SJO (PLAx), 2011 WL 11651984, at *7 (C.D. Cal. May 5, 2011).[1]

27

28  _____

    [1] Courts also apply a third "FTC test" to the UCL, looking at Section 5 of the Federal Trade

                                              13

1   These tests are not mutually exclusive, and plaintiffs assert that their complaint satisfies both.

2   *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 1000 (9th Cir. 2023).  Plaintiffs plausibly allege a

3   UCL claim under the balancing test, but not the tether test.

### a)      Balancing Test

5          Under the "balancing" test, courts consider whether the challenged business practice is

6   "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires

7   the court to weigh the utility of the defendant's conduct against the gravity of the harm to the

8   alleged victim."  *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 257 (2010).

9   Plaintiffs maintain that their complaint satisfies the balancing test by analogizing to a Ninth

10  Circuit case, *In re Sony PS3 Other OS Litigation*, 551 F. App'x 916 (9th Cir. 2014).  I do not agree

11  with the analogy, but I do believe that they satisfy the test.

12          In *In re Sony PS3*, the court was asked to determine whether Sony violated the UCL by

13  charging a premium for a "dual functionality" feature on their PS3 product, then subsequently

14  discontinuing access to both product features.  *Id.* at 922.  The court ultimately concluded that

15  plaintiffs sufficiently alleged an injury by pleading that (1) they "lost money because they would

16  not have purchased or would have paid less . . . if they had known that Sony would disable or

17  remove one or both of these advertised features"; (2) they "could not have reasonably avoided this

18  injury because they would have lost access to [one feature] if they chose not to download the

19  update which disabled the other . . . feature"; and (3) there were "no countervailing benefits to

20  consumers . . . that outweigh the substantial injury."  *Id.*  Plaintiffs alleged that the manufacturer

21  promoted to consumers that the PS3 would have both "dual functionality and [a] ten-year

22  lifespan."  *See id.*  While the "ten-year" representation was meant to cover the PS3 device itself,

23  and not the "dual functionality" features, the Ninth Circuit concluded that the complaint

24  "adequately . . . alleged that members of the public were likely to be deceived by Sony's

25  advertising and promotional statements" in violation of the UCL.  *Id.*

26

27  _____

28  Commission Act as "guidance."  *See Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 736 (9th Cir. 2007).  Because the Ninth Circuit has rejected applying the FTC test to consumer cases, I decline to address the parties' arguments regarding this test.  *See id.*

United States District Court
Northern District of California

1    Here, however, plaintiffs do not allege any facts showing that Meta represented the

2    features of the Portal would continue to operate for an extended period of time.[2]   Although

3    plaintiffs *do* allege facts the court in *In re Sony PS3* found sufficient, the underlying factual

4    background of these two cases does not warrant analogy.

5    That said, I agree with plaintiffs that they have pleaded an unfair UCL claim under the

6    balancing test.  Plaintiffs allege that "Meta caused them substantial injury by charging a premium

7    for Portals' software features . . . and then discontinued access to that same software."  Oppo. at 6.

8    They also claim that they "lost money as a result," and that there were "no countervailing benefits

9    to consumers or competition that outweigh the substantial injury to consumers."  *Id.*  They point to

10    a staff report created by the FTC, which states that the "failure to provide software updates or the

11    failure to disclose the duration of software support raises concerns about harm consumers cannot

12    avoid," and that a practice is unfair if "it is likely to cause substantial injury that could not be

13    reasonably avoided by consumers."  Oppo. at 6; FAC ¶ 30.  And they cite a letter drafted by

14    consumer advocacy groups to the FTC, which calls out the Portal as an example of deceptive

15    software tethering and bricking.  FAC ¶ 35 ("Other companies kill software support and also the

16    device itself, as Facebook did with its Portal product.").  These facts, taken in the aggregate,

17    plausibly show that Meta was engaging in "immoral, unethical, oppressive, unscrupulous or

18    substantially injurious" conduct by "bricking" the Portal devices.  *See Drum*, 182 Cal. App. 4th at

19    257.

20                    **b)    Tether Test**

21    Plaintiffs also assert that the complaint satisfies the tether test.  Under the tether test,

22    plaintiffs must show the effects of Meta's conduct is "comparable to or the same as a violation of

23    the law, or otherwise significantly threatens or harms competition."  *In re Adobe Sys., Inc. Priv.*

24

25    _____

25    [2] Meta also argues that plaintiffs overlook *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017 (9th

26    Cir. 2008), which Meta asserts is controlling.  There, the Ninth Circuit held that the "failure to
     disclose a defect that might, or might not, shorten the effective life span of an automobile part that

27    functions precisely as warranted throughout the term of its express warranty . . . does not
     constitute an unfair practice under the UCL."  *Id.* at 1026–27.  I do not agree that the alleged

28    actions of Meta in this case—terminating the functionality of the Portal—is analogous to a product
     defect.

1    *Litig.*, 66 F. Supp. 3d at 1226 (cleaned up).

2    While plaintiffs claim that Meta's "acts and practices offend an established public policy in

3    the marketplace," it does not explain how these acts are "comparable to or the same as a violation

4    of the law." FAC ¶ 65; *cf. id.* (finding plaintiffs pleaded adequate facts to bring a claim under the

5    "tethering test" after showing various statutes reflect California's public policy of protecting

6    consumer data). I do not think this one statement is sufficient to show how Meta's acts violated

7    antitrust law or would be akin to such violations. Plaintiffs' complaint is deficient concerning the

8    tether test.

9                    **2.      Unlawful**

10    The "unlawful" prong of the UCL "borrows violations of other laws and treats them as

11   unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech*

12   *Commc'ns, Inc.*, 20 Cal. 4th at 180 (cleaned up). Plaintiffs' complaint alleges that Meta violates

13   the "unlawful" prong due to its other violations of the CLRA, GBL, and the FAL. *See* FAC ¶ 68.

14   Each of those claims fail for being inadequately pleaded. Accordingly, plaintiffs do not currently

15   have an actionable claim under the "unlawful" prong of the UCL.

16   **III.   Breach of Implied Warranty**

17    Meta seeks to dismiss plaintiffs' two claims for breach of implied warranty (Counts IV and

18   V) because plaintiffs' "own allegations confirm that each of them had access to the full range of

19   functionality on the Portal for the entire warranty period (and then some)." Mot. at 19.

20           **A.      Count IV: Song-Beverly Consumer Warranty Act**

21    The Song-Beverly Consumer Warranty Act ("SBCWA") was enacted to "regulate

22   warranties and strengthen consumer remedies for breaches of warranty." *Keegan v. Am. Honda*

23   *Motor Co., Inc.*, 838 F. Supp. 2d 929, 944 (C.D. Cal. 2012). The SBCWA intends to protect

24   purchasers of "consumer goods," defined as "any new product or part thereof that is used, bought,

25   or leased for use primarily for personal, family, or household purposes, except for clothing and

26   consumables." Cal. Civ. Code § 1791(a). Under the act, an implied warranty of merchantability

27   guarantees that "consumer goods meet each of the following: (1) Pass without objection in the

28   trade under the contract description; (2) Are fit for the ordinary purposes for which such goods are

1   used; (3) Are adequately contained, packaged, and labeled; [and] (4) Conform to the promises or

2   affirmations of fact made on the container or label."  *Id.* § 1791.1(a).

3           Plaintiffs' complaint asserts that Meta violated the SBCWA by providing an "implied

4   warranty that the Meta Portal devices, and any parts thereof, [were] merchantable and fit for the

5   ordinary purposes for which they were sold—as smart devices with numerous features and

6   functions including video-calling, streaming, effects, storytelling, and voice command."  FAC ¶

7   97.  However, plaintiffs assert that the Portal devices were "not fit for their ordinary purposes

8   because . . . Meta did not maintain continued software functionality of the Meta Portal devices,"

9   causing them to lose their "advertised features and functions."  *Id.*

10          Meta asserts that plaintiffs' SBCWA claim is "limited by statute to a maximum of 'one

11  year following the sale of new consumer goods to a retail buyer.'"  Mot. at 19 (quoting Cal. Civ.

12  Code § 1791.1(c)).  Further, the express warranty provided for the Portal was limited to one year

13  after purchase, and both named plaintiffs did "not allege they experienced any issues within one

14  year of either purchase."  Mot. at 19–20.  Because the SBCWA claim is "based on events that

15  occurred well after the expiration of the one-year warranty," Meta asks for this claim to be barred.

16  *Id.* at 20.

17          In response, plaintiffs assert that their SBCWA claim is not time-barred since consumers

18  are not subject to the one-year limitation when the issue manifests more than a year after purchase.

19  *See* Oppo. at 18; *Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297, 1307–09 (2009); *Keegan*, 838

20  F. Supp. 2d at 948.  But each of these cases involved defects that were present *at the time of*

21  *sale*—plaintiffs do not contest that the Portals sold to the named plaintiffs were, in fact, functional

22  at the time of purchase.  *See Mexia*, 174 Cal. App. 4th at 1308 ("[T]he fact that the alleged defect

23  resulted in destructive corrosion two years after the sale of the boat does not necessarily mean that

24  the defect did not exist at the time of sale."); *Keegan*, 838 F. Supp. 2d at 948 ("In the case of a

25  latent defect, a product is rendered unmerchantable, and the warranty of merchantability is

26  breached, by the existence of the unseen defect, not by its subsequent discovery.") (cleaned up).  I

27  agree with Meta that plaintiffs' FAC, at least as currently pleaded, suggests that the SBCWA is

28  time barred.  Therefore, Meta's motion to dismiss the SBCWA claim is GRANTED.

United States District Court
Northern District of California

**B.      Count V: California Commercial Code**

Meta additionally claims plaintiffs' implied warranty claim under the California Commercial Code "fails because Meta properly disclaimed all implied warranties." Mot. at 20. It argues that the Warranty for the Portal "states in clear and conspicuous language that [Meta does] not extend any implied or statutory warranties, conditions or representations regarding the Product or any connected software or online services." *See* Mot. at 20–21 (cleaned up); Compl., Ex. A at 3. Plaintiffs conversely argue that the Warranty "facially applies only to *manufacturing defects* and not fraudulent conduct that violates consumer protection laws." Oppo. at 13 (emphasis in original). Even so, plaintiffs argue that "Meta may not use fine print to disclaim its prominent misrepresentations and omissions." *Id.* at 15. In reply, Meta asserts that so long as the Portal was "functional throughout the period of the express warranty, a later failure would not conflict with a statement regarding [functionality] because there was no representation as to the durability of [the product]." Repl. at 5 (citing *Berenblat v. Apple, Inc.*, Nos. 08-4969 JF (PVT), 09-1649 JF (PVT), 2009 WL 2591366, at *6 (N.D. Cal. Aug. 21, 2009)).

Meta's arguments appear to be supported by case law on this issue. "Similar claims under the CLRA have been rejected because . . . [any] statement describing any feature would be actionable when either the feature—or product as a whole—eventually failed." *Berenblat*, 2009 WL 2591366, at *6 (citing *Long v. Hewlett-Packard Co.*, No. C 06-02816, 2007 WL 2994812, at *7 (N.D. Cal. July 27, 2007), *aff'd*, 316 F. App'x 585 (9th Cir. 2009)). While plaintiffs raise this argument in the context of the California Commercial Code, not the CLRA, the same principles apply—Meta provided a one-year limitation of Warranty and the plaintiffs' products were certainly functional throughout that period.

While plaintiffs may be correct that the Warranty facially applies to manufacturing defects, other provisions and documents seem to support Meta's position. First, the Warranty notes that Meta "may update, modify or limit such software in [their] sole discretion," so long as they "continue to maintain (or exceed) the Warranted Functionality." Compl. Ex. A at 2. In addition, as described above, the Supplemental TOS indicated that Meta could "suspend, eliminate, change, or update certain existing features . . . or any part of [the] Portal's services, or restrict access to

parts or all of [the] Portal." Repl. at 5. Even construing all facts in favor of the plaintiff, it does not appear plausible that Meta did not cover its bases by disclaiming itself from liability under both the Warranty and Supplemental TOS. Plaintiffs' California Commercial Code argument should therefore be dismissed.

## IV.    Count VII: CFAA

Meta also moves to dismiss plaintiffs' claim under the CFAA. Meta argues that the complaint impermissibly attempts to "repurpose [the CFAA] into a sweeping consumer protection statute" rather than an "anti-hacking statute." Mot. at 21. Plaintiffs, conversely, assert that the allegations in the complaint sufficiently demonstrate that the procedural and standing requirements of the CFAA are met. Oppo. at 19–21.

The CFAA makes it unlawful to "knowingly cause[] the transmission of a program, information, code, or command, and as a result of such conduct, intentionally cause[] damage without authorization, to a protected computer." 18 U.S.C. § 1030(a)(5)(A). The CFAA defines "damage" as "any impairment to the integrity or availability of data, a program, a system, or information." *Id.* § 1030(e)(8).

Plaintiffs assert that Meta's decision to remove many advertised features from the Portal was "without authorization because, at the time of purchase, Plaintiffs had no reason to believe Meta would cut these features, cease supporting the software, and make the device significantly less functional within only a couple years of purchase." Oppo. at 19; FAC ¶¶ 2, 4, 26–27, 41, 46. They also point to the fact that the CFAA cause of action indicates that the device owners "did not provide Meta with authorization to access their Meta Portal devices for purposes of limiting the functionality of the Meta Portal." FAC ¶ 118.

Meta, however, argues that plaintiffs do not plead that Meta accessed their Portal devices without authorization to "*intentionally cause[] damage*," as the CFAA requires. *See* Repl. at 12; 18 U.S.C. § 1030(a)(5)(A) (emphasis added). Rather, the complaint only asserts that plaintiffs "did not provide Meta with authorization to *access* their Meta Portal *for the purposes* of limiting the functionality of the Meta Portal." *Id.*; FAC ¶ 118 (emphasis added). Because plaintiffs' theory turns on the "alleged purpose" of Meta's access—not a lack of authorization to access their

1    devices generally—Meta concludes that this CFAA argument is not cognizable under *Van Buren*

2    *v. United States*, 593 U.S. 374, 396 (2021).

3          I agree with Meta that the CFAA does not seem applicable here, at least as currently

4    pleaded.  The Supplemental Terms of Service discloses that Meta may "suspend, eliminate,

5    change, or update certain features" or "restrict access to parts or all of [the] Portal."  Repl. at 13;

6    *see* RJN Ex. 3.  Courts routinely dismiss claims under the CFAA when the terms of service

7    provided "notice of the potential . . . update and its effects," such as the changes to the

8    functionality of the Portal device.  *See Parziale v. HP, Inc.*, No. 5:19-CV-05363-EJD, 2020 WL

9    5798274, at *7 (N.D. Cal. Sept. 29, 2020); *Cobbs v. Robinhood Fin. LLC*, No. 2:21-CV-00843-

10   VAP-MRWx, 2021 WL 1035123, at *3 (C.D. Cal. Feb. 10, 2021) (finding the challenged

11   transmission was "authorized by Plaintiff in the Customer Agreement").  Accordingly, I dismiss

12   plaintiffs' CFAA claim with leave to amend to provide more facts suggesting that Meta

13   "intentionally caused damage" to their Portal devices.

14   **V.     Count VIII: Trespass to Chattels**

15         Plaintiffs' eighth Cause of Action is a trespass to chattels claim.  The complaint asserts that

16   "[i]n or around November 2022, Defendants announced its intention to unlawfully take from

17   Plaintiffs' and Class Members' possession an operational Meta Portal device through its forced

18   discontinuance, leaving Plaintiffs and the Class Members with a less useful product."  FAC ¶ 123.

19   Because Portal device owners "did not provide Meta with authorization to access their Meta Portal

20   devices for purposes of limiting the functionality of the Meta Portal," plaintiffs' complaint

21   concludes that trespass to chattels occurred.  *Id.* ¶ 118.

22         Meta asserts that this claim, like the CFAA, turns on whether plaintiffs "consent[e]d to

23   [Meta's] exercise of dominion" over their property.  Mot. at 24; *Bank of N.Y. v. Fremont Gen.*

24   *Corp.*, 523 F.3d 902, 914 (9th Cir. 2008).  And like the CFAA claims, Meta concludes that

25   plaintiffs "have not plausibly alleged access without authorization by Meta," and even so,

26   plaintiffs "consented to Meta's access to their devices through the Supplemental Terms of Service

27   and Warranty."  Mot. at 25 (cleaned up).

28         Plaintiffs contend that Meta's argument is "belied by the plain language of both

United States District Court
Northern District of California

20

documents." Oppo. at 22. While the Supplemental TOS states that Meta "may" introduce or eliminate "certain" features of the Portal, plaintiffs claim that the language only allows for a "narrow set of circumstances in which Meta is authorized to access users' devices":

> **Functionality may change or be limited**. Your Portal's functionality, performance, or both may change over time. We may introduce new features (including new Facebook Products, Facebook Company Products or Third-Party Services), impose limits on, suspend, eliminate, change, or update certain existing features (including Facebook Products, Facebook Company Products or Third-Party Services) or any part of your Portal's services, or restrict access to parts or all of your Portal. Certain Portal features may require a Facebook account. If our software is downloaded to your Portal or used by you, *you give us permission to download and install upgrades, updates, and additional features for the software where available. For clarity, this right includes permission to download and install upgrades, updates, and additional features for software embedded on your device*, including during device setup.

*Id.* (emphasis added). Under this language, plaintiffs argue, Meta is limited to accessing the Portals to only "upgrad[e]" or "updat[e]" the Portal with "additional features," and does not permit "eliminating nearly all functionality entirely." *Id.*

While plaintiffs are certainly correct in highlighting the language above, other language in the same paragraph—namely, "impose limits on, suspend, eliminate, change, or update certain existing features"—suggests that Meta *could* unilaterally remove or adjust certain features from the Portal. *See* Repl. at 15. Under this argument of plaintiffs, then, they would have been constructively "on notice of [Meta's] ability to interfere" with their purchased devices and services, meaning that Meta did not act without authorization. *See Price v. Apple, Inc.*, No. 21-CV-02846-HSG, 2022 WL 1032472, at *6 (N.D. Cal. Apr. 6, 2022). Accordingly, Meta's motion to dismiss plaintiffs' trespass to chattel claims is granted.

## VI.    Count IX: Unjust Enrichment

Finally, Meta asserts that plaintiffs failed to successfully plead an unjust enrichment claim. See Oppo. at 25. The parties dispute whether the unjust enrichment claim may be pleaded as an independent cause of action. Meta asserts that "California does not recognize a separate cause of action for unjust enrichment," and that "courts have consistently dismissed stand-alone claims for unjust enrichment." Mot. at 25; *Brodsky*, 445 F. Supp. 3d at 132–34. Plaintiffs, however, contend

United States District Court
Northern District of California

1    that the California Supreme Court has recognized unjust enrichment as a standalone cause of

2    action since 2015.  See Oppo. at 23; *Bruton v. Gerber Prods. Co.*, 703 F. App'x 468, 470 (9th Cir.

3    2017) (citing *Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, 61 Cal. 4th 988, 1000 (Cal. 2015)).

4         "California law on unjust enrichment remains somewhat unclear."  *Hammerling v. Google*

5    *LLC,* 615 F. Supp. 3d 1069, 1096 (N.D. Cal. 2022).  The Ninth Circuit "has construed the

6    common law to allow an unjust enrichment cause of action through quasi-contract."  *ESG Cap.*

7    *Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016).  "Since 'the theory underlying' an

8    unjust enrichment claim is 'that a defendant has been unjustly conferred a benefit 'through

9    mistake, fraud, coercion, or request' . . . [t]he return of that benefit is the remedy 'typically sought

10   in a quasi-contract cause of action.'"  *Lawyer v. Homary Int'l Ltd.*, No. [], 2025 WL 1571856, at

11   *6 (N.D. Cal. June 2, 2025) (quoting *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th

12   Cir. 2015)).

13        Here, plaintiffs allege that they are entitled to restitution because Meta sold the Portal

14   devices "with the intention to discontinue any useful value . . . resulting in a product that is

15   worthless to Plaintiffs and Class Members, who overpaid for their Meta Portal devices and/or

16   would not have purchased the Meta Portal devices had they known that Defendants would

17   unilaterally phase out the Meta Portal devices and their services, rendering them less functional."

18   FAC ¶ 128.  I will construe the unjust enrichment claim as one for quasi-contract: Meta allegedly

19   enticed plaintiffs to purchase the Portal through fraudulent misrepresentations and omissions, and

20   was unjustly enriched as a result.  See *Lawyer*, 2025 WL 1571856, at *6 (plaintiff sufficiently

21   stated a quasi-contract cause of action by alleging defendants had enticed plaintiffs to "purchase

22   its products through fraudulent misrepresentations"); *Astiana,* 783 F.3d at 762 (same); *ESG Cap.*

23   *Partners*, 828 F.3d at 1039 (same).  Because plaintiffs have not sufficiently pleaded the fraudulent

24   misrepresentations and omissions, this cause of action will be dismissed with leave to amend.

25                                          **CONCLUSION**

26        For the reasons described above, the Court DENIES Meta's motion regarding plaintiff's

27   UCL claim under the unfair theory and GRANTS Meta's motion with respect to all other causes

28

*United States District Court*
*Northern District of California*

1    of action.  Plaintiffs shall have leave to amend the Complaint by January 16, 2026.

2        **IT IS SO ORDERED.**

3    Dated: December 18, 2025



4

5                                           William H. Orrick
                                            United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

23