UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ELIZABETH SHIPLEY, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>META PLATFORMS, INC., et al.,<br><br>Defendants. | Case No.  25-cv-03324-WHO<br><br>**ORDER ON META'S MOTION TO DISMISS**<br><br>Re: Dkt. Nos. 40, 42, 43 |

Defendant Meta Platforms, Inc. ("Meta") moves to dismiss plaintiffs' Second Amended Complaint ("SAC") as inadequately pleaded.  For the reasons described below, Meta's motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

In the fall of 2018, Meta launched the Meta Portal (the "Portal"), a "functional hands-free video calling and streaming device."  SAC [Dkt. No. 38] ¶¶ 1, 17.  Each Portal device was equipped with an "Android-based operating system" that provided users with several unique features, including auto-zooming video chatting through Meta-supported messaging applications, music and video streaming, and voice command functions.  *Id.* ¶ 18.  The Portal became "particularly popular" during the COVID-19 pandemic and resulted in "millions" of units being sold.  *Id.* ¶ 20.

This boom in sales did not last forever.  In June 2022, Meta announced it would discontinue the Portal for consumers (instead focusing on businesses), and by November 2022, Meta publicly announced it would "discontinue the Meta Portal devices" altogether.  *Id.* ¶ 22.[1]

---

[1] Plaintiffs allege while some Portal customers received notices stating that as of January 31, 2025, "Portal will no longer respond to voice commands," others received no prior notification that Meta

United States District Court
Northern District of California

After this announcement, Meta continued to sell the Portal, albeit at a lower price, to consumers, and "continued to tout its same purported features." *Id.* ¶ 23.  By mid-2023, Meta began "bricking" the Portal by "unilaterally removing first-party and third-party applications and its voice functionality in waves, effective beginning in 2023 and continuing in phases into 2025." *Id.* ¶ 24.[2]  As a result, Meta "rendered the Meta Portal devices essentially a brick compared to the functional hands-free video calling and streaming devices with a multitude of application functionality for which they were originally sold at a high price point." *Id.* ¶ 28.

Plaintiffs now allege that during the "entire period that Meta sold the Portal products, [it] uniformly omitted at the point of purchase that its software functionality could become obsolete long before the useful life of the hardware of the product." *Id.* ¶ 29.  In fact, Meta purportedly made the *opposite* representation: that many of the features—including "voice assistant capabilities like 'Hey Portal' and 'Alexa,' video calling functions like Zoom, Teams, and music and video streaming functions like iHeartRadio, Spotify, YouTube, and StoryTime"—were "built-in" to the devices.  *Id.* ¶ 30.  Such representations were seen, for example, on the front of the Portal product box, which exclaimed, "Smart video calling designed to fit your home, with Alexa Built-in."  *Id.* ¶ 33.[3]  They were also seen on "all online descriptions of the product."  *Id.*  The side of the box "doubled down on these promised software features," emphasizing not only "Alexa Built-in," but the "StoryTime feature, Photos feature, and the ability to stream music."  *Id.* ¶ 35.

Since "bricking" the Portal devices, Meta has "not issued refunds to any consumers," despite the product being "now largely useless," and despite plaintiffs purchasing the devices at a "high price point" for the features in question.  *Id.* ¶¶ 28, 44.  Accordingly, on April 14, 2025,

---

intended to remove features from their devices.  SAC ¶ 25.

[2] Plaintiffs identified the following platforms as being removed during this time period: Zoom, Amazon "Alexa" voice assistant, "Hey Portal" voice assistant, Facebook Live, Workplace Live, Microsoft Teams, Microsoft Intune, Spotify, StoryTime, Pandora, iHeartRadio, Tidal Music, The Calendar, CBS News, ESPN, Photo Booth, and Background Effects and Masks on Messenger Video Calls. *See* SAC ¶ 24.

[3] As evidence of these representations, plaintiffs submitted a screenshot of what appears to be the outside of the Portal box, which states "Smart video calling designed to fit your home, with Alexa Built-in."  SAC ¶ 33.

plaintiffs brought their putative class action complaint. *See* Complaint [Dkt. No. 1]. Since that initial filing, plaintiffs have amended their complaint three times, the most recent being the SAC, filed on April 16, 2026. *See* SAC [Dkt. No. 38].

On February 13, 2026, Meta filed its motion to dismiss the SAC. *See* Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint ("Mot.") [Dkt. No. 40]. Plaintiffs submitted their opposition on March 13, 2026. *See* Opposition to Meta's Motion to Dismiss ("Oppo.") [Dkt. No. 42]. Meta replied on March 27, 2026. *See* Reply to Plaintiffs' Opposition to Meta's Motion to Dismiss ("Repl.") [Dkt. No. 43]. I heard oral argument on April 8, 2026.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000), *overruled on other grounds*, *Singleton v. Gates*, No. 25-743, 2026 WL 1494029 (9th Cir. May 28, 2026). In

United States District Court
Northern District of California

making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

## DISCUSSION

### I.    Obaro Declaration

Before discussing the merits of Meta's motion, I turn to briefly address an evidentiary concern raised by plaintiffs.  In support of its motion to dismiss, Meta attached a declaration from Bambo Obaro, counsel for Meta, as well as hyperlinks to screenshots of Meta's Limited Consumer Warranty (Ex. 2), Supplemental Portal Terms of Service ("Supp. TOS") (Ex. 3), and Meta's Terms of Service ("TOS") (Ex. 4), on Wayback Machine.  *See* Declaration of Bambo Obaro in Support of Defendant Meta's Motion to Dismiss ("Obaro Decl.") [Dkt. No. 40-1].  Mr. Obaro also provided photographs of the exterior packaging of the Portal boxes (Ex. 5).  *Id.*  Plaintiffs now move to exclude each of these exhibits on (1) authentication and (2) judicial notice grounds.[4]

### A.    Authentication

Plaintiffs first claim that Mr. Obaro's declaration was not properly authenticated.  Federal Rule of Evidence 602 requires a declarant to have personal knowledge of the matter.  Fed. R. Evid. 602.  "An attorney declaration made without personal knowledge is entitled to no weight." *Finjan, Inc. v. Check Point Software Techs., Inc.*, No. 18-cv-02621-WHO, 2019 WL 7801443, at *10 (N.D. Cal. Aug. 12, 2019) (Orrick, J.) (citation omitted).  Documents must also be properly authenticated by "evidence sufficient to support a finding that the item is what the proponent claims it is."  Fed. R. Evid. 901(a).  Here, plaintiffs maintain Obaro's "plain averments do not meet these standards," as it is "unclear how [he] would have firsthand knowledge of any of the documents he proffers without being a Meta employee."  Oppo. at 21.

Mr. Obaro sourced these documents from Wayback Machine, "a service that allows people

---

[4] As a procedural matter, plaintiffs are within their rights to raise such objection in their opposition.  *See* N.D. Cal. Civ. L.R. 7-4(a) (parties may bring "evidentiary and procedural objections" to a party's motion, so long as it is "contained within the brief or memorandum").

United States District Court
Northern District of California

to visit archived versions of Web sites. Visitors to the Wayback Machine can type in a URL, select a date range, and then begin surfing on an archived version of the Web." *Virun, Inc. v. Cymbiotika, Inc.*, No. 8:22-cv-00325-SSS-DFMx, 2022 WL 17371057, at *3 n.3. "Although contemporaneous screenshots of a website may be judicially noticeable, *see Threshold Enterps. Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 146 (N.D. Cal. 2020), . . . there is no clear consensus in this Circuit as to whether, or under what circumstances, the Wayback Machine constitutes a source 'whose accuracy cannot reasonably be questioned' for the purposes of Fed. R. Evidence 201." *Id.*; *see UL LLC v. Space Chariot Inc.*, 250 F. Supp. 3d 596, 604 n.2 (C.D. Cal. 2017) (taking judicial notice); *but see Lindsay v. Shree Enter., LLC*, No. 2:21-cv-00299-WBS-CKD, 2021 WL 2711225, at *3 n.3 (E.D. Cal. July 1, 2021) (declining judicial notice).

Based on the record before me, I DECLINE to exclude this evidence. Notably, plaintiffs do not raise any argument that would suggest *why* Mr. Obaro's exhibits would not be reliable; instead, they merely posit that the documents cannot be properly authenticated, since he was not an employee. In any event, as Meta notes, the exhibits include packaging in plaintiffs' possession as well as information from publicly available websites.

### B.      Judicial Notice

Plaintiffs also request that I not take judicial notice of the attached exhibits. Typically, the "scope of review on a motion to dismiss for failure to state a claim is limited to the contents of the complaint." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). A limited exception applies via the incorporation-by-reference doctrine. That doctrine exists to "prevent[] plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (citing *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *superseded by statute on other grounds as recognized in Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 681–82 (9th Cir. 2006)). The Ninth Circuit has recognized this doctrine is meant to prevent "plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based." *Id.* (citation omitted).

In my previous order, I indicated that I would take judicial notice of "the existence and

United States District Court
Northern District of California

5

contents of" Meta's Supplemental Terms but would "not make any inference that plaintiffs were, in fact, aware of these terms." FAC Order [Dkt. No. 25] at 4. Plaintiffs now express concern with this holding, as well as *any* potential judicial notice of the existence of the Terms of Service, Supplemental Terms of Service, or Limited Warranty documents. Oppo. at 22. In their view, *Khoja* is instructive, where the Ninth Circuit cautioned against broad use of judicial notice:

> The overuse and improper application of judicial notice and the incorporation-by-reference doctrine, however, can lead to unintended and harmful results. Defendants face an alluring temptation to pile on numerous documents to their motions to dismiss to undermine the complaint, and hopefully dismiss the case at an early stage. Yet the unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery. . . . If defendants are permitted to present their own version of the facts at the pleading stage—and district courts accept those facts as uncontroverted and true—it becomes nearly impossible for even the most aggrieved plaintiff to demonstrate a sufficiently 'plausible' claim for relief.

899 F.3d at 998–99. Applying this holding, plaintiffs conclude that it would be "error to rely on [these documents] as binding." Oppo. at 23.

Similarly, plaintiffs contend that Exhibit 5 (photographs of the Portal's box exterior) is improper, as "it has not been properly authenticated as stated above, rendering admission . . . improper." *Id.* (citing *Sinatro v. Barilla Am., Inc.*, 635 F. Supp. 3d 858, 870–71 (N.D. Cal. 2022) (Ryu, M.J.) (declining to incorporate by reference images of pasta product labels because counsel failed to explain how the images were created or selected). Additionally, plaintiffs contend that it would be "error to take judicial notice of the package's existence, as there may be factual issues as to what packaging was in existence at various times." *Id.* at 23–24.

In response, Meta correctly argues that courts in the Northern District "routinely consider product packaging under the incorporation-by-reference doctrine where, as here, the complaint makes extensive reference to the packaging and the alleged deception turns on the information conveyed there." Repl. at 14 (citing *Eidmann v. Walgreen Co.*, 522 F. Supp. 3d 634, 642 (N.D. Cal. 2021) (Davila, J.); *Manchouck v. Mondelēz Int'l Inc.*, No. C 13-02148 WHA, 2013 WL 5400285, at *3 (N.D. Cal. Sep. 26, 2013) (Alsup, J.), *aff'd*, 603 F. App'x 632 (9th Cir. 2015); *Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1113 n.1 (N.D. Cal. 2013) (Koh, J.)). As I

6

explain in detail below, many of plaintiffs' claims hinge on whether the Portal's box packaging represented to the average consumer that various features were "built-in[to]" the product, rendering them "permanent" features. To exclude that evidence at this stage would be a death knell to the viability of these claims, especially given plaintiffs' remaining allegations are inadequately pleaded. I therefore DECLINE to exclude these exhibits at this juncture.

## II.    Unfair Competition Law ("UCL") Claim – Counts I, II, and III

Counts I through III of the SAC alleges violations of California's UCL, which prohibits any "unlawful, unfair, or fraudulent business act or practice." CAL. BUS. & PROF. CODE § 17200. "Each prong of the UCL is a separate and distinct theory of liability" and must be analyzed independently. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009). Plaintiffs allege violations of all three prongs of the statute.

### A.    "Fraudulent" Prong – Count II

Both parties acknowledge that the viability of plaintiffs' "fraudulent" UCL claim rests on whether plaintiffs have plausibly alleged their consumer fraud claims. Mot. at 14; Oppo. at 9–10; *see Punian v. Gillette Co.*, No. 14-cv-05028-LHK, 2016 WL 1029607, at *5 (Koh, J.) ("Plaintiff's claims under the FAL, the CLRA, and the fraudulent prong of the UCL rise or fall together."). As explained below, plaintiffs have failed to identify an actionable misrepresentation or omission under the CLRA, GBL, or ICFA. Accordingly, they have failed to also state a "fraudulent" claim under the UCL.

### B.    "Unlawful" Prong – Count III

Like the "fraudulent" prong, the "unlawful" prong of the UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (citation modified). Because plaintiffs have not stated a viable consumer protection claim, there is no predicate violation to support this prong.

### C.    "Unfair" Prong – Count I

In my order granting Meta's first motion to dismiss, I indicated that plaintiffs sufficiently pleaded the "unfair" prong of the UCL. *See* FAC Order at 13–16. Meta now claims that the

United States District Court
Northern District of California

"settled and consistent precedent of both California and federal courts in this Circuit" compel me to reconsider my decision, for two reasons. Mot. at 9–10.[5] First, Meta asserts that because the other two prongs of the UCL must be dismissed, so too must plaintiffs' "unfair" claim fall. *Id.* at 10. It also argues that a "loss of functionality that occurs outside of the warranty period does not give rise to a claim for 'unfair' conduct," and suggests that my prior analysis failed to consider the underlying reasoning in *Clemens* and its progeny. *Id.* at 10–13. I disagree.

### 1.    Unfair as Standalone Cause of Action

Meta argues that various courts in the Northern District of California have found that when a plaintiff's claim "under the unfair prong [of the UCL] overlaps entirely with the conduct alleged in the fraudulent and unlawful prongs, 'the unfair prong . . . cannot survive if the claims under the other two prongs [] do not survive.'" *Lopez v. Mead Johnson Nutrition Co.*, No. 24-cv-03573-HSG, 2025 WL 895213, at *10 (N.D. Cal. Mar. 24, 2024) (Gilliam, J.) (citation modified); *see Eidmann*, 522 F. Supp. 3d at 647 (quoting *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1105 (N.D. Cal. 2017) (Koh, J.)).

In response, plaintiffs assert that this standard "runs afoul" of Ninth Circuit precedent indicating that "[e]ach prong of the UCL is a separate and distinct theory of liability . . . offer[ing] an independent basis for relief." Oppo. at 5; *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007). They also point to cases from the Northern District where courts found unfair UCL claims to be sufficient independent of the other two prongs. Oppo. at 5; *see Mencia-Montes v. Fit Foods Distrib., Inc.*, No. 24-cv-01768-EKL, 2025 WL 1185372, at *5 (N.D. Cal. Mar. 31, 2025) (Lee, J.) ("Thus, if Plaintiff[s] plausibly allege[] a claim under *any* prong of the UCL, Defendant's motion to dismiss must be denied."); *Grace v. Apple, Inc.*, No. 17-cv-00551, 2017 WL 3232464, at *15 (N.D. Cal. July 28, 2017) (Koh, J.) (upholding standalone "unfair"

---

[5] Because "an amended complaint super[s]edes the original complaint and renders it without legal effect," *Lacey v. Maricopa County*, 693 F.3d 896, 927 (9th Cir. 2012) (en banc), "[c]ourts in this Circuit … have permitted defendants moving to dismiss an amended complaint to make arguments previously made and to raise new arguments that were previously available," *In re Wellpoint, Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 893 (C.D. Cal. 2012). "The district court," in those circumstances, "is not … bound by any law of the case." *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1043 (9th Cir. 2018).

prong claim); *Feller v. Transamerica Life Ins. Co.*, No. 2:16-cv-01378-CAS (AJWx), 2016 WL 6602561, at *13 n.9 (C.D. Cal. Nov. 8, 2016) (upholding "the UCL's 'unfair' prong claim, but not the 'unlawful' prong"); *Peterson v. Mazda Motor of Am., Inc.*, 44 F. Supp. 3d 965, 973 (C.D. Cal. 2014) (same).

I agree with Meta that there is considerable overlap between the three theories as pleaded. All three claims arise from the same allegations that Meta marketed the Portal's features without disclosing that they could later be withdrawn. At the same time, plaintiffs' unfair claim is not "entirely" duplicative. *See Eidmann*, 522 F. Supp. 3d at 647. Plaintiffs' fraudulent and unlawful prongs turn on whether Meta's representations and omissions were likely to deceive consumers. The unfair prong, however, *also* challenges Meta's post-sale "bricking" conduct prior to the end of the Portal's useful life, which caused consumers financial harm. *See* SAC ¶ 86. Whether plaintiffs can ultimately prove such conduct is "unfair" is one question. At this stage, however, it is plausible to read the unfair claim as alleging an independent theory focusing exclusively on Meta's decision to "brick" the functionality of the Portal devices. I therefore decline to dismiss the unfair UCL claim on this ground alone.

### 2.    Loss of Functionality

Meta also claims that "unless a manufacturer makes specific representations about the expected life expectancy of the product, a loss of functionality occurring outside the warranty period does not give rise to a claim for 'unfair' conduct under the UCL." Repl. at 3; Mot. at 10–11 (citing *Berenblat v. Apple, Inc.*, Nos. 08-4969 JF (PVT), 09-1649 JF (PVT), 2009 WL 2591366, at *6 (N.D. Cal. Aug. 21, 2009) (Fogel, J.) ("If the memory slots were functional throughout the period of the express warranty, a later failure would not conflict with a statement regarding memory capacity because there was no representation as to the durability of the memory slot."); *Long v. Hewlett-Packard Co.*, No. C 06-02816 JW, 2007 WL 2994812, at *8 (N.D. Cal. July 27, 2007) (Ware, J.), *aff'd*, 316 F. App'x 585 (9th Cir. 2009)).

Meta encourages me to revisit my prior holding and analysis of *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017 (9th Cir. 2008), and its progeny. In *Clemens*, the plaintiff purchased a 1998 Dodge Neon from a Dodge dealership. *Id.* at 1021. After driving approximately

United States District Court
Northern District of California

50,000 miles, plaintiff noticed that the engine began to leak oil and learned that the head gasket failure was a common problem for the Neon. *Id.* DaimlerChrysler provided an express warranty with the vehicle, stating:

> The Basic Warranty covers the cost of all parts and labor needed to repair any defective item on your vehicle that was supplied by Chrysler—that is, defective in material, workmanship or factory preparation. There is no list of covered parts since the only exception is tires. You pay nothing for these repairs. These warranty repairs or adjustments—including all parts and labor connected with them—will be made by your dealer at no charge, using new or remanufactured parts.

*Id.* The warranty was limited to 36 months from the date of purchase, or 36,000 miles on the odometer, whichever came first. *Id.* at 1021–22. Plaintiff sued DaimlerChrysler, alleging among other things a UCL and implied warranty claim. *Id.* at 1022. On the UCL unfair argument, the Ninth Circuit adopted the California Court of Appeal's decision in *Daughtery v. American Honda Motor Co.*, finding that "the failure to disclose a defect that might, or might not, shorten the effective life span of an automobile part that functions precisely as warranted throughout the term of its express warranty cannot be characterized as causing a substantial injury to consumers, and accordingly does not constitute an unfair practice under the UCL." *Id.* at 1027 (quoting 144 Cal. App. 4th 824, 839 (2006)).[6]

In my previous order dismissing the First Amended Complaint, I distinguished *Clemens* on the ground that the "alleged actions of Meta in this case—terminating the functionality of the Portal—is [not] analogous to a product defect." FAC Order at 15 n.2. Meta now argues that the rationale of these cases is "not that such losses of functionality are beyond the control of the manufacturer, but rather that when a product loses functionality outside of the warranty period, the plaintiff suffers no *substantial injury* within the meaning of the UCL." Mot. at 12 (emphasis in original).

To support this argument, Meta again turns to *Daughtery*. In *Daughtery*, plaintiffs filed a

---

[6] Meta notes that "[n]umerous courts have applied [*Clemens*] to dismiss 'unfair' UCL claims premised on a loss of functionality after the warranty period." Repl. at 3 (citing *Taleshpour v. Apple Inc.*, 549 F. Supp. 3d 1033, 1045 (N.D. Cal. 2021) (Davila, J.), *aff'd*, 2022 WL 1577802 (9th Cir. May 19, 2022); *Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980, 997 (N.D. Cal. 2010) (Chesney, J.), *aff'd*, 462 F. App'x 660 (9th Cir. 2011); *Berenblat*, 2009 WL 2591366, at *7).

class action after their vehicles equipped with a F22 engine manufactured by Honda had a "defect resulting, over time, in the slippage or dislodgment of the front balancer shaft oil seal." 144 Cal. App. 4th at 827. After learning about this defect, "Honda designed a retainer bracket to prevent dislodgment of the oil seal." *Id.* at 828. Honda later initiated a "product update campaign" in 2000, including an offer for free installation of a retainer bracket for all 1994-1996 models. *Id.* Plaintiffs, owners of 1990-1993 models, alleged in their complaint that they were not notified about the campaign or the defect, even though the defect similarly affected their vehicles. *Id.* A California Court of Appeal panel ultimately rejected plaintiffs' UCL argument, finding among other things that "the failure to disclose a defect that might, or might not, shorten the effective life span of an automobile part that functions precisely as warranted throughout the term of its express warranty cannot be characterized as causing a substantial injury to consumers, and accordingly does not constitute an unfair practice under the UCL." [7] *Id.* at 839; *see also, e.g., In re Sony HDTV Litig.*, 758 F. Supp. 2d 1077, 1091 (S.D. Cal. 2010) ("Plaintiffs have not alleged that the televisions failed to function as warranted throughout the term of the Express Warranty. As a result, Plaintiffs' claim under the UCL's unfair prong fails because they have not alleged a substantial injury.").

Relying on *Clemens*, *Daughtery*, and *In re Sony HDTV*, Meta argues that a "consumer's only reasonable, legally enforceable expectation about the useful life of a product is what the manufacturer represents in the express warranty or elsewhere." Mot. at 12. And because it provided an "express, one-year warranty for the Portal, including for the functionalities Plaintiffs say they valued," which "Meta honored . . . and then some," Meta concludes that any loss of functionality out of that one-year gap does not confer a substantial injury required for an "unfair" UCL claim. *Id.* at 12–13. It concludes:

_____

[7] Plaintiffs oppose this analysis, pointing out that the court in *Daughtery* applied the FTC test in reaching this conclusion, which has since been overruled. *See* Oppo. at 6. *Daughtery* recognizes, however, that the court "would reach the same result if [they] were to apply any of the tests that other courts of appeal have employed to determine whether a business act or practice is unfair within the meaning of the UCL." 144 Cal. App. 4th at 839 n.9. *Daughtery* controls, and plaintiffs' reference to cases that have dismissed *Daughtery* and *Clemens* "on the same grounds" is inapplicable. Oppo. at 7 (citing *Peterson v. Mazda Motor of Am., Inc.*, 44 F. Supp. 3d 965 (C.D. Cal. 2014).

11

> [T]he only way Plaintiffs could prevail on the UCL claim is by arguing that Meta was obliged to maintain software support for the Portal (at its own cost) for some unspecified (and possibly indefinite) amount of time after discontinuing the product, *notwithstanding its express disclosures otherwise*. To adjudicate Plaintiffs' UCL claim would therefore require the Court to make a subjective policy determination about how long Meta is required to maintain such support at its own cost—Three years? Five years? Ten years? Indefinitely? And how is any manufacturer to know *ex ante* the required duration of software support for a discontinued product? There is no legally definable standard to answer those questions that can predictably and reliably be applied in future cases.

*Id.* at 13.

Plaintiffs allege that their theory under the unfair prong is that the Portal's "continued software functionality . . . formed the fundamental basis of the bargain: consumers would pay a premium for an expensive electronic device, and in return, they would receive a device capable of hands-free video calling and streaming as well as a multitude of other software-based functions." SAC ¶ 32. Such features were touted as being "built-in," despite Meta later unilaterally removing them. *Id.* ¶ 34. This case is therefore different from *Clemens* and *Daughtery*, despite all three involving warranty agreements. The plaintiffs in *Clemens* and *Daughtery* waived any *defects* that independently arose outside of the warranty period. Plaintiffs' theory of this case, however, is about Meta's decision to disable core functionalities of the Portal that were marketed as integral to the product. This suggests that plaintiffs—even outside of a warranty period—suffered an injury distinct from that in *Clemens*, *Daughtery*, and the other cases cited by Meta.

While I recognize Meta's concerns regarding the policy implications of plaintiffs' case, as well as the effect the Limited Warranty will have on this case, these are questions that are best addressed at summary judgment. At this stage, construing all facts in plaintiff's favor, the SAC plausibly alleges a violation of the unfair prong of the UCL. I decline to reconsider my previous holding and DENY Meta's motion to dismiss this claim.

## III.    State Consumer Protection Laws – Counts V, VI, and VII

Plaintiffs bring various state law consumer protection claims against Meta, including violations of sections (a)(5) and (a)(16) of California's Consumer Legal Remedies Act ("CLRA") (on behalf of plaintiffs and the nationwide class, or, alternatively, on behalf of plaintiff Shipley

and the California class); section 349 of New York's General Business Law ("GBL") (on behalf of plaintiff Herod and the New York class); and section 505/2 of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") (on behalf of plaintiff Dawar and the Illinois class).[8] Both parties agree that California law, at least "for purposes of this motion to dismiss," governs, and that the elements of plaintiffs' claims under the GBL and ICFA are "substantively similar to those under the CLRA." Mot. at 14 n.7.

Meta moves to dismiss each of these causes of action on three independent grounds: that plaintiffs (1) failed to allege a pre-purchase misrepresentation, *see id.* at 14–16, (2) failed to allege an actionable omission, *see id.* at 16–18, and (3) failed to allege reliance or causation, *see id.* at 18–20. I agree with Meta that more needs to be alleged regarding reliance and causation, and for that reason grant the motion to dismiss these counts with leave to amend. I discuss the other grounds as well, because they are sufficient.

### A.    Pre-Purchase Misrepresentation

To state a claim for an affirmative misrepresentation, a plaintiff must allege that "members of the public are likely to be deceived" by the representation. *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (citation omitted). Such representations must mislead a "significant portion" of a reasonable public to be actionable. *See McGinity v. Proctor & Gamble Co.*, 69 F.4th 1093, 1097 (9th Cir. 2023) (internal quotations omitted).

In the SAC, plaintiffs focus on various representations Meta made in marketing the Portal, including that the devices contained features such as "'Alexa Built-In, 'Hands-free video calling,' and compatibility with third-party apps and streaming services." SAC ¶¶ 1, 33, 38, 65. Meta claims that these statements are not "pre-purchase misrepresentation[s]," as plaintiffs "do not dispute that those features were available at the time of service, throughout the warranty period, and for several years after." Mot. at 15. Neither do they "allege any actual representation that Alexa—or any other software-based feature—would be *maintained* for a particular duration, for

---

[8] Plaintiffs note that the GBL and ICFA arguments are "plead[ed] in the alternative to the CLRA." Oppo. at 10.

United States District Court
Northern District of California

the useful life of the product, or indefinitely." *Id.* (emphasis added). "The fact that something is 'built-in' does not imply that it can never be removed or altered," Meta concludes. *Id.*

Even if the "built-in" language were to be read in isolation, Meta asserts that "no reasonable consumer would have interpreted these statements in context as promising indefinite functionality, because [it] disclosed the limited nature of the features on the very same packaging Plaintiffs point to now." *Id.* at 15–16. The side of the Portal box reads, in relevant part:

> Features, functionality and content are subject to change or withdrawal at any time, may be protected by digital rights management technology, may be unavailable or restricted in some areas, may not be available in all languages, may require enabled software or service activation, and additional terms, conditions, and/or charges may apply . . . Updated and additional information on functionality can be found at portal.facebook.com/usage.

*Id.* at 4, 16. Meta maintains that case law in this Circuit suggests that such representations "ameliorate any tendency of the label to mislead." *Id.* at 16; *see Bowler v. Nestlé Health Sci. U.S., LLC*, 763 F. Supp. 3d 996, 1004 (C.D. Cal. 2025) ("[A]sterisked qualifications on the product labels render deception implausible."); *see also Sponchiado v. Apple Inc.*, No. 18-cv-07533-HSG, 2019 WL 6117482, at *4 (N.D. Cal. Nov. 18, 2019) (Gilliam, J.) ("[A] reasonable consumer could not be deceived by the iPhone Products' screen size representation, given the qualifying language expressly notifying the consumer that the actual screen area is less than indicated."); *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 785 (9th Cir. 2024) ("[T]he presence of an asterisk alone puts a consumer on notice that there are qualifications or caveats."). Given the language on the Portal box, as well as in the Warranty and Supplemental TOS, Meta believes that no possible affirmative misrepresentation could have been made about the "built-in" features of the Portal. Mot. at 16.

In response, plaintiffs assert that Meta "specifically advertised that certain features could *not* be taken away because they were 'built-in' to the devices themselves." Oppo. at 12. In their view, the "built-in" marketing represented an "explicit promise that these features [could not] and [would not] be removed." *Id.* Plaintiffs also invoke the dictionary definitions of "built-in" to suggest that a reasonable consumer would understand such features to "function for [as] long as the product functions, *viz*, for the product's entire useful life." *Id.*; *see Built-In*, DICTIONARY.COM

14

("built so as to be an *integral and permanent* part of a larger construction" or "existing as a natural or characteristic part of something; *inherent*") (emphasis added); *Built-In*, MERRIAM-WEBSTER ("forming an integral part of a structure or object").  Regardless, plaintiffs maintain that whether a reasonable consumer would be misled is "a question of fact not appropriate" for a motion to dismiss.  Oppo. at 10–11 (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)).

*McGinity v. Proctor & Gamble Company*, relied upon by Meta, is instructive.  In *McGinity*, the Ninth Circuit addressed the issue of affirmative misrepresentations in the context of product labeling and marketing.  69 F.4th 1093 (9th Cir. 2023).  Plaintiff purchased a "Pantene Pro-V Nature Fusion" shampoo, which contained a front label that displayed "Nature Fusion" in bold, capitalized letters.  *Id.* at 1095–96.  He alleged such packaging represented that the product was "natural, when, in fact, [it] contain[ed] non-natural and synthetic ingredients, harsh and potentially harmful ingredients, and [were] substantially unnatural." *Id.* at 1096.  Alleging an affirmative misrepresentation theory of liability under the CLRA, plaintiff argued that defendant could not rely on the "back ingredient list" to clarify the meaning of "Nature Fusion." *Id.* at 1098. The Ninth Circuit panel disagreed.  The court noted that "for a defendant to be precluded from insisting that the back label be considered together with the front label," the front label must be "unambiguously deceptive." *Id.*  Applying this standard, the court found:

> Here, the front label containing the words "Nature Fusion" is not misleading—rather, it is ambiguous.  Unlike a label declaring that a product is "100% natural" or "all natural," the front "Nature Fusion" label does not promise that the product is wholly natural.  Although the front label represents that something about the product bears a relationship to nature, the front label does not make any affirmative promise about what proportion of the ingredients are natural. Instead, as the parties point out, "Nature Fusion" could mean any of a number of things: that the products are made with a mixture of natural and synthetic ingredients, that the products are made with a mixture of different natural ingredients, or something else entirely.
>
> We hold that when, as here, a front label is ambiguous, the ambiguity can be resolved by reference to the back label.

*Id.* at 1098–99.

The Ninth Circuit later clarified its holding in *McGinity* in *Whiteside v. Kimberly Clark*

*Corporation*, 108 F.4th 771 (9th Cir. 2024). There, plaintiffs purchased several versions of defendant's "Huggies Natural Care® Baby Wipes," which contained labels on its front packaging advertising the product as a "plant-based wipe[]" and providing "natural care®." *Id.* at 774. But the products "contain[ed] synthetic ingredients that [did] not come from plants and [were] subject to chemical modification or processing." *Id.* The back label indicated that the product was composed of "NATURAL AND SYNTHETIC INGREDIENTS." *Id.* at 776.

In considering whether the district court should have considered the back-label ingredients list at the pleadings stage, the Ninth Circuit clarified that *McGinity* "did not hold that a plaintiff must *prove* that the label is unambiguously deceptive to survive dismissal." *Id.* at 780 (emphasis in original). Instead, "a plaintiff must *plausibly allege* that the front label would be unambiguously deceptive to an ordinary consumer, such that the consumer would feel no need to look at the back label." *Id.* Applying this reasoning, the court noted that while "'plant-based' could be interpreted in different ways, it plausibly conveys a concrete and unambiguous meaning to a reasonable customer: that the product is entirely plant-based and exclusively contains 'natural' materials." *Id.* The court accordingly found the wipes' front labels sufficiently ambiguous to preclude reliance on the back-label ingredients list at the motion to dismiss stage. *Id.* at 782–83.

As in *Whiteside*, plaintiffs have plausibly alleged ambiguity that would preclude looking at the side of the Portal box. That a feature is "built-in" an electronic product is not an "all-but-meaningless marketing term" like the use of "Nature Fusion" in *McGinity*: instead, it plausibly conveys to a reasonable consumer that a feature is permanent or irrevocable. *See id.*; 69 F.4th at 1096; *Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156, 1168 (2018) ("[A] back label that [does] not *confirm* what was on the front label [cannot] defeat . . . UCL, CLRA, false advertising and warranty claims" at the pleadings stage) (emphasis in original). While the side label may ultimately persuade a factfinder that the Portal's packaging is not misleading, that is not a basis for dismissal under Rule 12(b)(6). *See Whiteside*, 108 F.4th at 783.

### B.     Omission

An omission is actionable under the CLRA if it is "contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Wilson v.*

16

*Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012) (quoting *Daughtery*, 144 Cal. App. 4th at 835). Similarly, under New York's GLB, and omission may be actionable if a "business alone possesses material information that is relevant to the consumer and fails to provide this information." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 26 (1995). Plaintiffs must "plausibly allege[] that . . . [d]efendants had knowledge of the [material information] and failed to disclose or actively concealed such information." *In re Sling Media Slingbox Advert. Litig.*, 202 F. Supp. 3d 352, 359 (S.D.N.Y. 2016) (citation omitted). "A defendant's failure to reveal facts about which even it was unaware at the time will not lead to liability." *Mirza v. Ignite USA, LLC*, 439 F. Supp. 3d 1058, 1072 (N.D. Ill. 2020) (citing *In re Media Slingbox Advert. Litig.*, 202 F. Supp. 3d at 359).

Plaintiffs assert in the SAC that Meta represented the Portals as "hands-free video calling and streaming devices with Alexa and voice-assistant technology 'Built-in.'" SAC ¶¶ 19–20, 23, 30, 33–35, 38–40. But Meta ultimately "omitted the material fact that it could strip many of the Portal's advertised uses long before the end of the products' useful life." *Id.* ¶ 125. Plaintiffs allege that "Meta was under a duty to Plaintiffs and the Nationwide and California Class Members to disclose that it could or would render the Meta Portal less functional because Meta made affirmative statements to the contrary when it sold the device and touted its advertised benefits without time limitation." *Id.* ¶ 126.

Like its affirmative representation argument, Meta maintains that "Meta *did* disclose" that it reserved the right to adjust or eliminate the Portal's software functionality. Mot. at 17 (emphasis in original). It again points to the accompanying disclosures on the side panel of the Portal boxes, which stated that "[f]eatures, functionality, and content [were] subject to change or withdrawal at any time." *Id.* (quoting Obaro Ex. 5, at 4). And it also points to the language in Meta's Supplemental Terms of Service ("TOS")[9] and Limited Warranty, which disclosed potential changes in functionality. Obaro Decl., Ex. 3 (Supp. TOS) at 2 (indicating that "[f]unctionality

---

[9] As I explained in my initial order, while Meta may bring in the Supplemental TOS as evidence, "I will not make any inference that plaintiffs were, in fact, aware of these terms" at this stage. FAC Order at 4. Accordingly, that the TOS disclaimed any changes in functionality is inapposite.

United States District Court
Northern District of California

may be changed or limited" and that Meta may "impose limits on, suspend, eliminate, change, or update certain existing features . . . or any part of your Portal's services"); Obara Decl., Ex. 2 (Limited Warranty) at 1 (noting that Meta "may update, modify, or limit such software and services in [its] sole discretion" outside the warranty period). Taken together, Meta concludes that plaintiffs cannot allege an actionable omission by "ignoring multiple express disclosures of the very fact they claim was concealed." Mot. at 17.

Setting aside the disclosures, Meta also maintains that the SAC fails because "it does not allege any misleading half-truth capable of supporting an omission claim," as plaintiffs identify "no omission that was 'contrary to a representation actually made by the defendant.'" *Id.* at 18 (quoting *Wilson*, 668 F.3d at 1141). Nor is there a "freestanding duty to disclose," Meta argues, as manufacturers have no duty to disclose "defects" outside a warranty period, absent safety issues. *Id.*; *see Wilson*, 668 F.3d at 1142–43; *Taleshpour.*, 549 F. Supp. 3d at 1044; *Baranco v. Ford Motor Co.*, 294 F. Supp. 3d 950, 960 (N.D. Cal. 2018) (Chen, J.).

In response, plaintiffs reaffirm that the "truth of Meta's reserved ability to brick the Portals is contrary to Meta's advertising the Portals as hands-free video calling and streaming devices with Alexa and voice-assistant technology 'built-in.'" Oppo. at 13; SAC ¶¶ 19–20, 23, 30, 33–35, 38–40. Accordingly, plaintiffs assert that "Meta was required to prominently disclose, at the same time it was advertising and selling the Portal Devices, that it could at any time remove all Portal functionality without notice or compensation to the purchaser." *Id.*

Plaintiffs' argument does not include any authority suggesting that Meta was required to disclose the potential to remove "*all* Portal functionality." But even considering the disclosures on the box and Limited Warranty, would it be reasonable to conclude that Meta "omitted the material fact that it could strip many of the Portal's advertised uses long before the end of the products' useful life"? SAC ¶ 125. Could a reasonable consumer read the box's disclaimer that the Portal's "[f]unctionality may be changed or limited," for example, yet nonetheless believe that this does not apply to a "built-in" feature of the product? This seems to be a question on the merits of plaintiffs' theory, rather than the plausibility of their claim at the motion to dismiss stage. Plaintiffs have sufficiently alleged enough facts to give rise to an omission theory.

18

### C.      Reliance and Causation

Under the CLRA, GBL, and ICFA, plaintiffs must plead that they relied on Meta's allegedly fraudulent misrepresentations or omissions to maintain their claims. *See Campion v. Old Republic Home Prot. Co.*, 272 F.R.D. 517, 537 (S.D. Cal. 2011) (citing *Cohen v. DIRECTV, Inc.*, 178 Cal. App. 4th 966, 981 (2009) (CLRA)); *Gale v. Int'l Bus. Machs. Corp.*, 9 A.D.3d 446, 446–47 (N.Y. App. Div. 2004) (GBL). Actual reliance is "required to demonstrate causation for purposes of Article III standing when the plaintiffs assert that their injury is the result of deceptive misrepresentations or omissions." *Phillips v. Apple, Inc.*, No. 15-cv-04879-LHK, 2016 WL 1579693, at *6 (N.D. Cal. Apr. 19, 2016) (Koh, J.) (citing *In re iPhone Application Litig.*, 6 F. Supp. 3d 1004, 1015 (N.D. Cal. 2013) (Koh, J.)). This is where the SAC falls short.

In my previous order, I denied plaintiffs' CLRA and GBL claims considering plaintiffs did "not identify any particular advertisement or sales materials they even saw before purchasing the Portal." FAC Order at 10. The SAC attempts to rectify this issue by discussing what motivated the named plaintiffs to purchase the Portal device. Take, for example, the complaint's allegations with reference to named plaintiff Shipley:

> 53.  On or around November 12, 2020, while sitting in her home in San Francisco, Plaintiff Shipley purchased the Meta Portal device directly from Meta's website.
>
> 54. Plaintiff Shipley purchased the Meta Portal device after being exposed to, and relying on, Defendants' online representations on the Meta website that advertised the Portal device as having "hands-free video calling" with "Alexa Built-In" and the "Hey Portal" hands-free video call feature, as well [as] streaming and Photo functionality. She only purchased a Portal because of the purported hands-free video calling, streaming, and photo features that she saw advertised because she purchased it to connect with her aging mother who needed to use a hands-free device.
>
> . . .
>
> 56. Plaintiff Shipley reasonably relied on Meta's misrepresentations and omissions (i) because Meta did not tell her prior to purchase that Portal's software functionality could be time-limited and disabled at Meta's whim long before the useful life of the hardware of the device had expired and (ii) because at the point of purchase on its website Meta advertised software application features to her without any time limitation—including that the Portal device she selected to buy was capable of "hands-free video calling" with "Alexa Built-In" and the "Hey Portal" hands-free video call feature, which were important to her decision to purchase the product to connect with her

aging mother.

SAC ¶¶ 53–54, 56; *see also id.* ¶¶ 58–63 (plaintiff Herod); *id.* ¶¶ 64–68 (plaintiff Dawar).

Plaintiffs have still not plausibly established the "'who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). The SAC does identify the named plaintiffs. *See* SAC ¶¶ 53 (Shipley), 58 (Herod), 64 (Dawar). It also indicates when and where plaintiffs purchased their Portal devices. *Id.* ¶¶ 53 (Shipley purchased "[o]n or around November 12, 2020, while sitting in her home in San Francisco"), 58 (Herod purchased "[i]n or around March 2022" at a Best Buy in New Rochelle, New York), 64 (Dawar purchased a Portal "from Meta in April 2019 and from Amazon in July 2022"). But more still needs to be alleged with respect to the "what" and "how" factors. What specific advertisements did plaintiffs view on the Meta website? Are they the ones in the hyperlinks provided by plaintiffs? Is it solely the front of the Portal box? While plaintiffs are close, more needs to be alleged to survive Rule 9(b)'s threshold.[10] I GRANT Meta's motion to dismiss on the reliance and causation grounds with LEAVE TO AMEND.

## IV.    Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing (Count IV)

Count IV of the SAC raises a breach of contract claim, including both a breach of the implied covenant of good faith and fair dealing. Mot. at 20–23; *see* SAC ¶¶ 114–120. Meta moves to dismiss this claim on two independent grounds. Mot at 20. First, it maintains that the SAC "does not allege any contractual obligations Meta breached." *Id.* Second, even if a contractual obligation was identified, that claim would nonetheless fail because Meta acted

---

[10] It would be helpful to identify the features with respect to the "Hey Portal" hands-free video calling feature on which plaintiffs relied. The website hyperlinks provided by Meta make reference to "Alexa Built-In," but not to "Hey Portal." Were there other advertisements that Shipley and Dawar relied on that would provide support to their claim that they relied on the "Hey Portal" features when purchasing the Portal?

Also, more needs to be alleged with respect to plaintiff Herod. The SAC asserts that Herod purchased the Portal "after being exposed to, and relying on, Defendants' representations on TV, on shelf displays, and on the Portal packaging that he saw in the BestBuy store that marketed the devices as having hands-free video calling and multimedia streaming capabilities." SAC ¶ 60. Again, what were those representations? What TV advertisements and shelf displays? Were there any representations that these features were "built-in," like the Alexa feature? Or did they more generally express the Portal's "multimedia streaming capabilities"?

"squarely within its express rights." *Id.*

"Under California law, a claim for breach of contract includes four elements: that a contract exists between the parties, that the plaintiff performed his contractual duties or was excused from nonperformance, that the defendant breached those contractual duties, and that the plaintiff's damages were a result of the breach." *Boland, Inc. v. Rolf C. Hagen (USA) Corp.*, 685 F. Supp. 2d 1094, 1101 (E.D. Cal. 2010) (citing *Reichert v. General Ins. Co.*, 68 Cal.2d 822, 830 (1968); *First Comm. Mortgage Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001)). "A claim for breach of the implied covenant of good faith and fair dealing requires the same elements, except that instead of showing that defendant breached a contractual duty, the plaintiff must show, in essence, that defendant deprived the plaintiff of a benefit conferred by the contract in violation of the parties' expectations at the time of contracting." *Id.* (citing *Carma Devs., Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 372–73 (1992)).

### A.    Breach of Contract

The SAC alleges that plaintiffs "entered into a contract with Meta when they purchased their Meta Portal devices," and that Meta promised various software-based features, including Alexa Built-In and "hands-free video calling." SAC ¶¶ 1, 33, 38, 65, 115. Meta then later breached that contract "when it 'bricked' the devices, stripped them of functionality, and rendered them essentially useless." *Id.* ¶ 116.

Meta maintains that this claim must fail because the SAC fails to "identify any contractual provision defining the scope or duration of those features, any obligation to maintain them for a particular period, or any agreed-upon remedy if functionality later changed." Mot. at 21. Without these representations, Meta concludes, plaintiffs rely only on some "amorphous expectation[] that cannot support a breach-of-contract theory." *Id.* (citing *Shuman v. SquareTrade Inc.*, No. 20-cv-02725-JCS, 2021 WL 5113182, at *7 (N.D. Cal. Nov. 3, 2021) (Spero, M.J.)).

In response, plaintiffs allege the "terms of the contract were as follows: Plaintiffs each agreed to pay a certain price in exchange for a hands-free video and streaming device with Alexa and voice assistant technology 'built-in.'" Oppo. at 17. "Meta made this promise on every Portal box and on every website that sold the Portal." *Id.* Later, Meta breached that "promise to provide

21

a hands-free video and streaming device with 'Built-in' Alexa and voice-assistant functionalities when it unilaterally stripped these features from consumers' Portals." *Id.*

Plaintiffs claim *Koeller v. Nixplay, Inc.*, is instructive. No. 25-cv-04549-VKD, 2026 WL 483209 (N.D. Cal. Feb. 20, 2026) (DeMarchi, M.J.). In *Koeller*, plaintiffs were purchasers of "digital photo frames" that could display uploaded photos and videos on defendant's cloud storage. *Id.* at *1. Plaintiffs alleged that "[f]or years, [defendant] promised customers free cloud storage and integration with third-party apps . . . with 'no subscription necessary.'" *Id.* (internal citations omitted). However, in March 2025, defendants announced storage would be limited to 0.5 GB, and that "any content exceeding those limits would be locked and inaccessible unless frame users agreed to pay a new subscription fee." *Id.* Defendants also "eliminated the ability for users to sync their frames to their [third party platform] albums." *Id.* On the question of plaintiffs' breach of contract claim, the Hon. Virginia DeMarchi recognized that the plaintiffs' complaint alleged that their contracts with defendants to buy the product contained "material terms stat[ing] that [they] would provide frames including 10 GB of free cloud storage," amongst other things. *Id.* *7. Because the complaint gave defendants "'reasonable notice of the nature of the contract claims against [them]," the court concluded that plaintiff adequately alleged a breach of contract. *Id.* at *8 (quoting *Qingdao Tang-Buy Int'l Imp. & Exp. Co., Ltd. v. Preferred Secured Agents, Inc.*, No. 15-cv-00624-LB, 2016 WL 6524396, at *3–4 (N.D. Cal. Nov. 3, 2016) (Beeler, M.J.)).

Plaintiffs cite *Koeller* for the proposition that "[b]ecause plaintiffs were plausibly 'deprived of the full benefits' of their purchases after defendant removed 'promised features,' the Court sustained plaintiffs' breach of contract claims." Oppo. at 17–18; 2026 WL 483209, at *7. But this position fails as it applies to the facts of this case. Unlike in *Koeller*, where the terms of the contract clearly guaranteed "10 GB of free storage," here, plaintiffs allege a breach of contract theory based on statements made in Meta's advertisements. As Meta correctly points out, "advertisements are not typically treated as offers, but merely as invitations to bargain." Repl. at 11 (quoting *Campbell v. Honey Sci., LLC*, 797 F. Supp. 3d 1080, 1090–91 (N.D. Cal. 2025) (statements like "Honey helps you find coupon codes on 30,000+ sites" and "We'll automatically

22

look for codes when you shop on select sites" did not create a contract)); *Overfelt v. Hagerty Ins. Agency, LLC*, No. 19-cv-04297-SI, 2019 WL 4645323, at *1, *5 (N.D. Cal. 2019) (Illston, J.) (statements like "In the event of a total covered loss, we guarantee that you'll receive the amount we agreed upon" and "we GUARANTEE that value will be paid to you in the event of a total covered loss" did not create a contract). Plaintiffs have yet to identify any contractual provision outside of Meta's marketing and advertisements that would give rise to a breach of contract claim. Accordingly, Meta's motion to dismiss this claim is GRANTED.[11]

### B.      Implied Covenant of Good Faith and Fair Dealing

In addition to their breach of contract claim, plaintiffs assert an implied covenant of good faith and fair dealing claim. SAC ¶¶ 114–120. The SAC alleges that Meta "breached the covenant of good faith when it exercised its discretion to unilaterally and intentionally dismantle nearly all features of the Portal devices, as described above, rendering the devices largely obsolete far before their physical useful life." *Id.* ¶ 118. In doing so, plaintiffs presume that "Meta undermined Plaintiffs and Class members['] right to receive the benefit of the bargain." *Id.*

Every contract in California contains an implied covenant of good faith and fair dealing. *Letizia v. Facebook Inc.*, 267 F. Supp. 3d 1235, 1249 (N.D. Cal. 2017) (Henderson, J.). Implied covenant claims function as "supplement[s] to the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefit of the contract." *Thrifty Payless, Inc. v. The Americana at Brand, LLC*, 218 Cal. App. 4th 1230, 1244 (2013) (italics omitted). Plaintiffs need not establish bad faith or improper motive to prevail. *Badie v. Bank of Am.*, 67 Cal. App. 4th 779, 796 (1998) ("[T]he covenant of good faith can be breached for objectively unreasonable conduct, regardless of the actor's motive.") (alteration in original). But such a claim still requires examination of the "purposes and express terms of the contract." *Sumotext Corp. v. Zoove, Inc.*, No. 16-cv-01370-BLF, 2017 WL 2774382, at *4 (N.D. Cal. June 26, 2017) (Freeman, J.). And

---

[11] The parties also dispute whether plaintiffs' breach of contract theory should be dismissed on the basis that "Meta was expressly permitted to alter or remove features after the warranty period" based on the Supplemental TOS and the Limited Consumer Warranty documents. Mot. at 21–22; Oppo. at 19–21. Because dismissal is proper on other grounds, I decline to address this argument.

United States District Court
Northern District of California

implied covenants do not "impose substantive terms and conditions beyond those to which the parties actually agreed." *Id.*

Meta asserts that plaintiffs have failed to "undertake the required [implied covenant] analysis because they fail to identify the relevant contract or explain what terms the parties agreed to." Mot. at 21. Because an implied covenant "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement," *Lewis v. Google LLC*, 461 F. Supp. 3d 938, 961 (N.D. Cal. 2020) (Kim, M.J.), *aff'd*, 851 F. App'x 723 (9th Cir. 2021), Meta concludes that plaintiffs' claim fails as a matter of law. *Id.* at 21–22. But for the same reasons discussed earlier in this Order, I agree with plaintiffs that they have plausibly alleged that "Meta's advertisements and representations amounted to an implied promise (and triggered a reasonable expectation among consumers) that the Portals would not be stripped of nearly all their touted functionality." Oppo. at 19 (citing SAC ¶¶ 4, 6). While Meta "may have had discretion to remove certain applications or features, it abused that discretion—and frustrated the consumers' right to receive the benefit of the bargain—when it intentionally removed nearly all the Portals' functionality, rendering them bricks." *Id.* Because Meta "plausibly stripped Plaintiffs of the reasonably-expected benefits of the Portals they purchased," their claim is sufficiently pleaded. *Id.* Whether it can withstand summary judgment will be determined after discovery. Meta's motion to dismiss this cause of action is DENIED.

## CONCLUSION

For the reasons set forth above, Meta's motion to dismiss is DENIED as to the implied covenant of good faith and fair dealing and "unfair" UCL claims but is GRANTED for the remaining claims with leave to amend within 20 days of the date below.

**IT IS SO ORDERED.**

Dated: July 16, 2026

William H. Orrick
United States District Judge

24